# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>Charles Paxton Paret,<br><br>       Debtor.<br><br>CHARLES PARET<br>       *Plaintiff,*<br><br>v.<br><br>DANIEL HUERTAS,<br>       *Defendant* | Case No. 23-217-ELG<br><br>Chapter 7<br><br><br><br>Adv. Proc. 23-10025-ELG<br>(Removed from D.C. Superior Court) |

## AMENDED COMPLAINT FOR DECLARATORY AND OTHER RELIEF

COMES NOW Plaintiff, Charles Paret, by and through the undersigned counsel and hereby files this amended civil claim for declaratory and other relief.

## JURISDICTION AND VENUE

1. This court has subject matter and personal jurisdiction over the matter complained of herein. Venue is proper because the actions complained of occurred in the District of Columbia. ("D.C."). The matter has been removed to the United States Bankruptcy Court from the D.C. Superior Court.

## THE PARTIES

2. Plaintiff, Charles Paret ("Paret'), was at all times referenced herein a real estate developer involved in the purchase and renovation of multiple properties.

1

3. Defendant, Daniel Huertas ("Huertas"), is a resident of the State of Virginia.[1] Huertas is the only member of WCP, its Chief Executive Officer ("CEO"), and controls all the WCP Entities ("WCP"). He is also the principal and only member of DP Capital, LL.C. ("DP Capital").

## SUMMARY OF THE CASE

4. This claim involves the establishment of partnership between the parties based on Plaintiff's significant portfolio of properties which amounted to tens of millions of dollars. See Exhibit 1B. The partnership was contemplated prior to September 2019 to develop the aforementioned properties to a competitive marketable after renovation value ("ARV"). The partnership's terms and expectations were initiated by Defendant Huertas and were mutually agreed upon by the parties' words, deeds, and expressed intentions.

## FACTS COMMON TO ALL CLAIMS

5. Under the D.C. Uniform Partnership Act at D.C. Code Section 29-602.029(a), "the association of two (2) or more persons to carry on as co-owners of a business for profit shall form a partnership."

6. Notably, the test for determining the existence of a partnership is an objective one. Courts generally look for precise indicia such as the writings as here between Messrs. Paret and Huertas to show a partnership including, but not limited to, profit sharing, joint control, and capital contributions.

7. Prior to September 20, 2019 Defendant Huertas enjoyed access to capital from WCP and WCP Fund I for real estate acquisition and development purposes by way of Master Agreement. Defendant was apprised of Paret's real estate dealings and portfolio of

---

[1] The WCP FUND I, LLC ("WCP Fund I"), is a Delaware limited liability company that engages in a lending business in D.C. and is a related company to Washington Capital Partners ("WCP"). It funds WCP for loan purposes.

2

potentially lucrative opportunities based on earlier financial communications. Consistent therewith, Huertas gleaned an opportunity for himself to jointly acquire, with Paret, multiple properties and share profit on Paret's property portfolio once the potentially lucrative properties were renovated.

8. Once the partnership was formed Huertas used his position and decision-making authority in WCP to facilitate multiple loans to Paret, forego interest payments thereon, and among other things to maximize his leverage and the properties' competitive development to ARVs.

9. DP Capital, an entity exclusively owned by Huertas, participated in multiple loan transactions initiated by Plaintiff as the second note holder and original trustee on Deeds of Trust. It also serviced WCP's loans to Plaintiff and decided when and if to default them.

10. Huertas sought to and effectively achieved his objective of acquiring interests in Paret's potentially lucrative portfolio by way of a partnership between them.

11. In September, 2019 Defendant effectuated the partnership with Paret knowing that he could influence the success of the portfolio by ensuring its capitalization through WCP. On September 20, 2019, at 2:54 PM he penned an email to Paret which confirmed their agreement.

> Here is **further confirmation** that by providing the below capital including future capital to the partnership, this is debt that will be split 51% Daniel Huertas, 49% Charles Paret. Charles Paret will manage day to day operation of all projects (construction, development, stabilization) including in this email. *Daniel Huertas will manage all financial aspects related to capital, partnerships, ventures and will have final word related to execution of the real estate. Charles Paret is responsible solely for all debt obligations prior to 9/20/19. (payments) Charles Paret is not going to incur any additional debt or loans against real estate attached to this email or any purchases of any additional real estate.* Please return

3

    with agree and confirm that we will operate as such. (Emphasis added).  See Exhibit 1A and its attachment at 1B.

12. Huertas email followed an email from Paret dated September 20, 2019 at 2:10, subject: REVISED: Construction Breakdown for Immediate Draws to Push Work//Main-Portfolio Draw 101.  Paret attached thereto a "Copy of Coloma River Assets Debt Construction ARV_FULL Project_ Pipeline_Daniel_xisx.  See Exhibit 1B.  This summary of properties indicated an estimated After Renovation Value of $215,800,000, which amounted to a considerable profit for the partnership.  It was clear to Huertas at that time that his partnership with Paret included Paret's Columa River's business to the extent that its assets were directly incorporated into the transaction on September 20, 2019.

13. On September 20, 2019, Paret replied to the confirmation request: "Agree" and the parties acted consistent therewith.

14. On September 30, 2019, in furtherance of the agreed upon partnership, Huertas penned an e-mail to Paret which stated:

Charlie –

Please see attached payment requests.  ***By Daniel Huertas and/or companies paying the attached invoices for properties, Daniel Huertas will have 50% ownership of the properties and 51% in regard of control***.  Any other partnership set by Charles Paret will be taking from his side.  ***The payments here are a loan to the partnership at 10% APR. Before any distribution is provided, the partnership needs to pay all amounts paid here.*** (Emphasis added).

- 429 Kennedy (#5068) - $4,030.16
- 433 Kennedy (#5120) - $4,182.80
- 4910 Georgia Ave (#5607) $13,339.91[2]

---

[2] Subsequent to the partnership, Huertas approved loans involving several properties including, but not limited to, 1249 Bladensburg Road, NE, 4910 Georgia Avenue, NW, and 1260 Holbrook Terrace NW, among others.  Interest obligations for the loan were Huertas' responsibility.

4

See Exhibit 2.

15. By this email, Huertas made it clear that he would be acting on the Partnership's behalf through "other companies" which clearly included WCP through which he subsequently approved loans to Paret and DP Capital, which he owned and controlled exclusively, in the loan financing process; DP Capital would make loans to the Huertas-Paret partnership and take second notes with on the renovation loans.

16. Paret responded to Defendant's September 30, 2019 email and again agreed. The parties thereafter acted substantially and consistently with their expressed partnership interests.

17. During the next several years, Paret handled the day-to-day operations of the partnership's real estate projects. Huertas managed its financial aspects and enjoyed final approval of matters related to capital, partnerships, and ventures, among other things. Huertas did not collect interest on multiple approved WCP construction and renovation loans to Paret for several years after September 2019 partnership agreement.

18. In his September 30, 2019 e-mail, Huertas confirmed his intent and understanding of the partnership's consummation, stating: "any other partnerships set by Charles Paret will be taking from his side." By this statement Huertas acknowledged existence of the parties respective partnership interests. See Exhibit 2.

19. Huertas used DP Capital as a vehicle to facilitate loans to Paret and simultaneously, camouflage his interest in the partnership from WCP Fund I. Upon information and belief the Master Agreement between WCP, Fund I, WCP, and DP Capital did not disclose Defendant's September 2019 partnership discussions and agreement with Paret.

20. In 2020 and 2021, the COVID outbreak impeded the real estate market and corresponding bank lending. Resultantly, the business relationship between Paret and Huertas deteriorated. But the partnerships was not dissolved.

21. By way of DP Capital, LL.C., Huertas acting as a servicer for WCP, initiated and/or participated in collection actions against either Paret (or entities that he formed) (while Paret's interest in these entities remained in partnership with Huertas) and served as Trustee on the Deed of Trusts.

22. Between 2022 and 2023 DP Capital, owned exclusively by Huertas, instituted multiple foreclosures of the very properties owned by the Huertas-Paret partnership. In the process, Huertas and DP Capital foreclosed upon partnerships owned properties for well below market value, in certain instances high value properties for $10,000.00.

23. Defendant's actions against the partnership on behalf of creditors was adverse to the partnership and his simultaneous wearing of both creditor and debtor caps constituted a breach of his duty to the partnership. He effectively used his dual position acquired an exclusive ownership of property in which he initially enjoyed a shared ownership with Paret.

24. As a partner in the Huertas-Paret partnership Huertas enjoyed equal, if not full, responsibility for the partnership's debt obligations.

25. Defendant Huertas actions as described herein, acting as creditor and borrower, servicer and trustees among other things, have frustrated the partnership and made it economically impractical to continue (D.C. Code 29.608.1 (5)).

26. Accordingly, the partnership should be dissolved consistent with applicable D.C. partnership law, and this court should require an appropriate accounting and constructive trust.

## PLAINTIFF'S CLAIMS

## COUNT I

### DECLARATORY JUDGMENT REGARDING THE PARET-HUERTAS PARTNERSHIP

27. Plaintiff incorporates by reference all allegations in Paragraphs 1-24 hereto as if fully stated herein.

28. Prior to September 2019, Defendant became appraised of Plaintiff's property portfolio – and was involved in financial dealings with Paret, on behalf of WCP.

29. In September, 2019 – prior to September 20th, Defendant expressed an interest in partnership with Plaintiff to personally benefit from the business opportunity associated with renovation of Plaintiff's properties.

30. Based upon the parties communications, intentions, and financial dealings regarding the partnership as spelled out in the September 20 and 30, 2019 e-mails, Defendant WCP's non-collection on outstanding loans for years, Plaintiff seeks a declaratory judgment, to wit, that the parties created and entered a partnership under D.C. law.

31. Plaintiff seeks a complete and detailed audit and accounting regarding the partnership's assets and liability and a constructive trust as equitable remedies.

## COUNT II

### BREACH OF PARTNERSHIP FIDUCIARY DUTY

32. Plaintiff incorporates by reference all allegations in Paragraphs 1-28 as if fully stated herein.

7

33. At all times referenced herein, Huertas was a partnership with Paret that was never terminated nor dissolved. All of Paret's purchases through his LL.C. or otherwise became properties owned partly or fully by the partnership.

34. Additionally, by organizing DP Capital, LL.C. as an entity in which to leverage his interests in partnership owned properties and making executive decisions as the CEO of WCP to determine defaults and to institute foreclosures, Huertas acted adversely to the partnership's interests.

35. Huertas instituted or caused foreclosures of partnership properties in order to acquire ownership interests in the real estate he initially acquired via the partnership with Paret.

    As Paret's partner, Huertas duty of loyalty required him to:

    (1) account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;

    (2) refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and

    (3) refrain from competing with the partnership in the conduct of the partnership business before dissolution of the partnership.

    D.C. Code § 29-604.07(b)(1)-(3).

36. Through adverse collection and foreclosure actions against the partnership and other means, Huertas appropriated partnership opportunities and properties, and competed by way of self-dealing with the partnership on said properties with projected high ARVs.

37. As Plaintiff's partner, the winding up process in a court ordered dissolution involves multiple legal and factual issues. It also precludes Defendant Huertas from acting adversely to the partnership's interest, including the filing of a purportedly "undisputed" claim in the immediate involuntary Chapter 7 bankruptcy. See Section 303 of the Bankruptcy Code.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff urges this court to declare judgment in Plaintiff's favor as follows:

A. That the parties formed a partnership under D.C. law and that the partnership should be dissolved;

B. That an audit and accounting be had and a constructive trust established pertinent to all partnership assets and liabilities consistent with D.C. law;

C. That Defendant Huertas be enjoined from acting in a manner adverse to the partnership;

D. That Defendant Huertas breached his duty of loyalty to Plaintiff and award the following relief to Plaintiff:

1. Compensatory and economic damages in excess of $5,000,000.00;

2. Punitive damages, where appropriate, in excess of $5,000,000.00;

3. Such equitable and other relief as the Court deems just and proper, including that claimants DP Capital (owned by Huertas) and WCP (controlled by Huertas) are not "undisputed" claimants.

4. Attorney fees and costs, where appropriate.

                                                    Respectfully submitted,
                                                    */s/Donald M. Temple*
                                                    Donald M. Temple #408749
                                                    1310 L Street, N.W. Suite 750
                                                    Washington, D.C. 20005
                                                    (202) 628-1101
                                                    dtemplelaw@gmail.com
                                                    ***Attorney for Plaintiff/Purported Debtor***

JURY TRIAL DEMANDED