**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>Charles Paxton Paret,<br><br>Debtor. | Case No. 23-217-ELG<br><br>Chapter 7 |

**DEBTOR'S FRCP 12(B) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, AND/OR ALTERMATIVELY FOR A MORE DEFINITE STATEMENT**

Comes now the purported Debtor, Charles Paxton Paret ("Paret"), by and through the undersigned counsel, Donald M Temple (making a limited appearance for purposes of the motions to dismiss and to vacate this Court's August 31, 2023, Order only), and respectfully moves this Court to dismiss the immediate involuntary bankruptcy and/or, alternatively, require a more definite statement of the parties and the claims upon which it is based.   Reasons for this motion are stated more fully below.

I. INTRODUCTION.

On August 8, 2023, 1Sharpe Opportunity Intermediate Trust ("1Sharpe"), WCP Fund I LLC ("WCP Fund"), and DP Capital LLC ("DP Capital) (collectively referred to as "Petitioners"), three purported creditors of Paret, filed a Chapter 7 Involuntary Petition in this Court against Paret, the purported debtor, in which they asserted a combined debt of $3 million.  1Sharpe is a Virginia based corporation that makes loans for real estate purposes in the District of Columbia.  DP Capital LLC is a Virginia based limited liability company.  WCP Fund is a servicer of loans made by 1Sharpe.  The Petitioners' Involuntary Petition, without more states that the reason for the filing of the Involuntary Petition is "[p]rincipal assets and business in district." (Doc. 1, at p. 3.)  It adds

1

that Paret is generally not paying such debtor's debts as they become due unless they are the subject of a bona fide dispute as to the liability or amount. (Doc. 1, at p. 3.)

Without having identified any specific assets, loans, or other agreements, each purported creditor has asserted that its claims are based upon guarantees of an unidentified loan transaction. Peculiarly, the Petitioners fail to state the relationship between themselves pertinent to the respective debt obligations asserted in the Involuntary Petition, noting that DP Capital is the purported loan servicer for WCP Fund, and that Daniel Huertas ("Huertas"), the Chief Executive Officer for WCP Fund, is also the principal for DP Capital. Additionally, the Petition follows one or more lawsuits brought against WCP Fund, DP Capital, based on its financial and real estate dealings in the District of Columbia, including that Huertas, in September 2019 entered a partnership relationship with Paret while he was a principal in WCP Fund, an entity which he started, and a principal in DP Capital, an entity in which he formed to service WCP Fund loans.

As a result of that partnership, and the transactions that arise from that partnership relationship, the asserted debt obligations are highly disputed. Furthermore, Paret is unable to ascertain the specific basis for the asserted debt obligation on the part of each creditor DP Capital, and the extent to which the debt obligation reflects one or more transactions, or a singular debt obligation. Paret therefore moves this court to dismiss the Involuntary Petition on grounds that the debt obligation, to the extent that it involves real estate transactions in which Huertas enjoyed a partnership relationship, which is asserted here and in other litigation, is highly disputed. Absent clarification of the nature of the debt, otherwise, Paret seeks a more definite statement and explanation of the debt in the Involuntary Petition.

    **II.    ARGUMENT**

    A. APPLICABLE STANDARD

Unlike a voluntary petition for relief under Title 11, an involuntary petition is an adversarial process similar to a complaint initiating a lawsuit - the petitioning creditors file the involuntary petition containing their allegations as to the basis for the relief requested and must serve a summons on the alleged debtor with a deadline to respond. *See* Fed. R. Bankr. P. 1010(a) (incorporating Fed. R. Bankr. P. 7004). Bankruptcy Rule 1011(b) directs that Rule 12 of the Federal Rules of Civil Procedure applies to any defenses to an involuntary petition. Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint, or in this instance, the involuntary petition and any attachments thereto, state a claim only if it contains "enough facts to state a claim to relief that is plausible on its face." *Webster v. TCA TrustCorp Am. (In re Prudhomme Du Hancourt)*, 2020 Bankr. LEXIS 3305, at 8-9 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In essence, a motion to dismiss an involuntary petition tests the legal sufficiency of the facts alleged therein. *See Jackson v. Cash (In re Cash)*, No. 16-00663, 2018 Bankr. LEXIS 3322, *6-7 (Bankr. D.D.C. Oct. 29, 2018) (citing *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017)). The Court "construes the [involuntary petition] in the light most favorable to the [petitioning creditor] . . . ." *Indus. Bank v. Turner Constr. Co. (In re Shelton Fed. Grp., LLC)*, No. 15-00623, 2017 Bankr. LEXIS 4450, at *9 (Bankr. D.C. Dec. 30, 2017) (citations omitted). The court thus assumes that all the allegations made in the involuntary petition are true and draws all *reasonable* inferences in the petitioning creditor's favor. *See Twombly*, 550 U.S. at 555; *accord Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). But the court will not "accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations." *Owens*, 897 F.3d at 272 (citations omitted). Nor will the court "accept as true the [involuntary petition's] factual allegations insofar as they contradict exhibits to the

[involuntary petition] or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

In evaluating the Motion to Dismiss, the Court considers only "the facts alleged in the [involuntary petition], any documents either attached as exhibits or incorporated by reference in the [involuntary petition] and matters about which the Court may take judicial notice." *Tyler v. Uber Techs., Inc.*, 487 F. Supp. 3d 27, 31-32 (D.D.C. 2020) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)); *accord Huang v. Estes* (*In re 1436 Foxhall Rd. L.L.C.*), No. 18-00765, 2019 WL 2909107, at *3 (Bankr. D.D.C. July 5, 2019); *Albert v. Chesapeake Bank & Tr. Co.* (*In re Linton Props., LLC*), 410 B.R. 1,5 (Bankr. D.D.C. 2009). This includes "documents appended to [a] motion to dismiss and whose authenticity is not disputed if they are referred to in the complaint and are integral to plaintiff's claim." *Aguirre v. S.E.C.*, 671 F. Supp. 2d 113, 117 (D.D.C. 2009) (citations omitted). "Documents not explicitly referenced in a complaint but on which a complaint 'necessarily relies' are not outside the pleadings, however, and can be considered without converting the motion [to a motion for summary judgment]." *Krukas v. AARP, Inc.*, 458 F. Supp. 3d 1, 14 n.9 (D.D.C. 2020) (citing *Hinton v. Corrs. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009), and then *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "A federal court may take judicial notice of 'a fact that is not subject to reasonable dispute' if it . . . 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (citing Fed. R. Evid. 201(b)). *In re Skybridge Spectrum Found.*, No. 21-00005-ELG, 2021 Bankr. LEXIS 1534, at 17-19 (Bankr. D.D.C. June 3, 2021).

B.  The Involuntary Petition Insufficiently States and Defines the Asserted Debt Obligation

Bankruptcy Rule 1011(b) directs that Federal Rule of Civil Procedure 12 applies to any defenses to an involuntary petition.  Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint, or in this instance, the involuntary petition and any attachments thereto, state a claim only if it contains "enough facts to state a claim to relief that is plausible on its face." *In re Prudhomme Du Hancourt*, 2020 Bankr. LEXIS 3305, at 8-9 (quoting *Twombly*, 550 U.S. at 570).  In essence, a motion to dismiss an involuntary petition tests the legal sufficiency of the facts alleged therein.  *See In re Cash*, 2018 Bankr. LEXIS 3322, *6-7 (citing *Herron*, 861 F.3d at 173); *In re Skybridge Spectrum Found.*, No. 21-00005-ELG, at *17-18.

For a bankruptcy court to enter an order for relief on an involuntary petition, "[t]he elements of both §§ 303(a) and (b) of the Bankruptcy Code must each be met[.]" *In re Skybridge Spectrum Found.*, 2021 Bankr. LEXIS 1534, at *31.  Subsection (a) "establishes against whom an involuntary chapter 7 or 11 case may be filed." *Id.*  "Subsection (b), in turn, sets forth the requisite number and type of creditors necessary to commence an involuntary case against an eligible debtor." *Id.*

Even if it is assumed that Paret is an individual who is eligible to be classified as an involuntary debtor within the meaning of § 303(a), the instant case should be dismissed because Petitioners have failed to meet the eligibility requirements of § 303(b).  An involuntary case may only be commenced "by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount[.]"  11 U.S.C. § 303(b)(1).

"A 'bona fide dispute' is "a legitimate dispute over the validity of the claim or the amount that is owing[.]" *Radtke v. Caschetta*, 254 F. Supp. 3d 163, 174 (D.D.C. 2017).  "For

purposes of determining whether or not a claim is 'subject of a bona fide dispute' in conjunction with an involuntary proceeding under the Bankruptcy Code, the burden initially rests with the petitioning creditor to show that said creditor is qualified under § 303(b)(1)." *In re Skybridge Spectrum Found.*, 2021 Bankr. LEXIS 1534, at *44.  Under this test:

> If there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed. . . . In determining whether a claim is subject to a bona fide dispute, the bankruptcy court must not resolve any genuine issues of fact or law. . . . it only must determine that such issues exist.

*Id.* at *44-45 (quoting *Riverview Trenton R.R. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944-45 (6th Cir. 2007)).

Here, Petitioners "bear[ ] the initial burden of proof to establish that [their] claims are beyond a bona fide dispute." *In re Skybridge Spectrum Found.*, 2021 Bankr. LEXIS 1534, at 48. Petitioners have failed to meet their initial burden, and, therefore, the Involuntary Petition should be dismissed. *See id.*  To begin with, the asserted debt in the Involuntary Petition is ambiguous and unspecified.  It does not specifically identify one or more transactions, contracts, obligations. According to the Court's docket, there are no attachments to the filing.  Nor does the Involuntary Petition specify the nature and distinction, if any, among the three claimants who are each connected to WCP Fund's loan portfolio.  As a matter of law, DP Capital, owned by Huertas, the Chief Executive Officer of WCP Fund, is the servicer of loans made by the WCP Fund.  Further, upon information and belief, there is an agreement between WCP Fund and DP Capital regarding the servicing of said loans issued by WCP Fund.  See *Developer REI,  LL,C.  v. DP Capital, LL.C d/. b/a Washington Capital Parners, et al.,*  No.  2022-CAB-005935.  That Agreement defines the relationship between the Petitioners herein.

6

Absent more than a conclusory, non-specific statement of the underlying debt for the Petitioners' Involuntary Petition, Paret cannot ascertain fully the extent to which the respective claims, if at all separate and distinct, are disputed except as stated in the following argument regarding the asserted partnership agreement and relationship between Huertas and Paret.

Petitioners have failed to adequately plead the absence of a bona fide dispute concerning the alleged debts underlying the Involuntary Petition. Even "[t]aking as true the non-conclusory allegations in the petition and considering the materials of which the Court could take judicial notice, it [is] plain that there [is] a bona fide dispute as to [Paret's alleged] . . . debts to the petitioners." *Tate v. Navient Sols., LLC (In re Navient Sols., LLC)*, No. 21-CV-2897 (JGK), 2022 U.S. Dist. LEXIS 86382, at *6 (S.D.N.Y. May 11, 2022). Accordingly, Paret's motion to dismiss the instant Involuntary Petition should be granted.

C. Paret asserts a partnership relationship with Huertas, the principal of WCP Fund and DP Capital, regarding his loans and real estate development projects and corresponding debt obligations in the District of Columbia

According to 11 U.S.C. § 303(b):

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title-**(1)** by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $10,000 [1] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

The immediate claims in the Petitioners' Involuntary Petition are disputed as follows. On July 26, 2023, the Paret filed a lawsuit in the District of Columbia Superior Court in which he asserted a partnership agreement between Mr. Cortez and himself specifically related to property development in the District of Columbia. Pertinent language regarding establishment of that

7

partnership derives not from Paret, but rather from Huertas as indicated in his September 2019 email to which Mr. Paret agreed.   See Exhibit 1.

> Here is further confirmation that by providing the below capital including future capital to the partnership, this is debt that will be split 51% Daniel Huertas, 49% Charles Paret.  Charles Paret will manage day to day operation of all projects (construction, development, stabilization) including in this email.
>
> Daniel Huertas will manage all financial aspects related to capital, partnerships, ventures and will have final word related to execution of the real estate. Charles Paret is responsible solely for all debt and obligations prior to 9/20/19. (payments)
>
> Charles Paret is not going to incur any additional debt or loans against real estate attached to this email or any purchase of any additional real estate.   Please return with Agree and confirm that we will operate as such.

As Asserted in Paret's Amended pleading in the adversary action, the parties continually affirmed their partnership. On September 30, 2019, in furtherance of the agreed upon partnership, Huertas penned an e-mail to Paret which stated:

> Charlie –
>
> Please see attached payment requests. ***By Daniel Huertas and/or companies paying the attached invoices for properties, Daniel Huertas will have 50% ownership of the properties and 51% in regard of control***.  Any other partnership set by Charles Paret will be taking from his side. ***The payments here are a loan to the partnership at 10% APR. Before any distribution is provided, the partnership needs to pay all amounts paid here.*** (Emphasis added).
>
> - 429 Kennedy (#5068) - $4,030.16
> - 433 Kennedy (#5120) - $4,182.80
> - 4910 Georgia Ave (#5607) $13,339.91[1]

See Exhibit 2.

By this email, Huertas made it clear that he would be acting on the Partnership's behalf through "other companies" which clearly included WCP through which he subsequently approved

---

[1] Subsequent to the partnership, Huertas approved loans involving several properties including, but not limited to, 1249 Bladensburg Road, NE, 4910 Georgia Avenue, NW, and 1260 Holbrook Terrace NW, among others.  Interest obligations for the loan were Huertas' responsibility.

8

loans to Paret and DP Capital, which he owned and controlled exclusively, in the loan financing process; DP Capital would make loans to the Huertas-Paret partnership and take second notes with on the construction/renovation loans.

As further asserted in Paret's amended pleading, Paret responded to Defendant's September 30, 2019 email and again agreed. The parties thereafter acted substantially and consistently with their expressed partnership interests. During the next several years, Paret handled the day-to-day operations of the partnership's real estate projects. Huertas managed its financial aspects and enjoyed final approval of matters related to capital, partnerships, and ventures, among other things. Huertas did not collect interest on multiple approved WCP construction and renovation loans to Paret for several years after September 2019 partnership agreement.

In his September 30, 2019 e-mail, Huertas confirmed his intent and understanding of the partnership's consummation, stating: "any other partnerships set by Charles Paret will be taking from his side." By this statement Huertas acknowledged existence of the parties respective partnership interests. See Exhibits 1 and 2. That communication, augmented by subsequent communications, and the manner in which WCP Fund subsequently approved loans to the purported Debtor's real estate acquisitions for development purposes, further demonstrates the partnership relationship between Messrs. Paret and Huertas following September 2019. Consistent therewith, Huertas expected that should these developments projects go well, he would financially benefit therefrom. They apparently did not; however, the partnership between the parties has never been reconciled nor resolved in terms of the debt obligations, particularly when Huertas is effectively here both the lender and by way of his partnership with Paret, co-debtor.

Various foreclosure records will demonstrate that Huertas, through DP Capital, also engaged through WCP Fund in the foreclosure process, and purchased properties with which he

has entered partnerships with Paret. Additionally, the activities of WCP Fund, DP Capital, and Huertas are the subjects of ongoing litigation in the District of Columbia. One such case also asserts a partnership between Huertas and Paret. See *Kim, et al., vs. DP Capitol, et al.*, Case No. 1:23-CV-1101 at p.6 Exhibit 3.

## D.C. Law of Partnership

Upon review of the record for material facts supporting Paret's claim that the debt herein is disputed, D.C. partnership law is instructive. The substantive law of partnership defines which facts are material. *United States v. Rollinson*, 275 U.S.App.D.C. 345, 347, 866 F.2d 1463, 1465, *cert. denied*, ___ U.S. ___, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)).

While the partnership relation has been variously defined, traditionally it is formed "when two or more competent persons [contract] to place their money, effects, labor, and skill or some or all of them, in lawful commerce or business, and to divide profit and bear the loss in certain proportions." *Georgia Casualty Co. v. Hoage*, 61 App.D.C. 195, 197, 59 F.2d 870, 872 (1932). The District of Columbia Uniform Partnership Act, D.C. Code §§ 41-101 to -142 (1986) ("Partnership Act"), similarly defines a partnership as "an association of 2 or more persons to carry on as co-owners of a business for profit." D.C. Code § 41-105(a). Thus, for a partnership to arise in law, two or more persons must intend to associate together to carry on as co-owners for profit. *Gangl v. Gangl*, 281 N.W.2d 574, 579 (N.D. 1979). Although the rights and duties of a partnership with respect to third parties can arise by law even though the parties do not intend to become partners, *Robinson v. Parker*, 11 App.D.C. 132, 140 (1897); *see* D.C. Code § 41-115(a) (partnership by estoppel), as between partners themselves the relationship is consensual. *Garner v. Garner*, 31 Md. App. 641, 647, 358 A.2d 583, 588 (1976)

("partnership *inter sese* cannot exist against the consent and intention of the parties. . . ."). And although the manner in which the parties themselves characterize the relationship is probative, the question ultimately is objective: did the parties intend "to do the acts that in law constitute partnership"? A. BROMBERG L. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP § 2.05(c), at 2:36 (1988) (citations omitted). "In general, the courts, in determining objective partnership intent, look for the presence or absence of the attributes of co-ownership, including profit and loss sharing, control, and capital contributions." *Id.; see also* 68 C.J.S. *Partnership* § 10 (1950).

The customary attributes of partnership such as profit and loss sharing and joint control of decision-making are necessary guide points of inquiry, but none is conclusive. For example, D.C. Code § 41-106(4) creates, in effect, a statutory presumption of partnership from evidence that a party shared in the profits of the business. An exception is made, however, if — for instance — the profits are received "in payment . . . [a]s wages of an employee. . . ." *Id.* § 41-106(4)(B). *See also Farrow v. Cahill*, 214 U.S.App.D.C. 24, 28 n. 17, 663 F.2d 201, 205 n. 17 (1980). Similarly, while a right of joint control is ordinarily key to partnership, the statute recognizes that one partner may cede the power to manage and control the business to one or more of his associates. *See* D.C. Code § 41-117. "A person may be a partner even though he has entrusted control of the business exclusively to his associates. The question then becomes whether or not the participant had the *right* to exercise control in the management of the business." *Gangl*, 281 N.W.2d at 580.

Finally, a partner "must contribute toward the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits," but again the parties may agree to the contrary, D.C. Code § 41-117(1); A. BROMBERG L. RIBSTEIN, *supra*, § 2.07(d), at 2:67-68 (partnership may exist if the purported partners expressly so agree, even if some of the parties

guaranteed the others against loss). As these authors recognize, loss sharing — like profit sharing and control — "takes on greater or lesser importance as an independent element of partnership depending on the extent to which there is other evidence supporting partnership." *Id.* at 2:68-69. Ultimately, then, whether a partnership exists is an issue of fact, *Jonathan Woodner Co. v. Laufer*, 531 A.2d 280, 285 n. 7 (D.C. 1987), turning less on the presence or absence of legal essentials than on the intent of the parties gathered from their agreement, conduct, and the circumstances surrounding their transactions. *In re Washington Communications Group*, 18 B.R. 437, 442 n. 6 (Bankr. D.C. 1982); *Beckman v. Farmer*, 579 A.2d 618, 627-28 (D.C. 1990)

Applicable D.C. Law is instructive on the issue of the alleged partnership and reads in pertinent part:

> § 29–608.07. Settlement of accounts and contributions among partners.
>
> **(a)** In winding up a partnership's activities and affairs, the assets of the partnership, including the contributions of the partners required by this section, shall be applied to discharge its obligations to creditors, including, to the extent permitted by law, partners who are creditors. Any surplus shall be applied to pay in cash the net amount distributable to partners in accordance with their right to distributions under subsection (b) of this section.
>
> **(b)** Each partner shall be entitled to a settlement of all partnership accounts upon winding up the partnership activities and affairs. In settling accounts among the partners, profits and losses that result from the liquidation of the partnership assets shall be credited and charged to the partners' accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account. A partner shall contribute to the partnership an amount equal to any excess of the charges over the credits in the partner's account but excluding from the calculation charges attributable to an obligation for which the partner is not personally liable under § 29-603.06.
>
> ....
>
> **(d)** After the settlement of accounts, each partner shall contribute, in the proportion in which the partner shares partnership losses, the amount necessary to satisfy partnership obligations that were not known at the time of the settlement and for which the partner is personally liable under § 29-603.06.

Paret's D.C. Superior Court Case, now moved to this Court and now amended, pending Debtor's motions and response thereto, asserts in great detail the particulars of the Huertas-Paret partnership. Critical to this argument is that Huertas is also the Chief Executive Officer of the Claimant WCP Fund, and the principal and owner of DP Capital. Based upon the partnership agreement, Huertas is obligated for the partnership debt incurred on the extensive real estate transactions noted in Paret's amended pleading; none of which are referenced in the Involuntary Petition, as stated above. Additionally, these debts are highly disputed, including the role of DP Capital in Paret's alleged breach of fiduciary duty claim against Huertas as Paret's partner. In this connection, there is independent litigation that asserts liability against Huertas on that basis involving one of the subject properties to which the parties agreed to improve and liquidate. See

The simple and very clear reality is that Huertas attempted to wear multiple hats which inherently created conflicts of interest. Further, he acted subjectively against his partnership interest when the economic climate shifted except the partnership did not self-dissolve and any issues arising therefrom had to be addressed from the lens of partnership rather than contract law.

Based upon the record of litigation against Huertas, attached hereto and referenced herein, and the asserted Huertas-Paret partnership, any debt obligation asserted against Paret attributed to loans that made by Huertas and DP Capital are also asserted against Huertas, subject to a proper audit and constructive trust, and the statutory dissolution of the Huertas-Paret partnership consistent with applicable law. Such debt is not only undisputed it is obscure and unclear, and therefore remains disputed. Further, Paret's breach of fiduciary duty claim against Huertas implicates the manner in which he made collection and foreclosure decisions on WCP and DP's behalf against the partnership.

Claimants therefore cannot show that the asserted basis for their Involuntary Bankruptcy Petition are based upon undisputed material facts or debt obligations not informed by Huertas conflicts of interest and/or equal exposure as partner in the Huertas-Paret partnership.

### III.    CONCLUSION

Mr. Paret has clearly established that DC Partnership law governs the immediate dispute and that the parties agreed to enter into a partnership by their words, deeds, and intentions. To this extent, the formation of the Huertas-Paret partnership had significant debt obligation implications which as a meaningful dispute are required to be shared by Huertas. Huertas arguably, as noted above, shares responsibility for the partnership's losses as much as its profits. Indeed, if this arrangement were as lucrative as imagined Huertas would claim his agreed upon share of the partnership profits based upon his September 20 and 30, 2019 correspondence and actions related thereto.

Finally, in the partnership dissolution process, Huertas would be precluded as a o-debtor from taking any adverse action against Paret, but more specifically against the partnership's interest. This would thusly negate DP Capital's claim here.

WHEREFORE, for reasons stated herein the immediate relief should be granted.

Respectfully submitted,
*/s/Donald M. Temple*
Donald M. Temple #408749
1310 L Street, N.W. Suite 750
Washington, D.C. 20005
(202) 628-1101
dtemplelaw@gmail.com
***Attorney for Plaintiff/Purported Debtor***

14