*Exhibit – Charles Paret Motion to Vacate Judgment.*

## MARITAL SETTLEMENT AGREEMENT

THIS MARITAL SETTLEMENT AGREEMENT is entered into this day 22nd of August 2023 by and between Dana Zelman ("Dana" or "party") and Charles Paret ("Charles" or "party) (collectively the "parties").

## RECITALS

1. The parties were lawfully married on September 29, 2018, in New Orleans, Louisiana.

2. No children were born or adopted of the marriage.

3. As a result of differences arising between the parties, the parties mutually and voluntarily separated on September 17, 2022, with the intent of ending their marriage. There is no reasonable hope of reconciliation.

4. This Agreement resolves all issues arising out of the parties' marital relationship, including, but not limited to, alimony and distribution of property and debt.

5. This Agreement has been negotiated by each of the parties freely and voluntarily. Each party had the opportunity to seek the advice of independent legal counsel of his and her own choosing.

6. The parties warrant and represent to each other that each of them fully understands the terms, covenants, provisions and obligations incumbent on each by virtue of this Agreement. Each party believes the terms of the Agreement to be a reasonable compromise and settlement of their respective rights, claims and responsibilities. Each states that he or she has determined that he or she has the present ability to comply with the terms of this Agreement, and each intends it to be fully effective.

DZ   CP   1

NOW, THEREFORE, in consideration of the promises and mutual covenants and understandings of each of the parties, the parties hereby covenant and agree as follows, all as of the effective date hereof.

### I. INCORPORATION OF RECITALS

The Recitals set forth above are incorporated into this Agreement.

### II. SEPARATION

The parties mutually and voluntarily separated on September 17, 2022 and have continued living separate and apart without cohabitation since that date. As of the date of this Agreement, the parties mutually and voluntarily agree that each is free from any control, authority, restraint or interference, direct or indirect, by the other party.

### III. ALIMONY WAIVERS

A.  Dana expressly releases and relinquishes any rights she may now or hereafter have to receive alimony, maintenance, or spousal support from Charles, both *pendente lite* and permanently, whether the same results from common law, statutory law, or by way of equitable rights. The parties further agree that this provision shall not be modifiable by any Court for any reason.

B.  Charles expressly releases and relinquishes any rights he may now or hereafter have to receive alimony, maintenance, or spousal support from Dana, both *pendente lite* and permanently, whether the same results from common law, statutory law, or by way of equitable rights. The parties further agree that this provision shall not be modifiable by any Court for any reason.

C. The parties agree that, consistent with D.C. Code §16-911 *et seq.* and D.C. Code §16-913 *et seq.*, the provisions of this section with respect to alimony, spousal support, and/or maintenance are not and shall not be subject to any court modification, and both parties agree that neither may apply to any court for an increase or decrease in the amount of, the duration of, or a modification of the terms of such alimony, support and maintenance as herein provided.

## IV.    REAL PROPERTY

A. **3180 Harry Byrd Highway, Berryville, Virginia 22611.** During the marriage, the parties purchased a home located at 3180 Harry Byrd Highway, Berryville, Virginia 22611 ("Berryville Home"). The Berryville Home is titled solely in Dana's name and is subject to a mortgage solely in Dana's name. The mortgage is held by Citibank N.A. ("Mortgage"). Charles will have the first option to buy out Dana's interest in the Berryville Home as set forth below. If Charles does not exercise his option to buy out Dana's interest, the Berryville Home will be sold.

1. **Charles' buyout of Dana's interest.** If Charles elects to exercise his option to buy out Dana's interest in the Berryville Home, he must do the following on or before October 13, 2023: (i) pay the lump sum of $250,000.00; (ii) pay off the Mortgage in full such that Dana's liability associated with the mortgage is extinguished; and (iii) pay the lump sum of $233,000.00 to Dana's parents, David Zelman and Kathleen Zelman ("Dana's Parents"), as reimbursement for funds they loaned to Charles. Charles shall be responsible for preparing the quitclaim deed and any necessary transfer documents and providing them to Dana for her signature. Upon being presented with the quitclaim deed and any necessary transfer documents, Dana shall execute the documents. The quitclaim deed and any necessary transfer documents shall be held in escrow by the settlement attorney until closing has been finalized and the funds

DZ    CP    3

set forth in this paragraph have been disbursed to Dana and Dana's parents or the settlement attorney confirms that the funds are in escrow with the settlement attorney. Charles shall also be responsible for paying all transfer costs and any taxes associated with the transfer. In the event that Charles exercises his option to buy out Dana's interest in the Berryville Home, Charles shall retain the Berryville Home as his sole and separate property and Dana waives all right, title, or interest therein. Further, in the event that Charles exercises his option to buy out Dana's interest in the Berryville Home, Charles shall hold Dana harmless and indemnify her for any and all liability associated with the Berryville Home. Within three business days of the execution of this Agreement, Dana's parents will execute a release absolving Charles from liability associated with the loans that Dana's parents have made to him and the release shall be held in escrow by Offit Kurman, P.A., until the requirements of this paragraph have been fully complied with by Charles. In the event that Charles fully complies with the requirements set forth in this paragraph to buy out Dana's interest in the Berryville Home, the release executed by Dana's parents shall be promptly released to Charles or his counsel.

2. **Sale of Berryville Home.** In the event that Charles does not exercise his option to buy out Dana's interest in the Berryville Home, the Berryville Home shall be sold as set forth below.

a. The parties shall hire Rocky Westfall as the real estate agent to list the Berryville Home for sale. In the event that Mr. Westfall is not available, the parties shall use a real estate agent recommended by Mr. Westfall. The parties shall fully cooperate with the real estate agent in an effort to sell the property and shall keep the home in show-ready condition.

b. The parties shall establish the listing price of the property by agreement. If the parties cannot agree, the parties shall list the Berryville Home at a price recommended by the real estate agent. The parties agree to accept any bona fide offer to purchase that is at least ninety-five percent (95%) of the listing price. If the Berryville Home is not under contract for sale at the end of thirty (30) days following the original listing, the parties will discuss and mutually agree to a reduction in the listing price. If the parties cannot mutually agree on a reduced listing price, the parties shall follow all recommendations of their real estate agent regarding pricing strategies.

c. Upon the sale of the Berryville Home in accordance herewith, the proceeds of the sale shall be divided as follows, with deductions and applications of proceeds to be accomplished exactly as specified below, in the order listed:

i. Broker's commissions and/or attorney's fees incurred in connection with the sale shall be paid in full;

ii. All expenses of sale and closing costs shall be paid in full;

iii. Payment of the Mortgage, including the principal, accrued interest, and any prepayment penalty due on the Mortgage shall be paid in full;

iv. After deductions of items in paragraphs IV(A)(2)(c)(i-iii) above, the remaining net proceeds shall be divided equally among Dana and Charles except that the settlement company shall directly transfer $233,000.000 from Charles' share of the proceeds to Dana's Parents. This Agreement constitutes express authorization for the settlement company to directly disburse the $233,000.00 from Charles' share of the proceeds to Dana's parents. Within three business days of the execution of this Agreement, Dana's parents will execute a

release absolving Charles from liability associated with the loans that Dana's parents have made to him, and the release shall be held in escrow by Offit Kurman, P.A., until Dana's parents receive $233,000.00 from the settlement company. After Dana's parents receive $233,000.00 from the settlement company, the release executed by Dana's parents shall be promptly released to Charles or his counsel.

4. The parties shall not remove from the Berryville Home any fixtures, including the refrigerator and other built-in appliances, unless they assume sole ownership of the home following a buyout. The parties shall also refrain from engaging in any actions that would damage the Berryville Home or reduce the value of the property.

5. Until Charles buys out Dana's interest in the Berryville Home or the Berryville Home is sold, Charles shall be responsible for paying all expenses associated with the Berryville Home, including the monthly mortgage payments, property taxes, insurance, and utilities.

6. Except in the context of Charles' efforts to obtain a loan to pay off the Mortgage and buy out Dana's interest in the Berryville Home, neither party shall encumber the Berryville Home with any additional debt, note, deed of trust, mortgage, line of credit, or any other loan.

7. The parties intend that Charles' buyout of Dana's interest in the Berryville Home will be a tax-free transfer incident to divorce and related to the cessation of the marriage pursuant to §1041 of the Internal Revenue Code of 1986 as amended.

8. **Release of Judgment Liens.** Rainman Capital LLC and Reddy Parikh Parini Shah LLC (collectively "Judgment Creditors") have recorded judgment liens ("Judgment

# PAGES 7 TO 15

# DELIBERATED OMITTED

shall file an answer consenting to the amended complaint for uncontested divorce, and the parties shall file a joint request for uncontested divorce hearing.

O. This Agreement shall be neither incorporated nor merged into a judgment of absolute divorce or court order and shall instead remain an independent contract between the parties.

P. Time is of the essence.

IN WITNESS WHEREOF, the parties have signed and acknowledged four (4) counter-parts of this Agreement, each of which constitutes an original.

_____    _____(SEAL)
Date                                                              CHARLES PARET

_____    _____(SEAL)
Date                                                              DANA ZELMAN

DZ   CP   16