Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-217-ELG |
| | ) | |
| Charles Paxton Paret | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION TO CONVERT TO CHAPTER 7 TO PREVENT
DEBTOR FROM CONTINUING TO SELL ESTATE ASSETS**

Comes now WCP Fund I LLC ("WCP"), by and through undersigned counsel, pursuant to Section 1112 of Title 11 of the United States Code, and moves to convert this proceeding to one under Chapter 7 of the foregoing title, and in support thereof states as follows:

**I.    Introduction**

In or before May 2020, Charles Paxton Paret ("Mr. Paret" or the "Debtor") purchased a 1980 Chevrolet Camaro (the "Camaro") through a private sale; it is believed the seller was Jonathan Robert Bowman, of Jacksonville, Florida. The Camaro has two doors, is black with orange and pink hood stripes, and is assigned a vehicle identification number ("VIN") of 1P87LAL529370. For the bargain-basement price of $28,000.00, the Camaro can be purchased by anyone reading this motion, since it is for sale on Facebook Marketplace.

The Camaro is registered to Mr. Paret and, alongside a 1980 Mercedes Benz SL-Class, a 1993 Land Rover Defender, a 1936 Essex Terraplane, a 1926 Chrysler Imperial, and more than

1

175 other goods – ranging from an oversized carnival seat to a restored vintage 7-Up machine – comprises the Debtor's boutique on the social media site. It is an impressive storefront, rivaling many antique dealerships and high-end pawn shops. And none of its contents are disclosed on the Debtor's schedules – not even the Camaro that is registered in his name.

While WCP is aware that a separate motion to convert, filed by the United States Trustee, is already pending, this motion is brought with an increased sense of urgency. The prior motion addresses filing failures and a generalized absence of cooperation; this motion is premised upon the increasingly-manifest reality that Mr. Paret's casual approach to deadlines mirrors his casual approach to full disclosure. Assets a trustee could be selling for the benefit of creditors are on sale, to the public at large, and no matter how thoroughly one might read the docket in this case, not so much as a hint of those assets' existence is manifest.

## II.    Standard

The Bankruptcy Code provides that matters under Chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. § 1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may constitute such cause, including, *inter alia*:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; … (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter...

11 U.S.C. § 1112(b)(4). "The list is illustrative, not exhaustive. Courts may find cause for other equitable reasons." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing 11 U.S.C. § 1112(b)(4); *In re FRGR Managing Member LLC*, 419 B.R. 576, 582–83 (Bankr.S.D.N.Y.2009)).

Once a creditor has filed a motion such as this, seeking conversion or dismissal and setting forth cause within the meaning of Section 1112(b)(4) of the Bankruptcy Code, the burden shifts to the Debtor to demonstrate the satisfaction of four criteria:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-- (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-- (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). Thus the Debtor must establish (i) unusual circumstances giving rise to the underlying cause; (ii) a reasonable likelihood of timely plan confirmation; (iii) reasonable justification for the cause giving rise to the underlying motion; and (iv) imminent cure of the subject deficiency. Critically, these criteria are conjunctive, not disjunctive, so unless each and every criterion is satisfied, the Bankruptcy Code requires a case to be converted.

### III.    Factual Background

The order for relief was entered in this case on August 31, 2023. DE #5. Some 76 days later, the Debtor finally filed his schedules and statement of financial affairs. DE #50. In so doing, he disclosed an interest in two motor vehicles – a 2018 Tesla X and a 2022 Land Rover Defender – alongside two parcels of real property, "standard household furniture," four electronic devices, some golf clubs, "standard men's clothing," a dog, various businesses, stolen Bitcoin worth just over $21.5 million, and some litigation rights. *Id.* at pp. 3-9.[1]

---

[1] Mr. Paret did not actually value the stolen Bitcoin, instead indicating an unknown value and "over 320 bitcoin" being pilfered. The present prevailing exchange rate is $67,435.80 per one Bitcoin, rendering the stash worth $21,579,456.00.

3

On his Statement of Financial Affairs, the Debtor indicated that he does not "hold or control any property that someone else owns." *Id.* at p. 41.

A review of Facebook Marketplace reveals Mr. Paret currently has listed for sale some 181 items, ranging from a Nichol Kola sign that may be purchased for $1,250.00, to a floral-painted desk that may be purchased for $450.00, to the aforementioned fleet of vehicles. *See* Pictures of Facebook Marketplace Store, attached hereto as Exhibit A.[2] Since Mr. Paret has sworn under oath that he is not holding property owned by anyone else, it would appear these are not likely to be consigned goods.

Lest the possibility of consignment persist, however, the Commonwealth of Virginia's motor vehicle records provide a clean ownership history of the Camaro. Such records show the vehicle was owned, as far back as 1989, by Gary Walter Pinkien, before being transferred to Jonathan Robert Bowman at some point prior to May 15, 2007. The vehicle was then conveyed, via private sale, to Mr. Paret, on or before May 25, 2020. The Debtor is the current registrant. *See* Motor Vehicle Record, attached hereto as Exhibit B.

**IV.    Argument: The Debtor Has Concealed Material Assets**

This case is more than six months old and, until now, no one reviewing the various filings herein would have any idea the Debtor owns a Camaro or is presently marketing nearly 200 items for sale. Mr. Paret has held himself out as a contractor, a developer, and a consultant. Yet, just three days ago, with his prior tax filings still delinquent, with documents still owed to the United States Trustee, and with other case-centric obligations still pending, the Debtor found time to list

---

[2] Facebook Marketplace does not lend itself to the printing or PDFing of pages on a traditional browser. As such, to aggregate the subject listing, screenshots have been taken from a cell phone and aggregated in a PDF. At the tail of the PDF is a second printout, created by copying and sales listings from a conventional browser. Thusly, two copies of each listing appear in the PDF – one from the screenshots and one from the copies/pasted content.

4

for sale a "Louis XVI Style Wooden Side Table with Marble Top," a gumball machine, and a "Late 1800's Stool (Wrought Iron & Oak with Leather Top)." *See* Recent Listings, attached hereto as Exhibits C, D, and E.

Perhaps more concerningly, it appears that right around the time this case was filed, Mr. Paret sold a BMW. *See* BMW Sale, attached hereto as Exhibit F. Myriad other items have been sold; unfortunately, Facebook Marketplace does not readily report on the dates of such sales. Though the mind need not wander far to surmise if months upon months passed without operating reports because the Debtor was otherwise occupied unloading tchotchkes, furniture and motor vehicles.

These listings and sales furnish ample cause for conversion under Section 1112. As a starting point, each sale marks a substantial and continuing diminution of Mr. Paret's estate; if a trustee were selling these items, the proceeds would become available to creditors – with the Debtor helming the online sales, the proceeds are unlikely to ever find their way into creditors' hands. This is especially true with the Debtor's now-filed operating reports showing losses each month. DE #80 at p. 9; DE #81 at p. 9; DE #82 at p. 9. And even that assumes the veracity of the operating reports; given that the reports for December 2023 and January 2024 appear to be verbatim identical, to the dollar, such veracity may well be in question.

Equally, the marketing and selling of assets, without leave of court, is *prima facie* mismanagement of the estate. Section 363 sets forth the notice and hearing rigors attendant to the sale of an estate asset; Mr. Paret's Camaro is currently in the virtual showroom window, for anyone to buy, without a motion having ever been filed. And so, too, does the post-petition sale of property mark a contravention of the reporting requirements of Federal Rules of Bankruptcy Procedure, as

5

Mr. Paret has not filed "an itemized statement of the property sold, the name of each purchaser, and the price received for each item … on completion of a sale." Fed. R. Bankr. P. 6004(f)(1).

The most significant cause, though, is the obvious: the Debtor is selling unscheduled assets, through undisclosed sales, to unknown purchasers. The 181 current listings undercut the purpose and spirit of Chapter 11 in almost every way. And the only sensible means of remedying such is to remove the Debtor from Chapter 11, so a trustee may take helm of the assets, begin to account for what has already been lost, explore Chapter 5 claims, and ensure creditors – and not Mr. Paret – receive the benefits of any asset liquidations on a forward-looking basis.

### V.     Conclusion

WHEREFORE, the Defendant respectfully prays this Honorable Court (i) convert this case to a proceeding under Chapter 7; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 4, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of March, 2024, a copy of the foregoing was served electronically upon filing via the ECF system. A motion to expedite consideration of this motion is being filed herewith; further service will be accomplished in accord with any order that may be issued in response to the motion to expedite.

/s/ Maurice B. VerStandig
Maurice B. VerStandig