IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor*. | Case No.: 23-00217<br>Chapter 7 |

**4910 GEORGIA AVENUE INVESTORS' OBJECTION TO
THE MOTION FOR APPROVAL OF
SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019**

Manik Chamarthy, Venugopal Chidarala, Tanuja Vedere, Manjula Sure, Ravinder Eeraveni, and Srikanth Tangedipalli, investors in a real estate development at 4910 Georgia Avenue, NW (collectively the "4910 Georgia Avenue Investors"), and creditors and parties-in-interest in this case, file their Objection to the Motion for Approval of Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019 filed on March 28, 2025 (ECF # 158). In support of this Objection, the 4910 Georgia Avenue Investors represent to the Court as follows:

**Jurisdiction**

1.  The 4910 Georgia Avenue Investors agree that this Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and that venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The 4910 Georgia Avenue Investors agree that the Motion is evaluated under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

3.  The 4910 Georgia Avenue Investors agree that paragraphs 3-7 of the Motion provide part of the relevant factual background leading up to the filing of the Motion. But left

out of the Background portion of the Motion are several facts that are important for the Court to consider, which are discussed further below.

4.     On November 12, 2024, in the related Adversary Proceeding, the Court issued a Scheduling Order allowing for discovery to be completed by July 31, 2025. *See* ECF # 47 (filed in in 23-10025-ELG). But the Motion does not provide any indication about the scope of discovery that was pursued by the Trustee, if any. For example, the Motion does not describe whether the Trustee obtained any information in discovery regarding either the valuation of, or the performance of, the twenty-one properties that are alleged to be a part of the partnership.

## The Legal Standards

5.     The Motion correctly cites to several cases regarding the general rules and standards for approving a settlement under Fed. R. Bankr. P. 9019(a). *See* Motion at 4, ¶¶ 13-14 (citing *In re Frye,* 216 B.R. 166, 172 (Bankr. E.D. Va. 1997), *Marandas v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993), *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted), and *In re Tennol Energy Co.,* 127 B.R. 820 (Bankr. E.D. Tenn.1991). But these are not the only rules and standards that are in play here.

6.     Although this Court clearly has an obligation to investigate the factual situation, it is not necessary for the Court to conduct a "mini-trial" of the facts or the merits. *See In re Adelphia Commc'ns Corp.,* 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005). Rather, the Court has to "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness . . . ." *In re WT. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983).

7.     The U.S. Supreme Court has also noted that when evaluating a compromise involving litigation:

> There can be no informed and independent judgment as to whether
> a proposed compromise is fair and equitable until the bankruptcy

2

> judge has apprised himself [or herself] *of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.* Further, the judge should form an educated estimate of the complexity, expense, likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25 (1968).

8. Fed. R. Bankr. P. 9019(a) also requires that settlements be fair and equitable to non-settling parties. When, as is the case here, "the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval . . . [I]f third parties complain to a judge that a decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside." *In re Masters Mates & Pilots Pension Plan & IRAP Litig.,* 957 F.2d 1020, 1026 (2d Cir. 1992).

9. In the Motion, the Trustee relies upon a Second Circuit decision, but that circuit has also made clear that "when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling parties." *Stanwich Fin. Servs. Corp. v. Pardee (In re Stanwich Fin. Servs. Corp.)*, 377 B.R. 432, 437 (Bankr. D. Conn. 2007) (citing *In re Drexel Burnham Lambert Grp.,* 995 F.2d 1138, 1146-47 (2d Cir. 1993).

**Reasons for the Objection**

10. The Trustee here has provided insufficient information that would enable the Court, or the interested parties, to "canvass the issues" to determine whether the settlement falls within any reasonable range. Nowhere in the Motion does the Trustee provide a valuation of the

3

claims, much less a high and low range, within which a potential recovery may fall. This deficiency, among others, deprives the Court and most of the interested parties of the facts needed for them to make "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Protective Comm.,* 390 U.S. at 424-25.

11. The Motion claims that cooperation by the Debtor "is not guaranteed", but the Debtor has been actively reaching out to, and communicating with, creditors like the 4910 Georgia Avenue Investors throughout the course of this case.

12. The Motion indicates that the Trustee relied upon "lengthy negotiations with WCP, DPCL and Mr. Huertas, through counsel" . . that led him to believe that "there may exist various factual and legal defenses to the claims in the lawsuit." Motion at 2, ¶ 8. Here the Trustee appears to be arguing that counsel for the *targets* of the claims persuaded him to settle for what appears to be a nominal amount.

13. There are factual and legal defenses available to nearly every defendant in a civil case, and the job of a defense lawyer in a civil case always includes trying to convince the plaintiff to drop the claims for pennies on the dollar. With all due respect to this very experienced and well-respected Trustee, the argument in paragraph 8 of the Motion sounds a little like the fox had a prominent role here in guarding the henhouse, and which chickens' eggs the fox could eat or leave behind.

14. The Trustee also contends that he "believes that even if the lawsuit is successful, any recovery may be limited on account of the underperformance of the various assets alleged to be a part of the partnership." *Id.* But the Trustee had not provided any information that would inform the Court, or anyone else not privy to what undisclosed information was shared and

4

reviewed by him, about either the performance of any of the "various assets" or their current and future projected value.

15.     The Motion states that pursuing the claims will "be both costly and time consuming". Motion at 3, ¶ 11. But this Court approved a large law firm, Blank Rome, and another lawyer, Donald Temple, to serve as special counsel. The application for Mr. Temple indicated that his services were contingent. *See* ECF # 131 at 2, ¶ 9 ("The services to be rendered by Donald Temple, P.C. is [sic – "are"] contingent, but always subject to Court approval."); *see also* ECF # 155 (approving Blank Rome as special counsel at discounted rates and funded by certain creditors). These approved arrangements with special counsel cut against the argument that legal expenses will drain estate funds while the partnership claims are being litigated.

16.     Finally, the proposed settlement involves what is clearly a manipulated component – the "limited recognition of a partnership interest" in "connection with loans serviced by WCP, as of the Effective Date, on which the following two borrowers are obligated: (i) Developer RE1 LLC; and (ii) 423 Kennedy St Holdings LLC." ECF #158-1 at 3-4, Sections 3 and 4. Those sections of the Settlement Agreement, if approved, would have a direct, adverse impact on third-parties Developer RE1, LLC and 423 Kennedy St Holdings, LLC, as will be explained in more detail in the separate Objection that will be filed by those entities.

## Joinder with Other Objections

17.     The 4910 Georgia Avenue Investors join in the arguments of any other objections that are filed to the extent that those other objections supplement, and are not otherwise inconsistent with, this Objection.

5

**Conclusion**

For these reasons, and for any reasons that may be advanced at the hearing on the Motion set for June 25, 2025, the 4910 Georgia Avenue Investors request that the Motion be denied.

        Respectfully submitted,

        GREENSTEIN DELORME & LUCHS, P.C.

Dated:  June 18, 2025        /s/ James D. Sadowski
        James D. Sadowski (DC Bar #446635)
        Alexandria J. Smith (DC Bar #1781067)
        801 17th Street, N.W., Suite 1000
        Washington, D.C.  20006
        Phone: (202) 452-1400; Fax: (202) 452-1410
        Emails:  jds@gdllaw.com; ajs@gdllaw.com
        *Counsel for the 4910 George Avenue Investors*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of June, 2025, a true copy of the foregoing 4910 Georgia Avenue Investors' Objection to the Motion for Approval of Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019 was filed electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

        /s/ James D. Sadowski
        James D. Sadowski

8386\0001\4936-3681-7231.v1