*Sale Comparable 2 – 1515 Isherwood Street NE*





*Sale Comparable 3 – 1646 F Street NE*





*Sale Comparable 4 – 428 11th Street NE*





# RENT COMPARABLES
# LOCATION MAP AND PICTURES



*Rent Comparable 1 – 1311 Trinidad Avenue NE*



*Rent Comparable 2 – 1645 Trinidad Avenue NE*



*Rent Comparable 23 – 1423 Montello Avenue NE*



*Rent Comparable 4 – 1219 Florida Avenue NE*



# QUALIFICATIONS OF THE APPRAISER

7920 Norfolk Avenue, Suite 220
Bethesda, Maryland 20814

| | |
|---|---|
| EDUCATION: | University of Maryland - B.S. Degree (Business)<br>American University - Appraisal I-A, I-B, II, Residential Valuation<br>Litigation Valuation, and Course 202 - Applied Income Property Valuation, Standards of<br>Professional Practice<br>Yearly Courses and Seminars Sponsored by: The Appraisal Institute, MBA (Mortgage Bankers<br>Association), Board of Realtors (DC & MD), and Other Organizations |
| MEMBERSHIPS: | The Appraisal Institute: MAI, SRPA, 1993 - 1995 Chapter Board of Directors<br>Royal Institute of Chartered Surveyors: MRICS<br>AIPAC: America Israel Public Affairs Committee |
| EMPLOYMENT: | Sapperstein Commercial, LLC, Managing Member, 2012 to Present<br>Sapperstein & Associates, LLC, 1982 to Present<br>Vice President, Associate Appraiser - Philip R. Lamb & Company, 1978 to 1982 |
| LICENSED: | Real Estate Broker in State of Maryland<br>Real Estate Broker in District of Columbia |
| CERTIFICATIONS: | Certified General Real Estate Appraiser in:<br>District of Columbia (#10042)<br>Maryland (#04-10002)<br>Virginia (#4001-000176) |
| QUALIFIED EXPERT WITNESS: | Federal Tax Court, Maryland Tax Court, Arlington County Circuit Court (Tax Appeal), Montgomery County Circuit Court, Condemnation Expert for State Highway Authority, Condemnation Expert for WMATA, DC Board of Appeals, DC Court (Tax Appeal), Expert Witness Consultant in divorce, condemnation, and corporate disputes cases, among others. |

TYPES OF APPRAISALS:

Residential dwellings; condominiums; shopping centers; malls; power centers; retail strips; retail padsites; health clubs; apartments; mini storage and warehouse facilities; large and small industrial and flex facilities; large and small assisted living facilities; office buildings; hotels; motels; commercial, industrial and special purpose buildings; religious structures; schools and school sites; parking lots; farms and acreage; subdivisions; gasoline stations; country clubs; parks; marinas; movie theatres; partial takings for highway and utility right- of-ways; landfills; urban renewal projects; special benefits; fair annual rental studies; repurpose appraisals; and feasibility studies.

OTHER SERVICES:          Professional consultation services and limited brokerage services are provided upon request.

APPRAISAL ASSIGNMENTS COMPLETED FOR THE FOLLOWING CLIENTS – A SAMPLING:

Government Agencies: Federal Government (U.S. Postal Service), Federal Deposit Insurance Corporation, Office of the Comptroller of the Currency, Montgomery County Government, Prince George's County, Department of Transportation, Maryland National Capital Park and Planning Commission, State Highway Administration, Board of Realtors, City of Rockville, City of College Park, Town of Cheverly, Government of the District of Columbia, The Housing Opportunities Commission of Montgomery County, Department of Housing and Community Development, Resolution Trust Corporation, and Pennsylvania Avenue Development Corporation (P.A.D.C.).

Regional and Community Banks and Wall Street Conduits: Separate listings upon request.

Commercial and Industrial Firms: Douglas Development Co.; J.P. Morgan Financial; Merrill Lynch; The Traveler's Insurance; Fidelity National Title Group; Marriott Corporation; Paine Webber; Genworth; Transamerica Relation Service, Inc.; Cities Service Oil Company; Kodak; GMAC; TRW Systems; The Donohoe Companies; Verizon Telephone Company; Discovery Communications; Howard University; University of Maryland; NAIMichaels Companies; CNA Insurance Company; Magna Group, Inc.; H.B.W. Group; TransWestern Company; Cushman Wakefield; Foulger Pratt Construction Company; AAFMAA; Lloyd Moore Development Company; The Cafritz Foundation; Lebling Development Company; Harvey Management and Development Corporation; The Beatty Company; Mitchell & Best; GEICO; Alfandre Developers; Potomac Investment Associates; Abrams & Associates; Anastasi-Stephens Group; Howard Hughes Medical Institute; NorthMarq Capital, Inc.; The GLM Corporation; The Ward Corporation; Sigal- Zuckerman; Greenhill Capital Corporation; Landstar Development Company; Horning Brothers; NV Land; Cross Builders; Goodman Homes; Royco; Standard Properties; and Gould Properties, among others.

SERVING THE BALTIMORE/WASHINGTON/RICHMOND METROPOLITAN AREAS
Phone - (301) 654-0214 • Fax - (301) 654-0272
E-Mail – appraisal@sapperstein.net • Website – www.sapperstein.net



## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
1736 Montello Ave NE
Lot 22, Square 4053, Trinidad
Washington, DC 20002

**FOR:**
Washington Capital Partners
2815 Hartland Dr
Falls Church, VA  22043

**AS OF:**
10/11/2018

**BY:**
Anne' Rothermel
Certified Residential Appraiser
ADK Appraisals, Inc.
5841 Riverside Drive
Woodbridge, VA 22193

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 1736 Montello Ave NE |
| | Legal Description | Lot 22, Square 4053, Trinidad |
| | City | Washington |
| | County | District of Columbia |
| | State | DC |
| | Zip Code | 20002 |
| | Census Tract | 0088.04 |
| | Map Reference | 47894 |
| **SALES PRICE** | Sale Price | $ 475,000 |
| | Date of Sale | 9/18/2018 |
| **CLIENT** | Client | Washington Capital Partners |
| | Lender | Washington Capital Partners |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 1,130 |
| | Price per Square Foot | $ 420.35 |
| | Location | N;Res; |
| | Age | 113 |
| | Condition | Avg/Not gutted |
| | Total Rooms | 6 |
| | Bedrooms | 3 |
| | Baths | 1.1 |
| **APPRAISER** | Appraiser | Anne' Rothermel |
| | Date of Appraised Value | 10/11/2018 |
| **VALUE** | Final Estimate of Value | $ 625,000 |

File # 0006169

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address | 1736 Montello Ave NE    City Washington    State DC    Zip Code 20002 |
| Borrower | Coloma River Holdings, LLC    Owner of Public Record    Precious Robinson    County District of Columbia |
| Legal Description | Lot 22, Square 4053, Trinidad |
| Assessor's Parcel # | 4053  0022    Tax Year 2017    R.E. Taxes $ 2,038 |
| Neighborhood Name | Trinidad    Map Reference 47894    Census Tract 0088.04 |

Occupant    Owner    Tenant    Vacant    Special Assessments $ 0    PUD    HOA $ 0    per year    per month
Property Rights Appraised    Fee Simple    Leasehold    Other (describe)
Assignment Type    Purchase Transaction    Refinance Transaction    Other (describe)
Lender/Client    Washington Capital Partners    Address    2815 Hartland Dr, Suite 200, Falls Church, VA 22043
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?    Yes    No
Report data source(s) used, offering price(s), and date(s).    The subject was listed 8/16/2018 for $379,000 and contracted below market value after 4 days; MLS #DC10322566.

### CONTRACT

I    did    did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.    The contract appears typical. This is an assignment sale. The sales price reflects as-is condition.

Contract Price $ 475,000    Date of Contract  9/18/2018    Is the property seller the owner of public record?    Yes    No  Data Source(s)  Contract, Tax Rec
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?    Yes    No
If Yes, report the total dollar amount and describe the items to be paid.    0

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location | Urban  Suburban  Rural | Property Values | Increasing | Stable  Declining | PRICE | AGE | One-Unit | 65 % |
| Built-Up | Over 75%  25-75%  Under 25% | Demand/Supply | Shortage | In Balance  Over Supply | $ (000) | (yrs) | 2-4 Unit | 3 % |
| Growth | Rapid  Stable  Slow | Marketing Time | Under 3 mths | 3-6 mths  Over 6 mths | 251  Low | 1 | Multi-Family | 12 % |
| | | | | | 1,100  High | 118 | Commercial | 18 % |
| | | | | | 576  Pred. | 88 | Other | 2 % |

Neighborhood Boundaries    The subject is located south of Mt. Olivet Rd, east of West Virginia Ave, north of Florida Ave and west of Bladensburg Rd.

Neighborhood Description    Employment centers, schools, places of worship, and shopping facilities are within close proximity.  There is no apparent measurable evidence of  factors which might adversely affect marketability.  Major Rt 50 is accessible within 2 mile. This provides good access to the Beltway and Washington metropolitan areas.

Market Conditions (including support for the above conclusions)    Average marketing time based on data is 0-3 months when properly listed. The market had tightened lending requirements for obtaining many forms of financing while interest was on the rise. Rates have been slightly stabilized and lowered by the Federal Reserve in order to ease market tensions.

### SITE

Dimensions The survey was not provided for review    Area  1,158 sf    Shape  Rectangular    View  Residential/Avg
Specific Zoning Classification  MU-4    Zoning Description  Mixed-use Zone
Zoning Compliance    Legal    Legal Nonconforming (Grandfathered Use)    No Zoning    Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?    Yes    No  If No, describe    Highest and best use is conversion of condos/mixed-use space as permitted in the zoning district.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | | | Water | | | Street Asphalt | | |
| Gas | | | Sanitary Sewer | | | Alley Asphalt | | |

FEMA Special Flood Hazard Area    Yes    No    FEMA Flood Zone  X    FEMA Map #  1100010036C    FEMA Map Date  09/27/2010
Are the utilities and off-site improvements typical for the market area?    Yes    No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?    Yes    No  If Yes, describe
There are no apparent adverse easements, encroachments, or other adverse conditions. No special assessments were noted on tax records.

### IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units | One  One with Accessory Unit | Concrete Slab  Crawl Space | | Foundation Walls | Brick/Avg | Floors | Laminate/ Vinyl/Avg |
| # of Stories | 2 | Full Basement  Partial Basement | | Exterior Walls | Brick/Avg | Walls | Drywall/Avg |
| Type | Det.  Att.  S-Det./End Unit | Basement Area | 0 sq.ft. | Roof Surface | Built-up/Unknown | Trim/Finish | Wood/Painted/Avg |
| | Existing  Proposed  Under Const. | Basement Finish | 0 % | Gutters & Downspouts | Aluminum/Avg | Bath Floor | Vinyl/Tile/Avg |
| Design (Style) | Alt/Int | Outside Entry/Exit  Sump Pump | | Window Type | DH/Vinyl/Avg | Bath Wainscot | Tile/Avg |
| Year Built | 1905 | Evidence of  Infestation | | Storm Sash/Insulated | Insulated/Avg | Car Storage | None |
| Effective Age (Yrs) | 20 | Dampness  Settlement | | Screens | Metal/Avg | Driveway  # of Cars | 1 |
| Attic | None | Heating  FWA  HWBB  Radiant | Amenities | Woodstove(s) # 0 | | Driveway Surface | Concrete |
| | Drop Stair  Stairs | Other  Fuel Gas | Fireplace(s) # 0 | Fence Wood | | Garage  # of Cars | 0 |
| | Floor  Scuttle | Cooling  Central Air Conditioning | Patio/Deck None | Porch Covered | | Carport  # of Cars | 0 |
| | Finished  Heated | Individual  Other | Pool None | Other None | | Att.  Det.  Built-In | |

Appliances    Refrigerator    Range/Oven    Dishwasher    Disposal    Microwave    Washer/Dryer    Other (describe)
Finished area above grade contains:    6  Rooms    3  Bedrooms    1.1  Bath(s)    1,130  Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).    The subject is in average condition.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    Settlement noted in the kitchen - the floor is sinking in the middle of the kitchen.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    Yes    No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    Yes    No  If No, describe

File # 0006169

| | | | | |
|---|---|---|---|---|
| There are | 9 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 435,000 | | to $ 830,000 |
| There are | 13 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 557,500 | | to $ 1,100,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 1736 Montello Ave NE Washington, DC 20002 | 1835 H St NE Washington, DC 20002 | 1423 Maryland Ave NE Washington, DC 20002 | 1661 Montello Ave NE Washington, DC 20002 |
| Proximity to Subject | | 0.84 miles SE | 0.73 miles S | 0.10 miles S |
| Sale Price | $ 475,000 | $ 800,000 | $ 620,000 | $ 735,000 |
| Sale Price/Gross Liv. Area | $ 420.35 sq.ft. | $ 534.76 sq.ft. | $ 626.26 sq.ft. | $ 466.37 sq.ft. |
| Data Source(s) | | MRIS#DC10182484;DOM 61 | MRIS#DC10165778;DOM 0 | MRIS#DC10339106;DOM 7 |
| Verification Source(s) | | County Records/Visual | County Records/Visual | Visual,Tax Record |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sales or Financing | | ArmLth | ArmLth | Arms-Length |
| Concessions | | Other;0 | Cash;0 | Conv;0 |
| Date of Sale/Time | | s08/18;c05/18 | s02/18;c02/18 | s10/18;c09/18 |
| Location | N;Res; | N;Res; | N;Res; | N;Res; |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Site | 1158 sf | 3100 sf -8,000 | 1003 sf +2,000 | 1568 sf -2,000 |
| View | N;Res; | N;Res; | N;Res; | N;Res; |
| Design (Style) | Att/Int | Att/End -4,000 | Att/End | Att/Int |
| Quality of Construction | Brick/Avg | Brick/Avg | Brick/Avg | siding/Avg 0 |
| Actual Age | 113 | 90 0 | 148 0 | 113 0 |
| Condition | Avg/Not gutted | Poor/Not gutted +10,000 | Poor/Not gutted +10,000 | Good -100,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths |
| Room Count | 6 3 1.1 | 6 3 2.0 -2,000 | 3 1 1.0 +2,000 | 7 4 3.0 -16,000 |
| Gross Living Area | 1,130 sq.ft. | 1,496 sq.ft. -21,960 | 990 sq.ft. +8,400 | 1,576 sq.ft. -26,760 |
| Basement & Finished | 0 | Full Basement -20,000 | Full Basement -20,000 | 0 |
| Rooms Below Grade | 0 | 0 | 0 | 0 |
| Functional Utility | Avg (Settlement) | Poor 0 | Poor | Good -10,000 |
| Heating/Cooling | FWA/CAC | FWA/CAC | None +3,000 | FWA/CAC |
| Energy Efficient Items | Insulated Wds | Storm Wds +2,000 | Storm Wds +2,000 | Insulated Wds |
| Garage/Carport | Drvwy/Off Street | Drvwy/Off Street | None +2,000 | Drvwy/Off Street |
| Porch/Patio/Deck | CvdP,Fence | CvdP +500 | CvdP | CvdP,Fence |
| Fireplace | None | None | None | 1 Fireplace -2,500 |
| Zoning | MU-4 FAR 2.5 | RA-2 FAR 1.8 | NC-14 FAR 2.5 0 | RF-1 +50,000 |
| Plans & Permits | None | Plans & Permits -150,000 | | None |
| Net Adjustment (Total) | | + - $ -193,460 | + - $ 9,900 | + - $ -107,260 |
| Adjusted Sale Price | | Net Adj. 24.2 % | Net Adj. 1.6 % | Net Adj. 14.6 % |
| of Comparables | | Gross Adj. 27.3 % $ 606,540 | Gross Adj. 8.0 % $ 629,900 | Gross Adj. 28.2 % $ 627,740 |

I  did  did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research  did  did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)  MLS, Tax Records
My research  did  did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)  MLS, Tax Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No transfers | No transfers | No transfers | No transfers |
| Price of Prior Sale/Transfer | in the past 36 months | in the past 12 months | in the past 12 months | in the past 12 months |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | 10/12/2018 | 10/12/2018 | 10/12/2018 | 10/12/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject has not transferred in the past 36 months per tax records. The comparables have not transferred in the past 12 months per tax records.

Summary of Sales Comparison Approach  After an extensive search through MLS and Public Records, the appraiser has selected the comparables that are most recent and most similar to the subject property. Adjustments for square footage and other amenities reflect current market responses and do not reflect replacement costs for individual items. Comp #2 is located on a smaller parcel. Comp #1 was on the market for 61 days and was sold with plans and permits and is a larger end unit on a larger parcel. Comp #3 is located on the subject's street and has been renovated in recent years, but the comp has inferior zoning.

Indicated Value by Sales Comparison Approach $  625,000

| Indicated Value by: Sales Comparison Approach $ 625,000 | Cost Approach (if developed) $ | Income Approach (if developed) $ |
|---|---|---|

Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. The Cost Approach was not developed. The Income approach is not developed due to a lack of data in the subject's neighborhood.

This appraisal is made  "as is",  subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or  subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  625,000 , as of  10/11/2018 , which is the date of inspection and the effective date of this appraisal.

File # 0006169

The purpose of this appraisal is to estimate the market value of the subject property.  In estimating the subject property's market value, an orderly, systematic procedure is followed, in which the appraiser attempts to utilize the three recognized methods of valuation, The Cost Approach, The Income Approach and The Sales Comparison Approach and subsequently lead to a logical final value conclusion.

The site dimensions were not visually estimated based upon an appearance of a rectangular site. No survey was made by the appraiser, nor is the appraiser qualified to perform this service. Should exact dimensions of the site or house location be required, it is advised that the services of a competent professional surveyor be obtained.

The Intended User of this appraisal report is the Lender/Client.  The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal form, and Definition of Market Value.  No additional Intended Users are identified by the appraiser.

The appraiser is not required to give testimony in court in connection with this appraisal.  If the appraiser is subpoenaed pursuant to a court order, the client agrees to pay the appraiser the regular per diem rate plus expenses.

The appraiser of this report did not perform a prior service for the subject property in the 36 months prior to the effective date of the report.

Exposure Time: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. The appraiser has determined that the property would have to be exposed for 30 to 90 days on the open market in order to have a market value indicated in the report on the effective date of this appraisal.

The Mixed-Use (MU) zones provide for mixed-use developments that permit a broad range of commercial, institutional, and multiple dwelling unit residential development at varying densities. The MU-4 zone is a mixed-use zone that is intended to be applied throughout the city consistent with the density designation of the Comprehensive Plan. A zone may be applied to more than 1 density designation.

The MU-4 zone is intended to:

Permit moderate-density mixed-use development;
Provide facilities for shopping and business needs, housing, and mixed uses for large segments of the District of Columbia outside of the central core; and
Be located in low- and moderate-density residential areas with access to main roadways or rapid transit stops, and include office employment centers, shopping centers, and moderate bulk mixed-use centers.

### COST APPROACH TO VALUE (not required by Fannie Mae)
Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     The cost approach was not developed.

| ESTIMATED    REPRODUCTION OR    REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ |
| Source of cost data | DWELLING  Sq.Ft. @ $ | =$ |
| Quality rating from cost service       Effective date of cost data | Sq.Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | =$ |
| The cost approach was not developed. | Garage/Carport  Sq.Ft. @ $ | =$ |
| | Total Estimate of Cost-New | =$ |
| | Less  Physical  Functional  External | |
| | Depreciation | =$(           ) |
| | Depreciated Cost of Improvements | =$ |
| | "As-is" Value of Site Improvements | =$ |
| Estimated Remaining Economic Life (HUD and VA only)  Years | INDICATED VALUE BY COST APPROACH | =$ |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)
Estimated Monthly Market Rent $         X Gross Rent Multiplier         = $         Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)
Is the developer/builder in control of the Homeowners' Association (HOA)?     Yes     No     Unit type(s)     Detached     Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases         Total number of units         Total number of units sold
Total number of units rented         Total number of units for sale         Data source(s)
Was the project created by the conversion of existing building(s) into a PUD?     Yes     No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?     Yes     No  Data Source
Are the units, common elements, and recreation facilities complete?     Yes     No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?     Yes     No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005          Page 3 of 6          Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

File # 0006169

The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. 0006169  Page #8

File # 0006169

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Anne' Rothemel | Name |
| Company Name  ADK Appraisals, Inc. | Company Name |
| Company Address  5841 Riverside Drive, Woodbridge VA 22193 | Company Address |
| | |
| Telephone Number  (703) 597-7700 | Telephone Number |
| Email Address  mail@adkappraisals.com | Email Address |
| Date of Signature and Report  October 12, 2018 | Date of Signature |
| Effective Date of Appraisal  10/11/2018 | State Certification # |
| State Certification #  CR11308 | or State License # |
| or State License # | State |
| or Other (describe)            State # | Expiration Date of Certification or License |
| State  DC | |
| Expiration Date of Certification or License  02/28/2020 | SUBJECT PROPERTY |
| | Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | Did inspect exterior of subject property from street |
| 1736 Montello Ave NE | Date of Inspection |
| Washington, DC 20002 | Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $      625,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name  Washington Capital Partners | |
| Company Address  2815 Hartland Dr, Suite 200, Falls Church, VA 22043 | Did not inspect exterior of comparable sales from street |
| | Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Building Sketch

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code | 20002 |
| Lender | Washington Capital Partners | | | | |

8.5'                              8.5'

Bedroom

Kitchen        16'                16'

4'                                 4'

Dining                          Bedroom
Room

50'                               50'

**First Floor**                 **Second Floor**
[565.2 Sq ft]                   [565.2 Sq ft]

Bath (half)     34'              Bath     34'

Living                          Bedroom
Room

5.5'  0.7'  6'                   6'  1'

TOTAL Sketch by a la mode, inc.

### Area Calculations Summary

| Living Area | | Calculation Details |
|---|---|---|
| First Floor | 565.2 Sq ft | 6 × 0.7   = 4.2 <br> 8.5 × 16  = 136 <br> 34 × 12.5 = 425 |
| Second Floor | 565.2 Sq ft | 6 × 0.7   = 4.2 <br> 8.5 × 16  = 136 <br> 34 × 12.5 = 425 |
| **Total Living Area (Rounded):** | **1130 Sq ft** | |

## Location Map

| Client | Washington Capital Partners | | | |
|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 |
| Lender | Washington Capital Partners | | | |



Main File No. 0006189  Page #11

**Subject Photo Page**

| Client | Washington Capital Partners | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | | |
| City | Washington | County District of Columbia | | State DC | | Zip Code 20002 |
| Lender | Washington Capital Partners | | | | | |



**Subject Front**

1736 Montello Ave NE

| | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 1,130 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1158 sf |
| Quality | Brick/Avg |
| Age | 113 |



**Subject Rear**



**Subject Street**

Main File No. 0006169  Page #12

**Subject Photo Page**

| Client | Washington Capital Partners | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code  20002 |
| Lender | Washington Capital Partners | | | | | |



**Living Room**

1736 Montello Ave NE
| | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 1,130 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1158 sf |
| Quality | Brick/Avg |
| Age | 113 |



**Bathroom**



**Settlement**

**Subject Photo Page**

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 | |
| Lender | Washington Capital Partners | | | | |



### Kitchen

| 1736 Montello Ave NE | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 1,130 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1158 sf |
| Quality | Brick/Avg |
| Age | 113 |



**Bedroom**



**Bathroom**

Main File No. 0006169  Page #14

## Comparable Photo Page

| | |
|---|---|
| Client | Washington Capital Partners |
| Property Address | 1736 Montello Ave NE |
| City | Washington |
| Lender | Washington Capital Partners |

County District of Columbia    State DC    Zip Code 20002



### Comparable 1

1835 H St NE

| | |
|---|---|
| Prox. to Subject | 0.84 miles SE |
| Sales Price | 800,000 |
| Gross Living Area | 1,496 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 3100 sf |
| Quality | Brick/Avg |
| Age | 90 |



### Comparable 2

1423 Maryland Ave NE

| | |
|---|---|
| Prox. to Subject | 0.73 miles S |
| Sales Price | 620,000 |
| Gross Living Area | 990 |
| Total Rooms | 3 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1003 sf |
| Quality | Brick/Avg |
| Age | 148 |



### Comparable 3

1661 Montello Ave NE

| | |
|---|---|
| Prox. to Subject | 0.10 miles S |
| Sales Price | 735,000 |
| Gross Living Area | 1,576 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1568 sf |
| Quality | siding/Avg |
| Age | 113 |

**License**



GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS
Occupational and Professional Licensing Administration

*certifies that*

**ANNE ROTHERMEL**
ADK APPRAISALS, INC.
5841 RIVERSIDE DRIVE
WOODBRIDGE VA 22193

*has met all requirements by law and regulations and is hereby licensed as:*

**APPRAISER CERTIFIED RESIDENTIAL**
**License #: CR11306**

Issue Date: 3/1/2018
Expiration Date: 2/28/2020

*Director, Department of*
*Consumer and Regulatory Affairs*



**GREATAMERICAN.**
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒   Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the Company.

Policy Number:   RAP3364992-18          Renewal of:   RAP3364992-17

Program Administrator:        Herbert H. Landy Insurance Agency Inc.
                              75 Second Ave Suite 410 Needham, MA 02494-2876

Item 1. Named Insured:    Anne Rothermel

Item 2. Address:          5841 Riverside Drive
        City, State, Zip Code:    Woodbridge, VA 22193

Item 3. Policy Period: From    04/30/2018      To    04/30/2019
                          (Month, Day, Year)      (Month, Day, Year)
                (Both dates at 12:01 a.m. Standard Time at the address of the Named Insured as stated in Item 2.)

Item 4. Limits of Liability:

    A. $   500,000      Damages Limit of Liability – Each Claim

    B. $   500,000      Claim Expenses Limit of Liability – Each Claim

    C. $   1,000,000    Damages Limit of Liability – Policy Aggregate

    D. $   1,000,000    Claim Expenses Limit of Liability – Policy Aggregate

Item 5. Deductible (Inclusive of Claim Expenses):

    A. $   0.00      Each Claim

    B. $   0.00      Aggregate

Item 6. Premium: $     573.00

Item 7. Retroactive Date (if applicable):    04/30/2011

Item 8. Forms, Notices and Endorsements attached:
        D42100 (03/15) D42300 VA (03/15)  IL7324 (08/12)
        D42402 (05/13) D42408 (05/13) D42412 (03/17) D42413 (06/17)

                                        *Betsy a. Magmend*
                                        Authorized Representative

D42101 (03/15)                                            Page 1 of 1



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1736 Montello Ave NE
Lot 22, Square 4053, Unit 1, Trinidad
Washington, DC 20002

### FOR:
Washington Capital Partners
2815 Hartland Dr
Falls Church, VA  22043

### AS OF:
10/12/2018

### BY:
Anne' Rothermel
Certified Residential Appraiser
ADK Appraisals, Inc.
5841 Riverside Drive
Woodbridge, VA 22193

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| Subject Address | 1736 Montello Ave NE | |
| Legal Description | Lot 22, Square 4053, Unit 1, Trinidad | |
| City | Washington | |
| County | District of Columbia | |
| State | DC | |
| Zip Code | 20002 | |
| Census Tract | 0088.04 | |
| Map Reference | 47894 | |

| SALES PRICE | | |
|---|---|---|
| Sale Price | $ 475,000 | |
| Date of Sale | 9/18/2018 | |

| CLIENT | | |
|---|---|---|
| Client | Washington Capital Partners | |
| Lender | Washington Capital Partners | |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| Size (Square Feet) | 615 | |
| Price per Square Foot | $ 772.36 | |
| Location | N;Res; | |
| Age | 113 | |
| Condition | Good-New | |
| Total Rooms | 5 | |
| Bedrooms | 2 | |
| Baths | 2.1 | |

| APPRAISER | | |
|---|---|---|
| Appraiser | Anne' Rothermel | |
| Date of Appraised Value | 10/12/2018 | |

| VALUE | | |
|---|---|---|
| Final Estimate of Value | $ 369,000 | |

## Individual Condominium Unit Appraisal Report

File # 0006170

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 1736 Montello Ave NE | Unit # 1 City Washington State DC Zip Code 20002 |
| Borrower Coloma River Holdings, LLC | Owner of Public Record Precious Robinson County District of Columbia |
| Legal Description Lot 22, Square 4053, Unit 1, Trinidad | |
| Assessor's Parcel # 4053 0022 | Tax Year 2017 R.E. Taxes $ 2,038 |
| Project Name TBD | Phase # 1 Map Reference 47894 Census Tract 0088.04 |
| Occupant ☐ Owner ☐ Tenant ☑ Vacant | Special Assessments $ 0 HOA $ 0 ☐ per year ☐ per month |
| Property Rights Appraised ☑ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☑ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe) | |
| Lender/Client Washington Capital Partners | Address 2815 Hartland Dr, Suite 200, Falls Church, VA 22043 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☑ Yes  ☐ No
Report data source(s) used, offering price(s), and date(s).    The subject was listed 8/16/2018 for $379,000 and contracted below market value after 4 days; MLS
DC10322566.

**CONTRACT**

I ☑ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.    The contract appears typical. This is an assignment sale. The sales price reflects as-is condition.

Contract Price $ 475,000   Date of Contract 9/18/2018   Is the property seller the owner of public record?  ☑ Yes  ☐ No   Data Source(s) Contract, Tax Rec.
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ YES  ☑ NO
If Yes, report the total dollar amount and describe the items to be paid.    0

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Condominium Unit Housing Trends | | | Condominium Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☑ Urban ☐ Suburban ☐ Rural | | | Property Values ☑ Increasing ☐ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit | 65 % |
| Built-Up ☑ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☑ In Balance ☐ Over Supply | | | Low 157 | 1 | 2-4 Unit | 3 % |
| Growth ☑ Rapid ☐ Stable ☐ Slow | | | Marketing Time ☑ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | | High 799 | 118 | Multi-Family | 12 % |
| | | | | | | Pred. 411 | 72 | Commercial | 18 % |
| | | | | | | | | Other | 2 % |

Neighborhood Boundaries    The subject is located south of Mt. Olivet Rd, east of West Virginia Ave, north of Florida
Ave and west of Bladensburg Rd.
Neighborhood Description    Employment centers, schools, places of worship, and shopping facilities are within close proximity. There is no apparent measurable
evidence of factors which might adversely affect marketability. Major Rt 50 is accessible within 2 mile. This provides good access to the Beltway and Washington
metropolitan areas.
Market Conditions (including support for the above conclusions)    Average marketing time based on data is 0-3 months recently listed. The market had tightened
lending requirements for obtaining many forms of financing while interest was on the rise. Rates have been slightly stabilized and lowered by the Federal Reserve in
order to ease market tensions.

**PROJECT SITE**

| | | | |
|---|---|---|---|
| Topography Level | Size Average | Density Average | View Residential/Avg |
| Specific Zoning Classification MU-4 | Zoning Description Mixed-use Zone | | |

Zoning Compliance ☑ Legal ☐ Legal Nonconforming – Do the zoning regulations permit rebuilding to current density?  ☐ Yes  ☐ No
☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☑ Yes  ☐ No If No, describe    Highest and best
use is conversion of condos/mixed-use space as permitted in the zoning district.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☑ | | Water | ☑ | | Street Asphalt | ☑ | ☐ |
| Gas | ☑ | | Sanitary Sewer | ☑ | | Alley Asphalt | ☑ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☑ No  FEMA Flood Zone X  FEMA Map # 1100010036C  FEMA Map Date 09/27/2010
Are the utilities and off-site improvements typical for the market area?  ☑ Yes  ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes  ☑ No If Yes, describe
There are no apparent adverse easements, encroachments, or other adverse conditions. No special assessments were noted on tax records.

**PROJECT INFORMATION**

Data source(s) for project information    MLS, Tax Records, Inspection, Plans
Project Description ☐ Detached ☑ Row or Townhouse ☐ Garden ☐ Mid-Rise ☐ High-Rise ☐ Other (describe)

| General Description | | General Description | | Subject Phase | If Project Completed | If Project Incomplete |
|---|---|---|---|---|---|---|
| # of Stories 5 | | Exterior Walls Brk/FbrC | # of Units 6 | # of Phases | # of Planned Phases 1 |
| # of Elevators 0 | | Roof Surface Built-up | # of Units Completed 0 | # of Units | # of Planned Units 6 |
| ☑ Existing ☐ Proposed | | Total # Parking 2 | # of Units For Sale 0 | # of Units for Sale | # of Units for Sale 0 |
| ☐ Under Construction | | Ratio (spaces/units) 0.33/1 | # of Units Sold 0 | # of Units Sold | # of Units Sold 0 |
| Year Built 1905 | | Type ☐ Off Street | # of Units Rented 0 | # of Units Rented | # of Units Rented 0 |
| Effective Age 1 | | Guest Parking ☐ Street | # of Owner Occupied Units 0 | # of Owner Occupied Units | # of Owner Occupied Units 0 |

Project Primary Occupancy ☑ Principal Residence ☐ Second Home or Recreational ☐ Tenant
Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☑ No
Management Group – ☐ Homeowners' Association ☐ Developer ☐ Management Agent – Provide name of management company.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project?  ☑ Yes  ☐ No If Yes, Describe
The current owner owns 100% of the building.

Was the project created by the conversion of existing building(s) into a condominium?  ☑ Yes  ☐ No If Yes, describe the original use and date of conversion.
The proposed condo project will be a conversion from a single-family row home as permitted in the zoning district.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)?  ☐ Yes  ☑ No If No, describe
The project is proposed.

Is there any commercial space in the project?  ☐ Yes  ☑ No If Yes, describe and indicate the overall percentage of the commercial space.
Per completion, there will be no commercial space.

Freddie Mac Form 465 March 2005                Page 1 of 6                Fannie Mae Form 1073 March 2005

## Individual Condominium Unit Appraisal Report

File # 0006170

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.    Per completion, the subject is expected to be in new condition.

Describe the common elements and recreational facilities.    Common grounds

Are any common elements leased to or by the Homeowners' Association?    Yes    No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?    Yes    No    If Yes, $         per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?    Yes    No  If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I    did    did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.    I was not provided a copy of the budget nor do I have the ability to analyse the budget due to this being a specialized field.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?    Yes    No    If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears    High    Average    Low  If High or Low, describe    The condo fee is expected to be in range with the comps.

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?    Yes    No  If Yes, describe and explain the effect on value and marketability.

Unit Charge $         per month X 12 = $         per year    Annual assessment charge per year per square foot of gross living area = $
Utilities included in the unit monthly assessment    None    Heat    Air Conditioning    Electricity    Gas    Water    Sewer    Cable    Other (describe)
The extraordinary assumption is made that the following will be covered: Snow and Trash removal, insurance and maintenance, as it is typical for the market.

**UNIT DESCRIPTION**

| General Description | Interior | materials/condition | Amenities | | Appliances | | Car Storage | | |
|---|---|---|---|---|---|---|---|---|---|
| Floor #    Basement & 1st | Floors | Hardwood/Tile/New | Fireplace(s) # | 0 | Refrigerator | | None | | |
| # of Levels    2 | Walls | Drywall/New | WoodStove(s) # | 0 | Range/Oven | | Garage    Covered    Open | | |
| Heating Type  FWA    Fuel Gas | Trim/Finish | Wood/Painted/New | Deck/Patio | None | Disp    Microwave | | # of Cars    0 | | |
| Central AC    Individual AC | Bath Wainscot | Tile/New | Porch/Balcony | None | Dishwasher | | Assigned    Owned | | |
| Other (describe) | Doors | Solid Core/New | Other | None | Washer/Dryer | | Parking Space #    0 | | |
| Finished area above grade contains:    5  Rooms    2  Bedrooms    2.1  Bath(s)    615  Square Feet of Gross Living Area Above Grade | | | | | | | | | |

Are the heating and cooling for the individual units separately metered?    Yes    No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)    The subject will feature hardwood floors, stone counters, stainless steel appliances, 42" cabinets, recessed lights, upgraded bathrooms with tile and an open floor plan.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject will be a newly converted and renovated unit.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    Yes    No  If Yes, describe
Per completion of proposed conversion and renovations, no adverse conditions will be present.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    Yes    No  If No, describe

**PRIOR SALE HISTORY**

I    did    did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research    did    did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)    MLS, Tax Records
My research    did    did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)    MLS, Tax Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No transfers | No transfers | No transfers | No transfers |
| Price of Prior Sale/Transfer | in the past 36 months | in the past 12 months | in the past 12 months | in the past 12 months |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | 10/12/2016 | 10/12/2018 | 10/12/2018 | 10/12/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales.    After a thorough search of the multiple listing service and tax records, there were no prior sales of comparables in the past 12 months. The subject was not transferred in the past 36 months. All comps appear arms-length.

## Individual Condominium Unit Appraisal Report

File # 0006170

There are **6** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 339,000 to $ 429,900 .
There are **29** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 298,225 to $ 499,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 1736 Montello Ave NE 1, Washington, DC 20002 | 1631 Montello Ave NE A, Washington, DC 20002 | | 1244 Raum St NE 1, Washington, DC 20002 | | 1038 Bladensburg Rd NE 3, Washington, DC 20002 | |
| Project Name and Phase | TBD 1 | Montello Hill Condos 1 | | Jefferson Condos 1 | | 1038 Bladensburg Rd Condos 1 | |
| Proximity to Subject | | 0.15 miles SW | | 0.12 miles SE | | 0.49 miles SE | |
| Sale Price | $ 475,000 | $ 439,000 | | $ 370,000 | | $ 360,000 | |
| Sale Price/Gross Liv. Area | $ 772.36 sq. ft. | $ 566.45 sq. ft. | | $ 462.50 sq. ft. | | $ 553.00 sq. ft. | |
| Data Source(s) | | MRIS#DC10256363;DOM 4 | | MRIS#DC10167164;DOM 25 | | MRIS#DC10268515;DOM 46 | |
| Verification Source(s) | | County Records/Visual | | County Records/Visual | | County Records/Visual | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth Conv;0 | | ArmLth Conv;11100 | | ArmLth Conv;10000 | |
| Date of Sale/Time | | s07/18;c06/18 | | s04/18;c03/18 | | s08/18;c09/18 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res;Busy Rd | +15,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | TBD | 166 | | 103 | | 146 | |
| Common Elements and Rec. Facilities | Common Areas | Common Areas | | Common Areas | | Common Areas | |
| Floor Location | Bsmnt & 1st Flrs | Main Level | -25,000 | Basement Lvl | +25,000 | 2nd Floor | -30,000 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | Mid-Rise | Garden | 0 | Garden | 0 | Garden | 0 |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 113 | 77 | 0 | 82 | 0 | 79 | 0 |
| Condition | Good-New | Good-New | | Good-New | | Good-New | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5    2    2.1 | 5    1    1.0 | +12,500 | 5    2    2.0 | +2,500 | 5    2    1.0 | +7,500 |
| Gross Living Area | 615 sq. ft. | 775 sq. ft. | -32,000 | 800 sq. ft. | -37,000 | 651 sq. ft. | 0 |
| Basement & Finished Rooms Below Grade | 0 0 | 0 0 | | 0 0 | | 0 0 | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | Insulated Wds | Insulated Wds | | Insulated Wds | | Insulated Wds | |
| Garage/Carport | 0 | 0 | | 0 | | 0 | |
| Porch/Patio/Deck | None | Patio | -15,000 | None | | None | |
| Fireplace | None | None | | None | | None | |
| Net Adjustment (Total) | | + - $ | -59,500 | + - $ | -9,500 | + - $ | -7,500 |
| Adjusted Sale Price of Comparables | | Net Adj. 13.6 % Gross Adj. 19.2 % $ | 379,500 | Net Adj. 2.6 % Gross Adj. 17.4 % $ | 360,500 | Net Adj. 2.1 % Gross Adj. 14.6 % $ | 352,500 |

Summary of Sales Comparison Approach   After an extensive search through MLS and Public Records, the appraiser has selected the comparables that are most recent and most similar to the subject property. Adjustments for square footage and other amenities reflect current market responses and do not reflect replacement costs for individual items. Typically higher floor units sell for higher values. The typical buyer recognizes the utility of an additional bedroom and bathroom. Comp #1 has a den. Comp #3 is located on a busy road.

Indicated Value by Sales Comparison Approach $   369,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____   Indicated Value by Income Approach _____
Summary of Income Approach (including support for market rent and GRM)

Indicated Value by: Sales Comparison Approach $   369,000   Income Approach (if developed) $ _____

Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. The Cost Approach was not developed. The Income approach is not developed due to a lack of data in the subject's neighborhood.

This appraisal is made    "as is",   subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,   subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or   subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  subject to complete renovation and conversion.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $   369,000   , as of   10/12/2018   , which is the date of inspection and the effective date of this appraisal.

## Individual Condominium Unit Appraisal Report          File # 0006170

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

The intended user of this appraisal report is the lender/client.

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report     File # 0006170

The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Individual Condominium Unit Appraisal Report

File # 0006170

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Anne' Rothemel | Name |
| Company Name  ADK Appraisals, Inc. | Company Name |
| Company Address   5841 Riverside Drive, Woodbridge, VA 22193 | Company Address |
| Telephone Number  (703) 597-7700 | Telephone Number |
| Email Address   mail@adkappraisals.com | Email Address |
| Date of Signature and Report    October 12, 2018 | Date of Signature |
| Effective Date of Appraisal      10/12/2018 | State Certification # |
| State Certification #   CR11308 | or State License # |
| or State License # | State |
| or Other                                           State # | Expiration Date of Certification or License |
| State  DC | |
| Expiration Date of Certification or License        02/28/2020 | SUBJECT PROPERTY |
| | Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | Did inspect exterior of subject property from street |
| 1736 Montello Ave NE, # 1 | Date of Inspection |
| Washington, DC 20002 | Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $        369,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name   Washington Capital Partners | Did not inspect exterior of comparable sales from street |
| Company Address    2815 Hartland Dr, Suite 200, Falls Church, VA 22043 | Did inspect exterior of comparable sales from street |
| | Date of Inspection |
| Email Address | |

Math File No. 0006170 - Page #9

**Plans**



Main File No. 0006170   Page #10

**Location Map**

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County | District of Columbia | State DC | Zip Code 20002 |
| Lender | Washington Capital Partners | | | | |



Main File No. 0006170 · Page #11

**Subject Photo Page**

| Client | Washington Capital Partners |
|---|---|
| Property Address | 1736 Montello Ave NE |
| City | Washington |
| Lender | Washington Capital Partners |

| County | District of Columbia | State | DC | Zip Code | 20002 |



**Subject Front**

1736 Montello Ave NE

| | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 615 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |

**Subject Rear**



**Subject Street**



**Subject Photo Page**

| Client | Washington Capital Partners | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | | |
| City | Washington | County District of Columbia | | State DC | Zip Code 20002 | |
| Lender | Washington Capital Partners | | | | | |



**Living Room**

1736 Montello Ave NE
| | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 615 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |



**Kitchen**



**Bathroom**

Main File No. 0008170  Page #13

**Subject Photo Page**

| Client | Washington Capital Partners |
| Property Address | 1736 Montello Ave NE |
| City | Washington |
| Lender | Washington Capital Partners |

County District of Columbia   State DC   Zip Code 20002



### Kitchen

1736 Montello Ave NE
| | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 615 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |



### Bathroom



### Bedroom

## Comparable Photo Page

| Client | Washington Capital Partners | | | |
|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 |
| Lender | Washington Capital Partners | | | |



**Comparable 1**

1631 Montello Ave NE
| | |
|---|---|
| Prox. to Subject | 0.15 miles SW |
| Sales Price | 439,000 |
| Gross Living Area | 775 |
| Total Rooms | 5 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 780 sf |
| Quality | Good |
| Age | 77 |



**Comparable 2**

1244 Raum St NE
| | |
|---|---|
| Prox. to Subject | 0.12 miles SE |
| Sales Price | 370,000 |
| Gross Living Area | 800 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1408 sf |
| Quality | Good |
| Age | 82 |



**Comparable 3**

1038 Bladensburg Rd NE
| | |
|---|---|
| Prox. to Subject | 0.49 miles SE |
| Sales Price | 360,000 |
| Gross Living Area | 651 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res;Busy Rd |
| View | N;Res; |
| Site | 1152 sf |
| Quality | Good |
| Age | 79 |

## Supplemental Addendum

File No. 0006170

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 |
| Lender | Washington Capital Partners | | | | |

The purpose of this appraisal is to estimate the market value of the subject property.  In estimating the subject property's market value, an orderly, systematic procedure is followed, in which the appraiser attempts to utilize the three recognized methods of valuation, The Cost Approach, The Income Approach and The Sales Comparison Approach and subsequently lead to a logical final value conclusion.

The Intended User of this appraisal report is the Lender/Client.  The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal form, and Definition of Market Value.  No additional Intended Users are identified by the appraiser.

Exposure Time: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. The appraiser has determined that the property would have to be exposed for 3 to 30 days on the open market in order to have a market value of as noted in the report on the effective date of this appraisal.

The appraiser of this report did perform prior services for the subject property in the 36 months prior to the effective date of the report.

Per completion, the economic life is expected to be 65 years.

The subject is currently a single family home and proposed use is a 6 unit condo building. The appraisal is made on the basis of a hypothetical condition that construction will be completed per plans and specs provided. If work is not permitted or completed as described, the value will likely be different. The condo project name is to be determined. The condo fee will be based on the comps and will be in range with sales in the market area - to be determined. The borrower expects to create a condo association. The floor plan dimensions were based on the attached plans and the appraiser's measurements of the current structure. The interior will feature upgraded appliances, hardwood flooring and tile throughout, 1- and 3 panel doors, low-E windows, granite/quartz counters, 42" kitchen cabinets.



**GREAT AMERICAN.**
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒   Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the Company.

Policy Number:   RAP3364992-18          Renewal of:   RAP3364992-17

Program Administrator:      Herbert H. Landy Insurance Agency Inc.
                            75 Second Ave Suite 410  Needham, MA 02494-2876

---

Item 1. **Named Insured:**    Anne Rothermel

Item 2. **Address:**          5841 Riverside Drive
        City, State, Zip Code:   Woodbridge, VA 22193

Item 3. **Policy Period:** From   **04/30/2018**    To    **04/30/2019**
                              *(Month, Day, Year)*   *(Month, Day, Year)*
        (Both dates at 12:01 a.m. Standard Time at the address of the Named Insured as stated in Item 2.)

Item 4. **Limits of Liability:**

    A. $   **500,000**      Damages Limit of Liability – Each Claim

    B. $   **500,000**      Claim Expenses Limit of Liability – Each Claim

    C. $   **1,000,000**    Damages Limit of Liability – Policy Aggregate

    D. $   **1,000,000**    Claim Expenses Limit of Liability – Policy Aggregate

Item 5. **Deductible (Inclusive of Claim Expenses):**

    A. $   **0.00**         Each Claim

    B. $   **0.00**         Aggregate

Item 6. **Premium:** $     573.00

Item 7. **Retroactive Date (if applicable):**     04/30/2011

Item 8. **Forms, Notices and Endorsements attached:**
        D42100 (03/15) D42300 VA (03/15)  IL7324 (08/12)
        D42402 (05/13) **D42408** (05/13) D42412 (03/17) D42413 (06/17)

                                                            *Betsy a Ferguson*
                                                            Authorized Representative

D42101 (03/15)                                              Page 1 of 1





## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1736 Montello Ave NE
Lot 22, Square 4053, Unit 2, Trinidad
Washington, DC 20002

### FOR:
Washington Capital Partners
2815 Hartland Dr
Falls Church, VA  22043

### AS OF:
10/12/2016

### BY:
Anne' Rothermel
Certified Residential Appraiser
ADK Appraisals, Inc.
5841 Riverside Drive
Woodbridge, VA 22193

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| Subject Address | 1736 Montello Ave NE | |
| Legal Description | Lot 22, Square 4053, Unit 2, Trinidad | |
| City | Washington | |
| County | District of Columbia | |
| State | DC | |
| Zip Code | 20002 | |
| Census Tract | 0088.04 | |
| Map Reference | 47894 | |

| SALES PRICE | | |
|---|---|---|
| Sale Price | $ 475,000 | |
| Date of Sale | 9/18/2018 | |

| CLIENT | | |
|---|---|---|
| Client | Washington Capital Partners | |
| Lender | Washington Capital Partners | |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| Size (Square Feet) | 615 | |
| Price per Square Foot | $ 772.36 | |
| Location | N;Res; | |
| Age | 113 | |
| Condition | Good-New | |
| Total Rooms | 5 | |
| Bedrooms | 2 | |
| Baths | 2.1 | |

| APPRAISER | | |
|---|---|---|
| Appraiser | Anne' Rothermel | |
| Date of Appraised Value | 10/12/2018 | |

| VALUE | | |
|---|---|---|
| Final Estimate of Value | $ 369,000 | |

## Individual Condominium Unit Appraisal Report

File # 0006172

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address 1736 Montello Ave NE | Unit # 2   City Washington   State DC   Zip Code 20002 |
| Borrower Coloma River Holdings, LLC | Owner of Public Record Precious Robinson   County District of Columbia |
| Legal Description Lot 22, Square 4053, Unit 2, Trinidad | |
| Assessor's Parcel # 4053 0022 | Tax Year 2017   R.E. Taxes $ 2,036 |
| Project Name TBD | Phase # 1   Map Reference 47894   Census Tract 0088.04 |
| Occupant ☐ Owner ☐ Tenant ☒ Vacant | Special Assessments $ 0   HOA $ 0 ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe) | |
| Lender/Client Washington Capital Partners | Address 2815 Hartland Dr, Suite 200, Falls Church, VA 22043 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☒ Yes   ☐ No
Report data source(s) used, offering price(s), and date(s).   The subject was listed 6/16/2018 for $379,000 and contracted below market value after 4 days; MLS DC10322566.

### CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   The contract appears typical. This is an assignment sale. The sales price reflects as-is condition.

Contract Price $ 475,000   Date of Contract 9/18/2018   Is the property seller the owner of public record? ☒ Yes ☐ No   Data Source(s) Contract, Tax Rec.
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ YES ☒ NO
If Yes, report the total dollar amount and describe the items to be paid.   0

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Condominium Unit Housing Trends | | | Condominium Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location ☒ Urban | ☐ Suburban | ☐ Rural | Property Values ☐ Increasing | ☒ Stable | ☐ Declining | PRICE $ (000) | AGE (yrs) | | One-Unit | 65 % |
| Built-Up ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | Demand/Supply ☐ Shortage | ☒ In Balance | ☐ Over Supply | Low 157 | 0 | | 2-4 Unit | 3 % |
| Growth ☐ Rapid | ☒ Stable | ☐ Slow | Marketing Time ☐ Under 3 mths | ☒ 3-6 mths | ☐ Over 6 mths | High 799 | 118 | | Multi-Family | 12 % |
| | | | | | | Pred. 411 | 72 | | Commercial | 18 % |
| | | | | | | | | | Other | 2 % |

Neighborhood Boundaries   The subject is south of Mt. Olivet Rd, east of West Virginia Ave, north of Florida Ave and west of Bladensburg Rd.
Neighborhood Description   Employment centers, schools, places of worship, and shopping facilities are within close proximity. There is no apparent measurable evidence of factors which might adversely affect marketability. Major Rt 50 is accessible within 2 mile. This provides good access to the Beltway and Washington metropolitan areas.
Market Conditions (including support for the above conclusions)   Average marketing time based on data is 0-3 months properly listed. The market had tightened lending requirements for obtaining many forms of financing while interest was on the rise. Rates have been slightly stabilized and lowered by the Federal Reserve in order to ease market tensions.

### PROJECT SITE

| | | | | |
|---|---|---|---|---|
| Topography Level | | Size Average | Density Average | View Residential/Avg |
| Specific Zoning Classification MU-4 | | Zoning Description Mixed-use Zone | | |

Zoning Compliance ☒ Legal ☐ Legal Nonconforming – Do the zoning regulations permit rebuilding to current density? ☐ Yes ☐ No
☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe   Highest and best use is conversion of condos/mixed-use space as permitted in the zoning district.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley Asphalt | ☒ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 1100010036C   FEMA Map Date 09/27/2010
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
There are no apparent adverse easements, encroachments, or other adverse conditions. No special assessments were noted on tax records.

### PROJECT INFORMATION

Data source(s) for project information   MLS, Tax Records, Inspection, Plans
Project Description ☐ Detached ☐ Row or Townhouse ☐ Garden ☐ Mid-Rise ☐ High-Rise ☐ Other (describe)

| General Description | | General Description | | Subject Phase | | If Project Completed | | If Project Incomplete | |
|---|---|---|---|---|---|---|---|---|---|
| # of Stories 5 | | Exterior Walls Brk/FbrC | # of Units | 6 | # of Phases | | # of Planned Phases | 1 |
| # of Elevators 0 | | Roof Surface Built-up | # of Units Completed | 0 | # of Units | | # of Planned Units | 6 |
| ☒ Existing ☐ Proposed | | Total # Parking 2 | # of Units For Sale | 0 | # of Units for Sale | | # of Units for Sale | 0 |
| ☐ Under Construction | | Ratio (spaces/units) 0.33/1 | # of Units Sold | 0 | # of Units Sold | | # of Units Sold | 0 |
| Year Built 1905 | | Type ☒ Off Street ☐ | # of Units Rented | 0 | # of Units Rented | | # of Units Rented | 0 |
| Effective Age 1 | | Guest Parking ☐ Street | # of Owner Occupied Units | 0 | # of Owner Occupied Units | | # of Owner Occupied Units | 0 |

Project Primary Occupancy ☒ Principal Residence ☐ Second Home or Vacation ☐ Tenant
Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No
Management Group – ☐ Homeowners' Association ☐ Developer ☐ Management Agent – Provide name of management company.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? ☒ Yes ☐ No If Yes, Describe
The current owner owns 100% of the building.

Was the project created by the conversion of existing building(s) into a condominium? ☒ Yes ☐ No If Yes, describe the original use and date of conversion.
The proposed condo project will be a conversion from a single-family row home as permitted in the zoning district.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)? ☐ Yes ☒ No If No, describe
The project is proposed.

Is there any commercial space in the project? ☐ Yes ☒ No If Yes, describe and indicate the overall percentage of the commercial space.
Per completion, there will be no commercial space.

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. 0006172  Page #4

## Individual Condominium Unit Appraisal Report

File # 0006172

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.    Per completion, the subject is expected to be in new condition.

Describe the common elements and recreational facilities.    Common grounds

Are any common elements leased to or by the Homeowners' Association?    Yes    No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?    Yes    No  If Yes, $    per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?    Yes    No  If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I    did    did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.    I was not provided a copy of the budget nor do I have the ability to analyse the budget due to this being a specialized field.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?    Yes    No  If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears    High    Average    Low  If High or Low, describe    The condo fee is expected to be in range with the comps.

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?    Yes    No  If Yes, describe and explain the effect on value and marketability.

**UNIT DESCRIPTION**

Unit Charge $    per month X 12 = $    per year    Annual assessment charge per year per square feet of gross living area = $
Utilities included in the unit monthly assessment    None    Heat    Air Conditioning    Electricity    Gas    Water    Sewer    Cable    Other (describe)
The extraordinary assumption is made that the following will be provided: Snow and Trash removal, insurance and maintenance, as it is typical for the market.

| General Description | Interior | materials/condition | Amenities | | Appliances | Car Storage | | |
|---|---|---|---|---|---|---|---|---|
| Floor #    Basement & 1st | Floors | Hardwood/Tile/New | Fireplace(s) #    0 | | Refrigerator | None | | |
| # of Levels    2 | Walls | Drywall/New | WoodStove(s) #    0 | | Range/Oven | Garage    Covered    Open | | |
| Heating Type /FWA    Fuel Gas | Trim/Finish | Wood/Painted/New | Deck/Patio    None | | Disp    Microwave | # of Cars    0 | | |
| Central AC    Individual AC | Bath Wainscot | Tile/New | Porch/Balcony    None | | Dishwasher | Assigned    Owned | | |
| Other (describe) | Doors | Solid Core/New | Other    None | | Washer/Dryer | Parking Space #    0 | | |
| Finished area **above** grade contains: | 5 Rooms | 2 Bedrooms | 2.1 Bath(s) | 615 | Square Feet of Gross Living Area Above Grade | | | |

Are the heating and cooling for the individual units separately metered?    Yes    No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)    The subject will feature hardwood floors, stone counters, stainless steel appliances, 42" cabinets, recessed lights, upgraded bathrooms with tile and an open floor plan.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject will be a newly converted and renovated unit.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    Yes    No  If Yes, describe
Per completion of proposed conversion and renovations, no adverse conditions will be present.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    Yes    No  If No, describe

**PRIOR SALE HISTORY**

I    did    did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research    did    did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)    MLS, Tax Records
My research    did    did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)    MLS, Tax Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No transfers | No transfers | No transfers | No transfers |
| Price of Prior Sale/Transfer | in the past 36 months | in the past 12 months | in the past 12 months | in the past 12 months |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | 10/12/2018 | 10/12/2018 | 10/12/2018 | 10/12/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales.    After a thorough search of the multiple listing service and tax records, there were no prior sales of comparables in the past 12 months. The subject was not transferred in the past 36 months. All comps appear arms-length.

Freddie Mac Form 465 March 2005                    Page 2 of 6                    Fannie Mae Form 1073 March 2005

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report

File # 0006172

| | | | |
|---|---|---|---|
| There are | 6 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 339,000 | to $ 429,900 |
| There are | 29 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 298,225 | to $ 499,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 1736 Montello Ave NE, 2, Washington, DC 20002 | 1631 Montello Ave NE, A, Washington, DC 20002 | | 1244 Raum St NE, 1, Washington, DC 20002 | | 1038 Bladensburg Rd NE, 3, Washington, DC 20002 | |
| Project Name and Phase | TBD, 1 | Montello Hill Condos, 1 | | Jefferson Condos, 1 | | 1038 Bladensburg Rd Condos, 1 | |
| Proximity to Subject | | 0.15 miles SW | | 0.12 miles SE | | 0.49 miles SE | |
| Sale Price | $ 475,000 | $ 439,000 | | $ 370,000 | | $ 360,000 | |
| Sale Price/Gross Liv. Area | $ 772.36 sq. ft. | $ 566.45 sq. ft. | | $ 462.50 sq. ft. | | $ 553.00 sq. ft. | |
| Data Source(s) | | MRIS#DC10256363;DOM 4 | | MRIS#DC10167164;DOM 25 | | MRIS#DC10268515;DOM 46 | |
| Verification Source(s) | | County Records/Visual | | County Records/Visual | | County Records/Visual | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;11100 | | Conv;10000 | |
| Date of Sale/Time | | s07/18;c06/18 | | s04/18;c03/18 | | s08/18;c09/18 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res;Busy Rd | +15,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | TBD | 166 | | 103 | | 146 | |
| Common Elements and Rec. Facilities | Common Areas | Common Areas | | Common Areas | | Common Areas | |
| Floor Location | Bsmnt & 1st Flrs | Main Level | -25,000 | Basement Lvl | +25,000 | 2nd Floor | -30,000 |
| View | Residential/Avg | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | Mid-Rise | Garden | 0 | Garden | 0 | Garden | 0 |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 113 | 77 | 0 | 82 | 0 | 79 | 0 |
| Condition | Good-New | Good-New | | Good-New | | Good-New | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5  2  2.1 | 5  1  1.0 | +12,500 | 5  2  2.0 | +2,500 | 5  2  1.0 | +7,500 |
| Gross Living Area | 615 sq. ft. | 775 sq. ft. | -32,000 | 800 sq. ft. | -37,000 | 651 sq. ft. | 0 |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | 0 | 0 | | 0 | | 0 | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | Insulated Wds | Insulated Wds | | Insulated Wds | | Insulated Wds | |
| Garage/Carport | 0 | 0 | | 0 | | 0 | |
| Porch/Patio/Deck | None | Patio | -15,000 | None | | None | |
| Fireplace | None | None | | None | | None | |
| Net Adjustment (Total) | | + - $ | -59,500 | + - $ | -9,500 | + - $ | -7,500 |
| Adjusted Sale Price of Comparables | | Net Adj. 13.6 % Gross Adj. 19.2 % $ | 379,500 | Net Adj. 2.6 % Gross Adj. 17.4 % $ | 360,500 | Net Adj. 2.1 % Gross Adj. 14.6 % $ | 352,500 |

**Summary of Sales Comparison Approach** After an extensive search through MLS and Public Records, the appraiser has selected the comparables that are most recent and most similar to the subject property. Adjustments for square footage and other amenities reflect current market responses and do not reflect replacement costs for individual items. Typically higher floor units sell for higher values. The typical buyer recognizes the utility of an additional bedroom and bathroom. Comp #1 has a den. Comp #3 is located on a busy road.

Indicated Value by Sales Comparison Approach $ 369,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____   Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

Indicated Value by: Sales Comparison Approach $ 369,000   Income Approach (if developed) $

Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. The Cost Approach was not developed. The Income approach is not developed due to a lack of data in the subject's neighborhood.

This appraisal is made "as is", subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: subject to complete renovation and conversion.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 369,000 , as of 10/12/2018 , which is the date of inspection and the effective date of this appraisal.

## Individual Condominium Unit Appraisal Report    File # 0006172

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Individual Condominium Unit Appraisal Report    File # 0006172

The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Individual Condominium Unit Appraisal Report

File # 0006172

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature
Name  Anne' Rothemel
Company Name  ADK Appraisals, Inc.
Company Address  5841 Riverside Drive, Woodbridge, VA 22193

Telephone Number  (703) 597-7700
Email Address  mail@adkappraisals.com
Date of Signature and Report  October 12, 2018
Effective Date of Appraisal  10/12/2018
State Certification #  CR11308
or State License #
or Other                        State #
State  DC
Expiration Date of Certification or License  02/28/2020

ADDRESS OF PROPERTY APPRAISED
1736 Montello Ave NE, # 2
Washington, DC 20002
APPRAISED VALUE OF SUBJECT PROPERTY $       369,000
LENDER/CLIENT
Name
Company Name  Washington Capital Partners
Company Address  2815 Hartland Dr, Suite 200, Falls Church, VA 22043

Email Address

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature
Name
Company Name
Company Address

Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY
  Did not inspect subject property
  Did inspect exterior of subject property from street
  Date of Inspection
  Did inspect interior and exterior of subject property
  Date of Inspection

COMPARABLE SALES
  Did not inspect exterior of comparable sales from street
  Did inspect exterior of comparable sales from street
  Date of Inspection

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE



**Location Map**

| Client | Washington Capital Partners | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code  20002 |
| Lender | Washington Capital Partners | | | | | |



## Subject Photo Page

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County  District of Columbia | | State  DC | Zip Code  20002 |
| Lender | Washington Capital Partners | | | | |



### Subject Front

1736 Montello Ave NE
| | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 615 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | Residential/Avg |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |

**Subject Rear**



**Subject Street**



Main File No. 0006172  Page #12

**Subject Photo Page**

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County District of Columbia | | State DC | Zip Code 20002 |
| Lender | Washington Capital Partners | | | | |



### Living Room

| | |
|---|---|
| 1736 Montello Ave NE | |
| Sales Price | 475,000 |
| Gross Living Area | 615 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | Residential/Avg |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |



### Kitchen



### Bathroom

Main File No. 0006172  Page #13

**Subject Photo Page**

| Client | Washington Capital Partners | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code | 20002 |
| Lender | Washington Capital Partners | | | | | |



**Kitchen**

| 1736 Montello Ave NE | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 615 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | Residential/Avg |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |



**Bathroom**



**Bedroom**

## Comparable Photo Page

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 | |
| Lender | Washington Capital Partners | | | | |



### Comparable 1

1631 Montello Ave NE
| | |
|---|---|
| Prox. to Subject | 0.15 miles SW |
| Sales Price | 439,000 |
| Gross Living Area | 775 |
| Total Rooms | 5 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 780 sf |
| Quality | Good |
| Age | 77 |



### Comparable 2

1244 Raum St NE
| | |
|---|---|
| Prox. to Subject | 0.12 miles SE |
| Sales Price | 370,000 |
| Gross Living Area | 800 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1408 sf |
| Quality | Good |
| Age | 82 |



### Comparable 3

1038 Bladensburg Rd NE
| | |
|---|---|
| Prox. to Subject | 0.49 miles SE |
| Sales Price | 360,000 |
| Gross Living Area | 651 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res;Busy Rd |
| View | N;Res; |
| Site | 1152 sf |
| Quality | Good |
| Age | 79 |

## Supplemental Addendum

File No. 0006172

| Client | Washington Capital Partners | | | |
|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | |
| City | Washington | County District of Columbia | State  DC | Zip Code  20002 |
| Lender | Washington Capital Partners | | | |

The purpose of this appraisal is to estimate the market value of the subject property.  In estimating the subject property's market value, an orderly, systematic procedure is followed, in which the appraiser attempts to utilize the three recognized methods of valuation, The Cost Approach, The Income Approach and The Sales Comparison Approach and subsequently lead to a logical final value conclusion.

The Intended User of this appraisal report is the Lender/Client.  The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal form, and Definition of Market Value.  No additional Intended Users are identified by the appraiser.

Exposure Time: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. The appraiser has determined that the property would have to be exposed for 3 to 30 days on the open market in order to have a market value of as noted in the report on the effective date of this appraisal.

The appraiser of this report did perform prior services for the subject property in the 36 months prior to the effective date of the report.

Per completion, the economic life is expected to be 65 years.

The subject is currently a single family home and proposed use is a 6 unit condo building. The appraisal is made on the basis of a hypothetical condition that construction will be completed per plans and specs provided. If work is not permitted or completed as described, the value will likely be different. The condo project name is to be determined. The condo fee will be based on the comps and will be in range with sales in the market area - to be determined. The borrower expects to create a condo association. The floor plan dimensions were based on the attached plans and the appraiser's measurements of the current structure. The interior will feature upgraded appliances, hardwood flooring and tile throughout, 1- and 3 panel doors, low-E windows, granite/quartz counters, 42" kitchen cabinets.



**GREAT**AMERICAN.
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒   Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number:   RAP3364992-18                          Renewal of:   RAP3364992-17

Program Administrator:      Herbert H. Landy Insurance Agency Inc.
                            75 Second Ave Suite 410  Needham, MA 02494-2876

---

Item 1. **Named Insured:**      Anne Rothermel

Item 2. **Address:**              5841 Riverside Drive

City, State, Zip Code:      Woodbridge, VA 22193

Item 3. **Policy Period:** From    04/30/2018      To    04/30/2019
                          *(Month, Day, Year)*        *(Month, Day, Year)*
                          (Both dates at 12:01 a.m. Standard Time at the address of the Named Insured as stated in Item 2.)

Item 4. **Limits of Liability:**

A. $   500,000      Damages Limit of Liability – Each Claim

B. $   500,000      Claim Expenses Limit of Liability – Each Claim

C. $  1,000,000     Damages Limit of Liability – Policy Aggregate

D. $  1,000,000     Claim Expenses Limit of Liability – Policy Aggregate

Item 5. **Deductible (Inclusive of Claim Expenses):**

A. $   0.00      Each Claim

B. $   0.00      Aggregate

Item 6. **Premium:** $      573.00

Item 7. **Retroactive Date (if applicable):**      04/30/2011

Item 8. **Forms, Notices and Endorsements attached:**
        D42100 (03/15) D42300 VA (03/15)  IL7324 (08/12)
        D42402 (05/13) D42408 (05/13) D42412 (03/17)  D42413 (06/17)

*[signature]*

Authorized Representative

D42101 (03/15)                                                          Page 1 of 1





# APPRAISAL OF REAL PROPERTY

### LOCATED AT:

1736 Montello Ave NE
Lot 22, Square 4053, Unit 3, Trinidad
Washington, DC 20002

### FOR:

Washington Capital Partners
2815 Hartland Dr
Falls Church, VA  22043

### AS OF:

10/12/2018

### BY:

Anne' Rothermel
Certified Residential Appraiser
ADK Appraisals, Inc.
5841 Riverside Drive
Woodbridge, VA 22193

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 1736 Montello Ave NE |
| | Legal Description | Lot 22, Square 4053, Unit 3, Trinidad |
| | City | Washington |
| | County | District of Columbia |
| | State | DC |
| | Zip Code | 20002 |
| | Census Tract | 0088.04 |
| | Map Reference | 47894 |
| **SALES PRICE** | Sale Price | $ 475,000 |
| | Date of Sale | 9/18/2018 |
| **CLIENT** | Client | Washington Capital Partners |
| | Lender | Washington Capital Partners |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 352 |
| | Price per Square Foot | $ 1,349.43 |
| | Location | N;Res; |
| | Age | 113 |
| | Condition | Good-New |
| | Total Rooms | 2 |
| | Bedrooms | 1 |
| | Baths | 1.0 |
| **APPRAISER** | Appraiser | Anne' Rothermel |
| | Date of Appraised Value | 10/12/2018 |
| **VALUE** | Final Estimate of Value | $ 320,000 |

## Individual Condominium Unit Appraisal Report

File # 0006173

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address | 1736 Montello Ave NE  Unit # 3  City Washington  State DC  Zip Code 20002 |
| Borrower | Coloma River Holdings, LLC  Owner of Public Record Precious Robinson  County District of Columbia |
| Legal Description | Lot 22, Square 4053, Unit 3, Trinidad |
| Assessor's Parcel # | 4053 0022  Tax Year 2017  R.E. Taxes $ 2,038 |
| Project Name | TBD  Phase # 1  Map Reference 47894  Census Tract 0088.04 |
| Occupant | Owner  Tenant  Vacant  Special Assessments $ 0  HOA $ 0  per year  per month |
| Property Rights Appraised | Fee Simple  Leasehold  Other (describe) |
| Assignment Type | Purchase Transaction  Refinance Transaction  Other (describe) |
| Lender/Client | Washington Capital Partners  Address 2815 Hartland Dr, Suite 200, Falls Church, VA 22043 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  Yes  No
Report data source(s) used, offering price(s), and date(s).  The subject was listed 8/16/2018 for $379,000 and contracted below market value after 4 days; MLS DC10322566.

### CONTRACT

I did  did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  The contract appears typical. This is an assignment sale. The sales price reflects as-is condition.

Contract Price $ 475,000  Date of Contract 9/18/2018  Is the property seller the owner of public record?  Yes  No  Data Source(s) Contract, Tax Rec.
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  YES  NO
If Yes, report the total dollar amount and describe the items to be paid.  0

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Condominium Unit Housing Trends | | | Condominium Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | Urban | Suburban  Rural | Property Values | Increasing | Stable  Declining | PRICE | AGE | One-Unit | 65 % |
| Built-Up | Over 75% | 25-75%  Under 25% | Demand/Supply | Shortage | In Balance  Over Supply | $ (000) | (yrs) | 2-4 Unit | 3 % |
| Growth | Rapid | Stable  Slow | Marketing Time | Under 3 mths | 3-6 mths  Over 6 mths | 157 Low | 1 | Multi-Family | 12 % |
| | | | | | | 799 High | 118 | Commercial | 18 % |
| | | | | | | 411 Pred. | 72 | Other | 2 % |

Neighborhood Boundaries  The subject is located south of Mt. Olivet Rd, east of West Virginia Ave, north of Florida Ave and west of Bladensburg Rd.
Neighborhood Description  Employment centers, schools, places of worship, and shopping facilities are within close proximity. There is no apparent measurable evidence of factors which might adversely affect marketability. Major Rt 50 is accessible within 2 mile. This provides good access to the Beltway and Washington metropolitan areas.
Market Conditions (including support for the above conclusions)  Average marketing time based on data is 0-3 months when properly listed. The market had tightened lending requirements for obtaining many forms of financing while interest was on the rise. Rates have been slightly stabilized and lowered by the Federal Reserve in order to ease market tensions.

### PROJECT SITE

| | |
|---|---|
| Topography Level | Size Average  Density Average  View Residential/Avg |
| Specific Zoning Classification | MU-4  Zoning Description Mixed-use Zone |
| Zoning Compliance | Legal  Legal Nonconforming – Do the zoning regulations permit rebuilding to current density?  Yes  No  No Zoning  Illegal (describe) |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  Yes  No If No, describe  Highest and best use is conversion of condos/mixed-use space as permitted in the zoning district.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | | | Water | | | Street Asphalt | | |
| Gas | | | Sanitary Sewer | | | Alley Asphalt | | |

FEMA Special Flood Hazard Area  Yes  No  FEMA Flood Zone X  FEMA Map # 1100010036C  FEMA Map Date 09/27/2010
Are the utilities and off-site improvements typical for the market area?  Yes  No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  Yes  No If Yes, describe
There are no apparent adverse easements, encroachments, or other adverse conditions. No special assessments were noted on tax records.

### PROJECT INFORMATION

Data source(s) for project information  MLS, Tax Records, Inspection, Plans
Project Description  Detached  Row or Townhouse  Garden  Mid-Rise  High-Rise  Other (describe)

| General Description | | General Description | | Subject Phase | | If Project Completed | | If Project Incomplete | |
|---|---|---|---|---|---|---|---|---|---|
| # of Stories | 5 | Exterior Walls | Brk/FbrC | # of Units | 6 | # of Phases | | # of Planned Phases | 1 |
| # of Elevators | 0 | Roof Surface | Built-up | # of Units Completed | 0 | # of Units | | # of Planned Units | 6 |
| Existing  Proposed | | Total # Parking | 2 | # of Units For Sale | 0 | # of Units for Sale | | # of Units for Sale | 0 |
| Under Construction | | Ratio (spaces/units) | 0.33/1 | # of Units Sold | 0 | # of Units Sold | | # of Units Sold | 0 |
| Year Built | 1905 | Type | Off Street | # of Units Rented | 0 | # of Units Rented | | # of Units Rented | 0 |
| Effective Age | 1 | Guest Parking | Street | # of Owner Occupied Units | 0 | # of Owner Occupied Units | | # of Owner Occupied Units | 0 |

Project Primary Occupancy  Principal Residence  Second Home or Recreational  Tenant
Is the developer/builder in control of the Homeowners' Association (HOA)?  Yes  No
Management Group –  Homeowners' Association  Developer  Management Agent - Provide name of management company.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project?  Yes  No If Yes, Describe
The current owner owns 100% of the building.

Was the project created by the conversion of existing building(s) into a condominium?  Yes  No If Yes, describe the original use and date of conversion.
The proposed condo project will be a conversion from a single-family row home as permitted in the zoning district.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)?  Yes  No If No, describe
The project is proposed.

Is there any commercial space in the project?  Yes  No If Yes, describe and indicate the overall percentage of the commercial space.
Per completion, there will be no commercial space.

Main File No. 0006173  Page #4

## Individual Condominium Unit Appraisal Report

File # 0006173

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.    Per completion, the subject is expected to be in new condition.

Describe the common elements and recreational facilities.    Common grounds

Are any common elements leased to or by the Homeowners' Association?    Yes    No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?    Yes    No    If Yes, $    per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?    Yes    No If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I    did    did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.    I was not provided a copy of the budget nor do I have the ability to analyse the budget due to this being a specialized field.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?    Yes    No    If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears    High    Average    Low  If High or Low, describe    The condo fee is expected to be in range with the comps.

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?    Yes    No    If Yes, describe and explain the effect on value and marketability.

Unit Charge $    per month X 12 = $    per year    Annual assessment charge per year per square feet of gross living area = $
Utilities included in the unit monthly assessment    None    Heat    Air Conditioning    Electricity    Gas    Water    Sewer    Cable    Other (describe)
The extraordinary assumption is made that the following will be covered; Snow and Trash removal, insurance and maintenance, as it is typical for the market.

**UNIT DESCRIPTION**

| General Description | Interior | materials/condition | Amenities | | Appliances | Car Storage | | |
|---|---|---|---|---|---|---|---|---|
| Floor # | Floors | Hardwood/Tile/New | Fireplace(s) # | 0 | Refrigerator | None | | |
| # of Levels    1 | Walls | Drywall/New | WoodStove(s) # | 0 | Range/Oven | Garage    Covered    Open | | |
| Heating Type  FWA    Fuel Gas | Trim/Finish | Wood/Painted/New | Deck/Patio    None | | Disp    Microwave | # of Cars    0 | | |
| Central AC    Individual AC | Bath Wainscot | Tile/New | Porch/Balcony    None | | Dishwasher | Assigned    Owned | | |
| Other (describe) | Doors | Solid Core/New | Other    None | | Washer/Dryer | Parking Space #    0 | | |

2nd Floor

Finished area **above** grade contains:    2  Rooms    1  Bedrooms    1.0  Bath(s)    352   Square Feet of Gross Living Area Above Grade
Are the heating and cooling for the individual units separately metered?    Yes    No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)    The subject will feature hardwood floors, stone counters, stainless steel appliances, 42" cabinets, recessed lights, upgraded bathroom with tile and an open floor plan.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject will be a newly converted and renovated unit.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    Yes    No  If Yes, describe
Per completion of proposed conversion and renovations, no adverse conditions will be present.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    Yes    No  If No, describe

**PRIOR SALE HISTORY**

I    did    did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research    did    did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)    MLS, Tax Records
My research    did    did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)    MLS, Tax Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No transfers | No transfers | No transfers | No transfers |
| Price of Prior Sale/Transfer | in the past 36 months | in the past 12 months | in the past 12 months | in the past 12 months |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | 10/12/2018 | 10/12/2018 | 10/12/2018 | 10/12/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales.    After a thorough search of the multiple listing service and tax records, there were no prior sales of comparables in the past 12 months. The subject was not transferred in the past 36 months. All comps appear arms-length.

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report

File # 0006173

There are **6** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 339,000 to $ 429,900
There are **29** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 298,225 to $ 499,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address and Unit # | 1736 Montello Ave NE 3, Washington, DC 20002 | 410 15th St NE 26, Washington, DC 20002 | 1605 E St NE 2, Washington, DC 20002 | 1111 Orren St NE 107, Washington, DC 20002 |
| Project Name and Phase | TBD 1 | 410 15th St Condos 1 | The Yemmer Condos 1 | The Corey 1 |
| Proximity to Subject | | 1.02 miles S | 0.98 miles S | 0.58 miles S |
| Sale Price | $ 475,000 | $ 339,095 | $ 369,000 | $ 355,000 |
| Sale Price/Gross Liv. Area | $ 1349.43 sq. ft. | $ 974.41 sq. ft. | $ 598.06 sq. ft. | $ 636.20 sq. ft. |
| Data Source(s) | | MRIS#DC10217131;DOM 8 | MRIS#DC10271104;DOM 4 | MRIS#DC9866647;DOM 0 |
| Verification Source(s) | | County Records/Visual | County Records/Visual | County Records/Visual |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sales or Financing | | ArmLth | ArmLth | ArmLth |
| Concessions | | Conv;0 | Conv;6000 | Conv;0 |
| Date of Sale/Time | | s05/18;c05/18 | s07/18;c06/18 | s03/17;c02/17 |
| Location | N;Res; | N;Res; | N;Res; | N;Res; |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| HOA Mo. Assessment | TBD | 146 | 140 | 279 |
| Common Elements and Rec. Facilities | Common Areas | Common Areas | Common Areas | MnArea,RfDck -8,000 Party Rm, Gym -8,000 |
| Floor Location | 2nd Floor | 2nd Floor | 2nd Floor | 2nd Floor |
| View | N;Res; | N;Res; | N;Res; | N;Res; |
| Design (Style) | Mid-Rise | Garden 0 | Garden 0 | Mid-Rise |
| Quality of Construction | Good | Good | Good | Good |
| Actual Age | 113 | 91 0 | 82 0 | 1 0 |
| Condition | Good-New | Good-New | Good-New | New |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths |
| Room Count | 2 1 1.0 | 3 1 1.0 0 | 3 1 1.1 -2,500 | 2 1 1.0 |
| Gross Living Area | 352 sq. ft. | 348 sq. ft. 0 | 617 sq. ft. -33,125 | 558 sq. ft. -25,750 |
| Basement & Finished | 0 | 0 | 0 | 0 |
| Rooms Below Grade | 0 | 0 | 0 | 0 |
| Functional Utility | Average | Average | Average | Average |
| Heating/Cooling | FWA/CAC | FWA/CAC | FWA/CAC | FWA/CAC |
| Energy Efficient Items | Insulated Wds | Insulated Wds | Insulated Wds | Insulated Wds |
| Garage/Carport | 0 | 0 | 0 | 0 |
| Porch/Patio/Deck | None | Patio -15,000 | None | None |
| Fireplace | None | None | None | None |
| Net Adjustment (Total) | | + - $ -15,000 | + - $ -35,625 | + - $ -41,750 |
| Adjusted Sale Price of Comparables | | Net Adj. 4.4 % Gross Adj. 4.4 % $ 324,095 | Net Adj. 9.7 % Gross Adj. 9.7 % $ 333,375 | Net Adj. 11.8 % Gross Adj. 11.8 % $ 313,250 |

Summary of Sales Comparison Approach   After an extensive search through MLS and Public Records, the appraiser has selected the comparables that are most recent and most similar to the subject property. Adjustments for square footage and other amenities reflect current market responses and do not reflect replacement costs for individual items. The typical buyer recognizes the utility of an additional bathroom. Comp #3 is located in a condo project with superior amenities.

Indicated Value by Sales Comparison Approach $ 320,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____   Indicated Value by Income Approach _____
Summary of Income Approach (including support for market rent and GRM)

Indicated Value by: Sales Comparison Approach $ 320,000   Income Approach (if developed) $ _____

Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. The Cost Approach was not developed. The Income approach is not developed due to a lack of data in the subject's neighborhood.

This appraisal is made   "as is",   subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,   subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or   subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   subject to complete renovation and conversion.
**Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 320,000 , as of 10/12/2018 , which is the date of inspection and the effective date of this appraisal.**

Freddie Mac Form 465 March 2005       Page 3 of 6       Fannie Mae Form 1073 March 2005

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report    File # 0006173

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

The intended user of this appraisal report is the lender/client.

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consumption of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Individual Condominium Unit Appraisal Report     File # 0006173

The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1073 --- "WinTOTAL" appraisal software by a la mode, inc. --- 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report

File # 0006173

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Anne' Rothamel othemel | Name |
| Company Name  ADK Appraisals, Inc. | Company Name |
| Company Address  5841 Riverside Drive, Woodbridge, VA 22193 | Company Address |
| | |
| Telephone Number  (703) 597-7700 | Telephone Number |
| Email Address  mail@adkappraisals.com | Email Address |
| Date of Signature and Report  October 12, 2018 | Date of Signature |
| Effective Date of Appraisal  10/12/2018 | State Certification # |
| State Certification #  CR11308 | or State License # |
| or State License # | State |
| or Other  State # | Expiration Date of Certification or License |
| State  DC | |
| Expiration Date of Certification or License  02/28/2020 | SUBJECT PROPERTY |
| | Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | Did inspect exterior of subject property from street |
| 1736 Montello Ave NE, # 3 | Date of Inspection |
| Washington, DC 20002 | Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $     320,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name  Washington Capital Partners | Did not inspect exterior of comparable sales from street |
| Company Address  2815 Hartland Dr, Suite 200, Falls Church, VA 22043 | Did inspect exterior of comparable sales from street |
| | Date of Inspection |
| Email Address | |

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE



## Location Map

| | | | | | | |
|---|---|---|---|---|---|---|
| Client | Washington Capital Partners | | | | | |
| Property Address | 1736 Montello Ave NE | | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code | 20002 |
| Lender | Washington Capital Partners | | | | | |



Main File No. 0006173  Page #11

## Subject Photo Page

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County  District of Columbia | State  DC | Zip Code  20002 |
| Lender | Washington Capital Partners | | | | |



### Subject Front

1736 Montello Ave NE

| | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 352 |
| Total Rooms | 2 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |

### Subject Rear



### Subject Street



Main File No. 0006173  Page #12

## Subject Photo Page

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 | |
| Lender | Washington Capital Partners | | | | |



### Living Room

| 1736 Montello Ave NE | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 352 |
| Total Rooms | 2 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |



### Kitchen



### Bathroom

**Subject Photo Page**

| Client | Washington Capital Partners | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | | |
| City | Washington | County District of Columbia | | State DC | Zip Code 20002 | |
| Lender | Washington Capital Partners | | | | | |



**Kitchen**

1736 Montello Ave NE
| | |
|---|---|
| Sales Price | 475,000 |
| Gross Living Area | 352 |
| Total Rooms | 2 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |



**Bathroom**



**Bedroom**

## Comparable Photo Page

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 |
| Lender | Washington Capital Partners | | | | |



### Comparable 1

410 15th St NE
| | |
|---|---|
| Prox. to Subject | 1.02 miles S |
| Sales Price | 339,095 |
| Gross Living Area | 348 |
| Total Rooms | 3 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 780 sf |
| Quality | Good |
| Age | 91 |



### Comparable 2

1605 E St NE
| | |
|---|---|
| Prox. to Subject | 0.98 miles S |
| Sales Price | 369,000 |
| Gross Living Area | 617 |
| Total Rooms | 3 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1408 sf |
| Quality | Good |
| Age | 82 |



### Comparable 3

1111 Orren St NE
| | |
|---|---|
| Prox. to Subject | 0.58 miles S |
| Sales Price | 355,000 |
| Gross Living Area | 558 |
| Total Rooms | 2 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1152 sf |
| Quality | Good |
| Age | 1 |

## Supplemental Addendum

File No. 0006173

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code | 20002 |
| Lender | Washington Capital Partners | | | | |

The purpose of this appraisal is to estimate the market value of the subject property. In estimating the subject property's market value, an orderly, systematic procedure is followed, in which the appraiser attempts to utilize the three recognized methods of valuation, The Cost Approach, The Income Approach and The Sales Comparison Approach and subsequently lead to a logical final value conclusion.

The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

Exposure Time: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. The appraiser has determined that the property would have to be exposed for 3 to 30 days on the open market in order to have a market value of $320,000 on the effective date of this appraisal.

The appraiser of this report did perform prior services for the subject property in the 36 months prior to the effective date of the report.

Per completion, the economic life is expected to be 65 years.

The subject is currently a single family home and proposed use is a 6 unit condo building. The appraisal is made on the basis of a hypothetical condition that construction will be completed per plans and specs provided. If work is not permitted or completed as described, the value will likely be different. The condo project name is to be determined. The condo fee will be based on the comps and will be in range with sales in the market area - to be determined. The borrower expects to create a condo association. The floor plan dimensions were based on the attached plans. The interior will feature upgraded appliances, hardwood flooring and tile throughout, 1- and 3 panel doors, low-E windows, granite/quartz counters, 42" kitchen cabinets.



**GREAT**AMERICAN.
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒  Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the Company.

Policy Number:   RAP3364992-18                    Renewal of:   RAP3364992-17

Program Administrator:        Herbert H. Landy Insurance Agency Inc.
                              75 Second Ave Suite 410  Needham, MA 02494-2876

Item 1. Named Insured:   **Anne Rothermel**

Item 2. Address:          **5841 Riverside Drive**
        City, State, Zip Code:   **Woodbridge, VA 22193**

Item 3. Policy Period: From   **04/30/2018**      To   **04/30/2019**
                       (Month, Day, Year)    (Month, Day, Year)
        (Both dates at 12:01 a.m. Standard Time at the address of the Named Insured as stated in Item 2.)

Item 4.  Limits of Liability:

        A. $    **500,000**      Damages Limit of Liability – Each Claim

        B. $    **500,000**      Claim Expenses Limit of Liability – Each Claim

        C. $  **1,000,000**      Damages Limit of Liability – Policy Aggregate

        D. $  **1,000,000**      Claim Expenses Limit of Liability – Policy Aggregate

Item 5.  Deductible (Inclusive of Claim Expenses):

        A. $   **0.00**          Each Claim

        B. $   **0.00**          Aggregate

Item 6.  Premium: $    573.00

Item 7.  Retroactive Date (if applicable):   **04/30/2011**

Item 8.  Forms, Notices and Endorsements attached:
        D42100 (03/15)  D42300 VA (03/15)  IL7324 (08/12)
        D42402 (05/13)  D42408 (05/13)  D42412 (03/17)  D42413 (06/17)

                                                    _Betsy a magnichel_
                                                    Authorized Representative

D42101 (03/15)                                              Page 1 of 1



GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS
Occupational and Professional Licensing Administration

*certifies that*

ANNE ROTHERMEL
ADK APPRAISALS, INC.
5841 RIVERSIDE DRIVE
WOODBRIDGE VA 22193

*has met all requirements by law and regulations and is hereby licensed as:*

APPRAISER CERTIFIED RESIDENTIAL
License #: CR11308

Issue Date: 3/1/2018
Expiration Date: 2/28/2020

Director, Department of
Consumer and Regulatory Affairs



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1736 Montello Ave NE
Lot 22, Square 4053, Unit 4, Trinidad
Washington, DC 20002

### FOR:
Washington Capital Partners
2815 Hartland Dr
Falls Church, VA  22043

### AS OF:
10/12/2018

### BY:
Anne' Rothermel
Certified Residential Appraiser
ADK Appraisals, Inc.
5841 Riverside Drive
Woodbridge, VA 22193

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 1736 Montello Ave NE |
| | Legal Description | Lot 22, Square 4053, Unit 4, Trinidad |
| | City | Washington |
| | County | District of Columbia |
| | State | DC |
| | Zip Code | 20002 |
| | Census Tract | 0088.04 |
| | Map Reference | 47894 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ 475,000 |
| | Date of Sale | 9/18/2018 |

| CLIENT | | |
|---|---|---|
| | Client | Washington Capital Partners |
| | Lender | Washington Capital Partners |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 352 |
| | Price per Square Foot | $ 1,349.43 |
| | Location | N;Res; |
| | Age | 113 |
| | Condition | Good-New |
| | Total Rooms | 2 |
| | Bedrooms | 1 |
| | Baths | 1.0 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | Anne' Rothermel |
| | Date of Appraised Value | 10/12/2018 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 320,000 |

Main File No. 0006174  Page #3

## Individual Condominium Unit Appraisal Report

File # 0006174

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | | |
|---|---|---|---|
| Property Address  1736 Montello Ave NE | Unit #  4 | City  Washington | State  DC  Zip Code  20002 |
| Borrower  Coloma River Holdings, LLC | Owner of Public Record  Precious Robinson | | County  District of Columbia |

Legal Description  Lot 22, Square 4053, Unit 4, Trinidad

| | | | |
|---|---|---|---|
| Assessor's Parcel #  4053 0022 | Tax Year  2017 | R.E. Taxes $  2,038 | |
| Project Name  TBD | Phase #  1 | Map Reference  47894 | Census Tract  0088.04 |
| Occupant   Owner   Tenant   Vacant | Special Assessments $  0 | HOA $  0   per year   per month | |
| Property Rights Appraised   Fee Simple   Leasehold   Other (describe) | | | |
| Assignment Type   Purchase Transaction   Refinance Transaction   Other (describe) | | | |

Lender/Client  Washington Capital Partners          Address  2815 Hartland Dr, Suite 200, Falls Church, VA 22043

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?     Yes     No
Report data source(s) used, offering price(s), and date(s).     The subject was listed 8/16/2018 for $379,000 and contracted below market value after 4 days: MLS DC10322566.

**CONTRACT**

I   did   did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.     The contract appears typical. This is an assignment sale. The sales price reflects as-is condition.

| | | | |
|---|---|---|---|
| Contract Price $  475,000 | Date of Contract  9/18/2018 | Is the property seller the owner of public record?   Yes   No  Data Source(s)  Contract, Tax Rec. | |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?     YES     NO
If Yes, report the total dollar amount and describe the items to be paid.     0

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Condominium Unit Housing Trends | | | Condominium Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | Urban | Suburban | Rural | Property Values | Increasing | Stable | Declining | PRICE | AGE | One-Unit | 65 % |
| Built-Up | Over 75% | 25-75% | Under 25% | Demand/Supply | Shortage | In Balance | Over Supply | $ (000) | (yrs) | 2-4 Unit | 3 % |
| Growth | Rapid | Stable | Slow | Marketing Time | Under 3 mths | 3-6 mths | Over 6 mths | 157 Low | | Multi-Family | 12 % |
| | | | | | | | | 799 High | 118 | Commercial | 18 % |
| | | | | | | | | 411 Pred. | 72 | Other | 2 % |

Neighborhood Boundaries     The subject is located south of Mt. Olivet Rd, east of West Virginia Ave, north of Florida Ave and west of Bladensburg Rd.

Neighborhood Description     Employment centers, schools, places of worship, and shopping facilities are within close proximity. There is no apparent measurable evidence of factors which might adversely affect marketability. Major Rt 50 is accessible within 2 mile. This provides good access to the Beltway and Washington metropolitan areas.

Market Conditions (including support for the above conclusions)     Average marketing time based on data is 0-3 months when properly listed. The market had lightened lending requirements for obtaining many forms of financing while interest was on the rise. Rates have been slightly stabilized and lowered by the Federal Reserve in order to ease market tensions.

**PROJECT SITE**

| | | | |
|---|---|---|---|
| Topography  Level | Size  Average | Density  Average | View  Residential/Avg |
| Specific Zoning Classification  MU-4 | | Zoning Description  Mixed-use Zone | |

Zoning Compliance   Legal   Legal Nonconforming -- Do the zoning regulations permit rebuilding to current density?   Yes   No
  No Zoning   Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   Yes   No  If No, describe   Highest and best use is conversion of condos/mixed-use space as permitted in the zoning district.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | | | Water | | | Street  Asphalt | | |
| Gas | | | Sanitary Sewer | | | Alley  Asphalt | | |

FEMA Special Flood Hazard Area   Yes   No   FEMA Flood Zone  X     FEMA Map #  1100010036C     FEMA Map Date  09/27/2010
Are the utilities and off-site improvements typical for the market area?   Yes   No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   Yes   No  If Yes, describe
  There are no apparent adverse easements, encroachments, or other adverse conditions. No special assessments were noted on tax records

**PROJECT INFORMATION**

Data source(s) for project information     MLS, Tax Records, Inspection, Plans

Project Description   Detached   Row or Townhouse   Garden   Mid-Rise   High-Rise   Other (describe)

| General Description | | General Description | | Subject Unit | | If Project Completed | | If Project Incomplete | |
|---|---|---|---|---|---|---|---|---|---|
| # of Stories | 5 | Exterior Walls | Brk/FbrC | # of Units | 6 | # of Phases | | # of Planned Phases | 1 |
| # of Elevators | 0 | Roof Surface | Built-up | # of Units Completed | 0 | # of Units | | # of Planned Units | 6 |
| Existing | Proposed | Total # Parking | 2 | # of Units For Sale | 0 | # of Units for Sale | | # of Units for Sale | 0 |
| Under Construction | | Ratio (spaces/units) | 0.33/1 | # of Units Sold | 0 | # of Units Sold | | # of Units Sold | 0 |
| Year Built | 1905 | Type | Off Street | # of Units Rented | 0 | # of Units Rented | | # of Units Rented | 0 |
| Effective Age | 1 | Guest Parking | Street | # of Owner Occupied Units | 0 | # of Owner Occupied Units | | # of Owner Occupied Units | 0 |

| | |
|---|---|
| Project Primary Occupancy   Principal Residence   Second Home or Investment   Tenant | |

Is the developer/builder in control of the Homeowners' Association (HOA)?   Yes   No
Management Group -   Homeowners' Association   Developer   Management Agent - Provide name of management company.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project?   Yes   No  If Yes, Describe
The current owner owns 100% of the building.

Was the project created by the conversion of existing building(s) into a condominium?   Yes   No  If Yes, describe the original use and date of conversion.
The proposed condo project will be a conversion from a single-family row home as permitted in the zoning district.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)?   Yes   No  If No, describe
The project is proposed.

Is there any commercial space in the project?   Yes   No  If Yes, describe and indicate the overall percentage of the commercial space.
Per completion, there will be no commercial space.

| | | |
|---|---|---|
| Freddie Mac Form 465 March 2005 | Page 1 of 6 | Fannie Mae Form 1073 March 2005 |

## Individual Condominium Unit Appraisal Report

File # 0006174

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.   Per completion, the subject is expected to be in new condition.

Describe the common elements and recreational facilities.    Common grounds

Are any common elements leased to or by the Homeowners' Association?    Yes    No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?    Yes    No  If Yes, $    per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?    Yes    No  If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I ___ did  ___ did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.   I was not provided a copy of the budget nor do I have the ability to analyse the budget due to this being a specialized field.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?    Yes    No  If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears    High    Average    Low  If High or Low, describe    The condo fee is expected to be in range with the comps.

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?    Yes    No  If Yes, describe and explain the effect on value and marketability.

**UNIT DESCRIPTION**

Unit Charge $    per month X 12 = $    per year    Annual assessment charge per year per square feet of gross living area = $

Utilities included in the unit monthly assessment    None    Heat    Air Conditioning    Electricity    Gas    Water    Sewer    Cable    Other (describe)

The extraordinary assumption is made that the following will be covered: Snow and Trash removal, insurance and maintenance, as it is typical for the market.

| General Description | Interior | materials/condition | Amenities | Appliances | Car Storage | | |
|---|---|---|---|---|---|---|---|
| Floor #   2nd Floor | Floors | Hardwood/Tile/New | Fireplace(s) #   0 | Refrigerator | None | | |
| # of Levels  1 | Walls | Drywall/New | WoodStove(s) #   0 | Range/Oven | Garage   Covered   Open | | |
| Heating Type FWA   Fuel Gas | Trim/Finish | Wood/Painted/New | Deck/Patio   None | Disp   Microwave | # of Cars   0 | | |
| Central AC   Individual AC | Bath Wainscot | Tile/New | Porch/Balcony   None | Dishwasher | Assigned   Owned | | |
| Other (describe) | Doors | Solid Core/New | Other   None | Washer/Dryer | Parking Space #   0 | | |

Finished area above grade contains:    2  Rooms    1  Bedrooms    1.0  Bath(s)    352  Square Feet of Gross Living Area Above Grade

Are the heating and cooling for the individual units separately metered?    Yes    No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)    The subject will feature hardwood floors, stone counters, stainless steel appliances, 42" cabinets, recessed lights, upgraded bathroom with tile and an open floor plan.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject will be a newly converted and renovated unit.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    Yes    No  If Yes, describe
Per completion of proposed conversion and renovations, no adverse conditions will be present.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    Yes    No  If No, describe

**PRIOR SALE HISTORY**

I ___ did  ___ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research  ___ did  ___ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)    MLS, Tax Records
My research  ___ did  ___ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)    MLS, Tax Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No transfers | No transfers | No transfers | No transfers |
| Price of Prior Sale/Transfer | in the past 36 months | in the past 12 months | in the past 12 months | in the past 12 months |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | 10/12/2018 | 10/12/2018 | 10/12/2018 | 10/12/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales.    After a thorough search of the multiple listing service and tax records, there were no prior sales of comparables in the past 12 months. The subject was not transferred in the past 36 months. All comps appear arms-length.

## Individual Condominium Unit Appraisal Report

File # 0006174

| | | | |
|---|---|---|---|
| There are | 6 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 339,000 | to $ 429,900 |
| There are | 26 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 298,225 | to $ 499,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address and | 1736 Montello Ave NE | 410 15th St NE | 1605 E St NE | 1111 Orren St NE |
| Unit # | 4, Washington, DC 20002 | 26, Washington, DC 20002 | 2, Washington, DC 20002 | 107, Washington, DC 20002 |
| Project Name and | TBD | 410 15th St Condos | The Yemmer Condos | The Corey |
| Phase | 1 | 1 | 1 | 1 |
| Proximity to Subject | | 1.02 miles S | 0.98 miles S | 0.58 miles S |
| Sale Price | $ 475,000 | $ 339,095 | $ 369,000 | $ 355,000 |
| Sale Price/Gross Liv. Area | $ 1349.43 sq. ft. | $ 974.41 sq. ft. | $ 598.06 sq. ft. | $ 636.20 sq. ft. |
| Data Source(s) | | MRIS#DC10217131;DOM 8 | MRIS#DC10271104;DOM 4 | MRIS#DC9866647;DOM 0 |
| Verification Source(s) | | County Records/Visual | County Records/Visual | County Records/Visual |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sales or Financing | | ArmLth | ArmLth | ArmLth |
| Concessions | | Conv;0 | Conv;6000 | Conv;0 |
| Date of Sale/Time | | s05/18;c05/18 | s07/18;c06/18 | s03/17;c02/17 |
| Location | N;Res; | N;Res; | N;Res; | N;Res; |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| HOA Mo. Assessment | TBD | 140 | 146 | 279 |
| Common Elements | Common Areas | Common Areas | Common Areas | MnArea,RfDck  -8,000 |
| and Rec. Facilities | | | | Party Rm, Gym  -8,000 |
| Floor Location | 2nd Floor | 2nd Floor | 2nd Floor | 2nd Floor |
| View | Residential/Avg | N;Res; | N;Res; | N;Res; |
| Design (Style) | Mid-Rise | Garden  0 | Garden  0 | Mid-Rise |
| Quality of Construction | Good | Good | Good | Good |
| Actual Age | 113 | 91  0 | 82  0 | 1  0 |
| Condition | Good-New | Good-New | Good-New | New  0 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths |
| Room Count | 2  1  1.0 | 3  1  1.0  0 | 3  1  1.1  -2,500 | 2  1  1.0 |
| Gross Living Area | 352 sq. ft. | 348 sq. ft.  0 | 617 sq. ft.  -33,125 | 558 sq. ft.  -25,750 |
| Basement & Finished | 0 | 0 | 0 | 0 |
| Rooms Below Grade | 0 | 0 | 0 | 0 |
| Functional Utility | Average | Average | Average | Average |
| Heating/Cooling | FWA/CAC | FWA/CAC | FWA/CAC | FWA/CAC |
| Energy Efficient Items | Insulated Wds | Insulated Wds | Insulated Wds | Insulated Wds |
| Garage/Carport | 0 | 0 | 0 | 0 |
| Porch/Patio/Deck | None | Patio  -15,000 | None | None |
| Fireplace | None | None | None | None |
| Net Adjustment (Total) | | + - $  -15,000 | + - $  -35,625 | + - $  -41,750 |
| Adjusted Sale Price | | Net Adj. 4.4 % | Net Adj. 9.7 % | Net Adj. 11.8 % |
| of Comparables | | Gross Adj. 4.4 % $ 324,095 | Gross Adj. 9.7 % $ 333,375 | Gross Adj. 11.8 % $ 313,250 |

Summary of Sales Comparison Approach    After an extensive search through MLS and Public Records, the appraiser has selected the comparables that are most recent and most similar to the subject property. Adjustments for square footage and other amenities reflect current market responses and do not reflect replacement costs for individual items. The typical buyer recognizes the utility of an additional bathroom. Comp #3 is located in a condo project with superior amenities.

Indicated Value by Sales Comparison Approach $  320,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____  X  Gross Rent Multiplier _____ = $ _____    Indicated Value by Income Approach _____

Summary of Income Approach (including support for market rent and GRM)

Indicated Value by: Sales Comparison Approach $  320,000    Income Approach (if developed) $ _____

Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. The Cost Approach was not developed. The Income approach is not developed due to a lack of data in the subject's neighborhood.

This appraisal is made    "as is",    subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,    subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or    subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  subject to complete renovation and conversion.

**Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  320,000 , as of    10/12/2018 , which is the date of inspection and the effective date of this appraisal.**

## Individual Condominium Unit Appraisal Report          File # 0006174

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

The intended user of this appraisal report is the lender/client.

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Individual Condominium Unit Appraisal Report

File # 0006174

The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Individual Condominium Unit Appraisal Report

File # 0006174

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Anne' Rothenol | Name |
| Company Name  ADK Appraisals, Inc. | Company Name |
| Company Address  5841 Riverside Drive, Woodbridge, VA 22193 | Company Address |
| Telephone Number  (703) 597-7700 | Telephone Number |
| Email Address  mail@adkappraisals.com | Email Address |
| Date of Signature and Report  October 12, 2018 | Date of Signature |
| Effective Date of Appraisal  10/12/2018 | State Certification # |
| State Certification #  CR11308 | or State License # |
| or State License # | State |
| or Other  State #  State  DC | Expiration Date of Certification or License |
| Expiration Date of Certification or License  02/28/2020 | |
| | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | Did not inspect subject property |
| 1736 Montello Ave NE, # 4 | Did inspect exterior of subject property from street |
| Washington, DC 20002 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  320,000 | Did inspect interior and exterior of subject property |
| LENDER/CLIENT | Date of Inspection |
| Name | |
| Company Name  Washington Capital Partners | COMPARABLE SALES |
| Company Address  2815 Hartland Dr, Suite 200, Falls Church, VA 22043 | Did not inspect exterior of comparable sales from street |
| | Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE



Main File No. 0008174  Page #10

## Location Map

| Client | Washington Capital Partners | | | |
|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | |
| City | Washington | County  District of Columbia | State  DC | Zip Code  20002 |
| Lender | Washington Capital Partners | | | |



**Subject Photo Page**

| Client | Washington Capital Partners | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code | 20002 |
| Lender | Washington Capital Partners | | | | | | |



### Subject Front

1736 Montello Ave NE
| Sales Price | 475,000 |
|---|---|
| Gross Living Area | 352 |
| Total Rooms | 2 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | Residential/Avg |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |

**Subject Rear**



**Subject Street**



Main File No. 0006174  Page #12

**Subject Photo Page**

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 | |
| Lender | Washington Capital Partners | | | | |



**Living Room**

| | |
|---|---|
| 1736 Montello Ave NE | |
| Sales Price | 475,000 |
| Gross Living Area | 352 |
| Total Rooms | 2 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | Residential/Avg |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |



**Kitchen**



**Bathroom**

Main File No. 0006174  Page #13

**Subject Photo Page**

| Client | Washington Capital Partners | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code 20002 |
| Lender | Washington Capital Partners | | | | | |

### Kitchen



| | |
|---|---|
| 1736 Montello Ave NE | |
| Sales Price | 475,000 |
| Gross Living Area | 352 |
| Total Rooms | 2 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | Residential/Avg |
| Site | 1,447 sf |
| Quality | Good |
| Age | 113 |

### Bathroom



### Bedroom



**Comparable Photo Page**

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code | 20002 |
| Lender | Washington Capital Partners | | | | |



### Comparable 1

410 15th St NE
| | |
|---|---|
| Prox. to Subject | 1.02 miles S |
| Sales Price | 339,095 |
| Gross Living Area | 348 |
| Total Rooms | 3 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 780 sf |
| Quality | Good |
| Age | 91 |



### Comparable 2

1605 E St NE
| | |
|---|---|
| Prox. to Subject | 0.98 miles S |
| Sales Price | 369,000 |
| Gross Living Area | 617 |
| Total Rooms | 3 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1408 sf |
| Quality | Good |
| Age | 82 |



### Comparable 3

1111 Orren St NE
| | |
|---|---|
| Prox. to Subject | 0.58 miles S |
| Sales Price | 355,000 |
| Gross Living Area | 558 |
| Total Rooms | 2 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1152 sf |
| Quality | Good |
| Age | 1 |

## Supplemental Addendum

File No. 0006174

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1736 Montello Ave NE | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code | 20002 |
| Lender | Washington Capital Partners | | | | |

The purpose of this appraisal is to estimate the market value of the subject property. In estimating the subject property's market value, an orderly, systematic procedure is followed, in which the appraiser attempts to utilize the three recognized methods of valuation, The Cost Approach, The Income Approach and The Sales Comparison Approach and subsequently lead to a logical final value conclusion.

The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

Exposure Time: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. The appraiser has determined that the property would have to be exposed for 3 to 30 days on the open market in order to have a market value of $320,000 on the effective date of this appraisal.

The appraiser of this report did perform prior services for the subject property in the 36 months prior to the effective date of the report.

Per completion, the economic life is expected to be 65 years.

The subject is currently a single family home and proposed use is a 6 unit condo building. The appraisal is made on the basis of a hypothetical condition that construction will be completed per plans and specs provided. If work is not permitted or completed as described, the value will likely be different. The condo project name is to be determined. The condo fee will be based on the comps and will be in range with sales in the market area - to be determined. The borrower expects to create a condo association. The floor plan dimensions were based on the attached plans. The interior will feature upgraded appliances, hardwood flooring and tile throughout, 1- and 3 panel doors, low-E windows, granite/quartz counters, 42" kitchen cabinets.



**GREATAMERICAN.**
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒   Great American Assurance Company

Note: The Insurance Company selected above shall herein be referred to as the Company.

Policy Number:   RAP3364992-18                    Renewal of:   RAP3364992-17

Program Administrator:   Herbert H. Landy Insurance Agency Inc.
                         75 Second Ave Suite 410  Needham, MA 02494-2876

Item 1. Named Insured:   Anne Rothemel

Item 2. Address:         5841 Riverside Drive
        City, State, Zip Code:   Woodbridge, VA 22193

Item 3. Policy Period: From   **04/30/2018**   To   **04/30/2019**
                              *(Month, Day, Year)*        *(Month, Day, Year)*
                              (Both dates at 12:01 a.m. Standard Time at the address of the Named Insured as stated in Item 2.)

Item 4. Limits of Liability:

        A. $ __500,000__   Damages Limit of Liability – Each Claim

        B. $ __500,000__   Claim Expenses Limit of Liability – Each Claim

        C. $ __1,000,000__   Damages Limit of Liability – Policy Aggregate

        D. $ __1,000,000__   Claim Expenses Limit of Liability – Policy Aggregate

Item 5. Deductible (Inclusive of Claim Expenses):

        A. $ __0.00__   Each Claim

        B. $ __0.00__   Aggregate

Item 6. Premium: $   573.00

Item 7. Retroactive Date (if applicable):   04/30/2011

Item 8. Forms, Notices and Endorsements attached:
        D42100 (03/15)  D42300 VA (03/15)  IL7324 (08/12)
        D42402 (05/13)  D42408 (05/13)  D42412 (03/17)  D42413 (06/17)

                                                        *Betsy a magnuson*
                                                        Authorized Representative

D42101 (03/15)                                                      Page 1 of 1

**License**



# INVOICE

**FROM:**

ADK Appraisals, Inc.
5841 Riverside Dr
Woodbridge, VA 22193

Telephone Number: 703 597 7700          Fax Number:

| INVOICE NUMBER |
|---|
| 0006268 |
| **DATE** |
| 12/13/2018 |

**TO:**

Washington Capital Partners
2815 Hartland Dr
Suite 200
Falls Church, VA 22043
Telephone Number:                    Fax Number:
Alternate Number:                    E-Mail:

| REFERENCE | |
|---|---|
| Internal Order #: | 0006268 |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 0006268 |
| Other File # on form: | |
| Federal Tax ID: | 20-8289557 |
| Employer ID: | |

## DESCRIPTION

| | | | |
|---|---|---|---|
| **Lender:** Washington Capital Partners | | **Client:** Washington Capital Partners | |
| **Purchaser/Borrower:** Coloma River Holdings, LLC | | | |
| **Property Address:** 1268 Holbrook Ter NE | | | |
| **City:** Washington | | | |
| **County:** District of Columbia | | **State:** DC | **Zip:** 20002 |
| **Legal Description:** Lot 245, Square 4055, Unit 1, Trinidad | | | |

## FEES                                                                   AMOUNT

|  | |
|---|---|
| | 209.50 |
| **SUBTOTAL** | 209.50 |

## PAYMENTS                                                          AMOUNT

| Check #: | Date: 12/18/2018 | Description: | 209.50 |
|---|---|---|---|
| Check #: | Date: | Description: | |
| Check #: | Date: | Description: | |
| | | **SUBTOTAL** | 209.50 |
| | | **TOTAL DUE** $ | 0 |

---

Please Return This Portion With Your Payment

**FROM:**

Washington Capital Partners
2815 Hartland Dr
Suite 200
Falls Church, VA 22043
Telephone Number:                    Fax Number:
Alternate Number:                    E-Mail:

**TO:**

ADK Appraisals, Inc.
5841 Riverside Dr
Woodbridge, VA 22193

| AMOUNT DUE: | $ | 0 |
|---|---|---|
| AMOUNT ENCLOSED: | $ | |

| INVOICE NUMBER |
|---|
| 0006268 |
| **DATE** |
| 12/13/2018 |

| REFERENCE | |
|---|---|
| Internal Order #: | 0006268 |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 0006268 |
| Other File # on form: | |
| Federal Tax ID: | 20-8289557 |
| Employer ID: | |

Form NIV1 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE



### APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1268 Holbrook Ter NE
Lot 245, Square 4055, Unit 1, Trinidad
Washington, DC 20002

### FOR:
Washington Capital Partners
2815 Hartland Dr
Falls Church, VA  22043

### AS OF:
12/13/2018

### BY:
Anne' Rothermel
Certified Residential Appraiser
ADK Appraisals, Inc.
5841 Riverside Drive
Woodbridge, VA 22193

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 1268 Holbrook Ter NE |
| | Legal Description | Lot 245, Square 4055, Unit 1, Trinidad |
| | City | Washington |
| | County | District of Columbia |
| | State | DC |
| | Zip Code | 20002 |
| | Census Tract | 0088.04 |
| | Map Reference | 47894 |
| **SALES PRICE** | Sale Price | $ 1,390,000 |
| | Date of Sale | 7/19/2018 |
| **CLIENT** | Client | Washington Capital Partners |
| | Client | Washington Capital Partners |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 1,383 |
| | Price per Square Foot | $ 1,005.06 |
| | Location | N;Res; |
| | Age | 0 |
| | Condition | New |
| | Total Rooms | 6 |
| | Bedrooms | 3 |
| | Baths | 2.1 |
| **APPRAISER** | Appraiser | Anne' Rothermel |
| | Date of Appraised Value | 12/13/2018 |
| **VALUE** | Final Estimate of Value | $ 600,000 |

www.AMCAppraisals.com    Main File No. 0006268  Page #3

## Individual Condominium Unit Appraisal Report

File # 0006268

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address  1268 Holbrook Ter NE | Unit # 1  City  Washington  State  DC  Zip Code  20002 |

**SUBJECT**

Property Address  1268 Holbrook Ter NE    Unit # 1    City  Washington    State  DC    Zip Code  20002
Borrower  Coloma River Holdings, LLC    Owner of Public Record  Md Homes 1264-8 Holbrook Llc    County  District of Columbia
Legal Description  Lot 245, Square 4055, Unit 1, Trinidad
Assessor's Parcel #  4055 0245    Tax Year  2017    R.E. Taxes $  373
Project Name  TBD    Phase #  1    Map Reference  47894    Census Tract  0088.04
Occupant  Owner  Tenant  Vacant    Special Assessments $  0    HOA $  0    per year    per month
Property Rights Appraised  Fee Simple    Leasehold    Other (describe)
Assignment Type  Purchase Transaction    Refinance Transaction    Other (describe)
Lender/Client  Washington Capital Partners    Address  2815 Hartland Dr, Suite 200, Falls Church, VA 22043
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?    Yes    No
Report data source(s) used, offering price(s), and date(s).    FSBO - The sales price includes 1264, 1266, 1268 Holbrook Ter NE.

**CONTRACT**

I  did  did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.    The contract appears typical.  The sale includes Lots 243, 244 and 245 (1264-1268 Holbrook Ter NE).  The sales price reflects as-is condition of the combined properties.
Contract Price $  1,390,000    Date of Contract  7/19/2018    Is the property seller the owner of public record?    Yes    No  Data Source(s)  Contract, Tax Rec.
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?    YES    NO
If Yes, report the total dollar amount and describe the items to be paid.    0

Note: Race and the racial composition of the neighborhood are not appraisal factors.

**NEIGHBORHOOD**

| Neighborhood Characteristics | | Condominium Unit Housing Trends | | | Condominium Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | Urban  Suburban  Rural | Property Values | Increasing  Stable  Declining | | PRICE | AGE | One-Unit | 65 % |
| Built-Up | Over 75%  25-75%  Under 25% | Demand/Supply | Shortage  In Balance  Over Supply | | $ (000) | (yrs) | 2-4 Unit | 3 % |
| Growth | Rapid  Stable  Slow | Marketing Time | Under 3 mths  3-6 mths  Over 6 mths | | 157  Low  1 | | Multi-Family | 12 % |
| | | | | | 1,150  High  118 | | Commercial | 18 % |
| | | | | | 439  Pred.  72 | | Other | 2 % |

Neighborhood Boundaries    The subject is located south of Mt. Olivet Rd, east of West Virginia Ave, north of Florida
Ave and west of Bladensburg Rd.
Neighborhood Description    Employment centers, schools, places of worship, and shopping facilities are within close proximity.  There is no apparent measurable
evidence of  factors which might adversely affect marketability.  Major Rt 50 is accessible within 2 mile. This provides good access to the Beltway and Washington
metropolitan areas.
Market Conditions (including support for the above conclusions)    Average marketing time based on data is 0-3 months when properly listed. The market has tightened
lending requirements for obtaining many forms of financing while interest was on the rise. Rates have been slightly stabilized and lowered by the Federal Reserve in
order to ease market tensions.

**PROJECT SITE**

Topography  Level    Size  Average    Density  Average    View  Residential/Avg
Specific Zoning Classification  RF-1    Zoning Description  Res Single Family Row/Res Flat Zones
Zoning Compliance  Legal    Legal Nonconforming – Do the zoning regulations permit rebuilding to current density?    Yes    No
No Zoning    Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?    Yes    No  If No, describe    Highest and best
use is construction of condos as permitted in the zoning district.

| Utilities | Public  Other (describe) | | Public  Other (describe) | Off-site Improvements – Type | Public  Private |
|---|---|---|---|---|---|
| Electricity | | Water | | Street  Asphalt | |
| Gas | | Sanitary Sewer | | Alley  None | |

FEMA Special Flood Hazard Area  Yes  No    FEMA Flood Zone  X    FEMA Map #  1100010036C    FEMA Map Date  09/27/2010
Are the utilities and off-site improvements typical for the market area?    Yes    No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?    Yes    No  If Yes, describe
There are no apparent adverse easements, encroachments, or other adverse conditions. No special assessments were noted on tax records

**PROJECT INFORMATION**

Data source(s) for project information    MLS, Tax Records, Inspection, Borrower, Plans
Project Description    Detached    Row or Townhouse    Garden    Mid-Rise    High-Rise    Other (describe)

| General Description | | General Description | | Subject Phase | | If Project Completed | | If Project Incomplete | |
|---|---|---|---|---|---|---|---|---|---|
| # of Stories  4 | | Exterior Walls  Brick | | # of Units  2 | | # of Phases | | # of Planned Phases  1 | |
| # of Elevators  0 | | Roof Surface  Built-up | | # of Units Completed  0 | | # of Units | | # of Planned Units  2 | |
| Existing  Proposed | | Total # Parking  2 | | # of Units For Sale  0 | | # of Units for Sale | | # of Units for Sale  0 | |
| Under Construction | | Ratio (spaces/units)  0.66/1 | | # of Units Sold  0 | | # of Units Sold | | # of Units Sold  0 | |
| Year Built  2019 | | Type  Off Street | | # of Units Rented  0 | | # of Units Rented | | # of Units Rented  0 | |
| Effective Age  0 | | Guest Parking  Street | | # of Owner Occupied Units  0 | | # of Owner Occupied Units | | # of Owner Occupied Units  0 | |

Project Primary Occupancy    Principal Residence    Second Home or Recreational    Tenant
Is the developer/builder in control of the Homeowners' Association (HOA)?    Yes    No
Management Group -    Homeowners' Association    Developer    Management Agent - Provide name of management company.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project?    Yes    No  If Yes, Describe
The current owner owns 100% of the property.

Was the project created by the conversion of existing building(s) into a condominium?    Yes    No  If Yes, describe the original use and date of conversion.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)?    Yes    No  If No, describe
The project is proposed.

Is there any commercial space in the project?    Yes    No  If Yes, describe and indicate the overall percentage of the commercial space.
Per completion, there will be no commercial space.

| | | |
|---|---|---|
| Freddie Mac Form 465 March 2005 | Page 1 of 6 | Fannie Mae Form 1073 March 2005 |

## Individual Condominium Unit Appraisal Report

File # 0006268

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.   Per completion, the subject is expected to be in new condition.

Describe the common elements and recreational facilities.    Common grounds

Are any common elements leased to or by the Homeowners' Association?    Yes    No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?    Yes    No  If Yes, $    per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?    Yes    No  If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I    did    did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.    I was not provided a copy of the budget nor do I have the ability to analyse the budget due to this being a specialized field.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?    Yes    No    If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears    High    Average    Low  If High or Low, describe    The condo fee is expected to be in range with the comps.

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?    Yes    No    If Yes, describe and explain the effect on value and marketability.

**UNIT DESCRIPTION**

Unit Charge $    per month X 12 = $    per year    Annual assessment charge per year per square feet of gross living area = $

Utilities included in the unit monthly assessment    None    Heat    Air Conditioning    Electricity    Gas    Water    Sewer    Cable    Other (describe)

The extraordinary assumption is made that the following will be covered: Snow and Trash removal, insurance and maintenance, as it is typical for the market.

| General Description | Interior | materials/condition | Amenities | | Appliances | Car Storage | | |
|---|---|---|---|---|---|---|---|---|
| Floor #  1st & 2nd Floor | Floors | Hardwood/Tile/New | Fireplace(s) # | 0 | Refrigerator | None | | |
| # of Levels   2 | Walls | Drywall/New | WoodStove(s) # | 0 | Range/Oven | Garage   Covered   Open | | |
| Heating Type FWA   Fuel Gas | Trim/Finish | Wood/Painted/New | Deck/Patio | None | Disp  Microwave | # of Cars | 1 | |
| Central AC   Individual AC | Bath Wainscot | Tile/New | Porch/Balcony | Balcony | Dishwasher | Assigned   Owned | | |
| Other (describe) | Doors | Solid Core/New | Other | Storage | Washer/Dryer | Parking Space # | 1 | |
| Finished area above grade contains: | | 6  Rooms | 3  Bedrooms | 2.1  Bath(s) | 1,383  Square Feet of Gross Living Area Above Grade | | | |

Are the heating and cooling for the individual unit separately metered?    Yes    No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)    The subject will feature hardwood floors, granite counters and stainless steel appliances.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject will be a newly constructed unit.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    Yes    No  If Yes, describe
Per completion of proposed conversion and renovations, no adverse conditions will be present.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    Yes    No  If No, describe

**PRIOR SALE HISTORY**

I    did    did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research    did    did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)    MLS, Tax Records
My research    did    did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)    MLS, Tax Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 12/09/2016 | No transfers | No transfers | 08/23/17 |
| Price of Prior Sale/Transfer | $240,000 | in the past 12 months | in the past 12 months | $600,000 |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | 12/12/18 | 12/12/18 | 12/12/18 | 12/12/18 |

Analysis of prior sale or transfer history of the subject property and comparable sales.    The subject sold as vacant land as noted above. Comp #3 transferred as noted above prior to completion of renovations and conversion.

## Individual Condominium Unit Appraisal Report

File # 0006268

There are **11** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **379,900** to $ **574,900**

There are **24** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **370,000** to $ **689,000**

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and | 1268 Holbrook Ter NE | 1412 Montello Ave NE | | 1258 Holbrook Ter NE | | 1631 Montello Ave NE | |
| Unit # | 1, Washington, DC 20002 | A, Washington, DC 20002 | | 6, Washington, DC 20002 | | PH1, Washington, DC 20002 | |
| Project Name and | TBD | 1412 Montello Ave NE Condos | | 1258 Holbrook Ter Condos | | Montello Hill Condos | |
| Phase | 1 | 1 | | 1 | | 1 | |
| Proximity to Subject | | 0.20 miles W | | 0.02 miles NW | | 0.12 miles NW | |
| Sale Price | $ 1,390,000 | $ 624,900 | | $ 540,000 | | $ 724,000 | |
| Sale Price/Gross Liv. Area | $ 1005.06 sq. ft. | $ 416.60 sq. ft. | | $ 429.94 sq. ft. | | $ 389.25 sq. ft. | |
| Data Source(s) | | brightMLS#1004122913;DOM 57 | | brightMLS#1004171799;DOM 47 | | brightMLS#1001728104;DOM 14 | |
| Verification Source(s) | | Doc#6136 | | County Records/Visual | | Doc#68533 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | VA;10,000 | | Conv;10000 | | Conv;0 | |
| Date of Sale/Time | | 01/17/18 | | 02/14/18 | | 07/13/18 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | TBD | 262 | | 253 | | 268 | |
| Common Elements and Rec. Facilities | Common Areas | Common Areas | | Common Areas | | Common Areas | |
| Floor Location | 1st & 2nd Floor | Basement & 1st | +15,000 | 3rd Floor | -5,000 | 3rd Floor | -5,000 |
| View | Residential/Avg | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | Garden | Garden | | Garden | | Garden | |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 0 | 1 | 0 | 79 | 0 | 77 | 0 |
| Condition | New | New | | Good-New | | Good-New | |
| Above Grade | Total  Bdrms.  Baths | Total  Bdrms.  Baths | | Total  Bdrms.  Baths | | Total  Bdrms.  Baths | |
| Room Count | 6      3      2.1 | 6      2      2.1 | +10,000 | 6      3      2.0 | +3,000 | 7      3      2.1 | -5,000 |
| Gross Living Area | 1,383 sq. ft. | 1,500 sq. ft. | -22,815 | 1,256 sq. ft. | +24,765 | 1,860 sq. ft. | -93,015 |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | 0 | 0 | | 0 | | 0 | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | Insulated Wds | Insulated Wdws | | Insulated Wdws | | Insulated Wdws | |
| Garage/Carport | Drvwy/Off Street | Drvwy/Off Street | | Drvwy/Off Street | | Drvwy/Off Street | |
| Porch/Patio/Deck | Balcony, Storage | 2 Decks, Patio | -12,000 | None | +8,000 | RooftopDeck,Blc | -21,000 |
| Fireplaces | None | None | | None | | None | |
| Net Adjustment (Total) | | + - $ | -9,815 | + - $ | 30,765 | + - $ | -124,015 |
| Adjusted Sale Price of Comparables | | Net Adj.  1.6  % | | Net Adj.  5.7  % | | Net Adj.  17.1  % | |
| | | Gross Adj.  9.6  % $ | 615,085 | Gross Adj.  7.5  % $ | 570,765 | Gross Adj.  17.1  % $ | 599,985 |

Summary of Sales Comparison Approach   After an extensive search through MLS and Public Records, the appraiser has selected the comparables that are most recent and most similar to the subject property. Adjustments for square footage and other amenities reflect current market responses and do not reflect replacement costs for individual items. Typically higher floor units sell for higher values. The typical buyer recognizes the utility of an additional bedroom and bathroom. Comp #3 has an additional den.

Indicated Value by Sales Comparison Approach $   600,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____  X Gross Rent Multiplier _____ = $ _____   Indicated Value by Income Approach _____

Summary of Income Approach (including support for market rent and GRM)

Indicated Value by: Sales Comparison Approach $   600,000    Income Approach (if developed) $ _____

Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. The Cost Approach was not developed. The Income approach is not developed due to a lack of data in the subject's neighborhood.

This appraisal is made   "as is",   subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,   subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or   subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  Subject to construction per plans.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ **600,000** , as of **12/13/2018** , which is the date of inspection and the effective date of this appraisal.

## Individual Condominium Unit Appraisal Report

File # 0006268

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

The intended user of this appraisal report is the lender/client.

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Individual Condominium Unit Appraisal Report    File # 0006268

The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Individual Condominium Unit Appraisal Report

File # 0006268

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| | |
|---|---|
| Signature | Signature |
| Name  Anne' Rothemel | Name |
| Company Name  ADK Appraisals, Inc. | Company Name |
| Company Address  5841 Riverside Drive, Woodbridge VA 22193 | Company Address |
| | |
| Telephone Number  (703) 597-7700 | Telephone Number |
| Email Address  mail@adkappraisals.com | Email Address |
| Date of Signature and Report    December 19, 2018 | Date of Signature |
| Effective Date of Appraisal    12/13/2018 | State Certification # |
| State Certification #  CR11308 | or State License # |
| or State License # | State |
| or Other                                          State # | Expiration Date of Certification or License |
| State  DC | |
| Expiration Date of Certification or License    02/28/2020 | SUBJECT PROPERTY |
| | Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | Did inspect exterior of subject property from street |
| 1268 Holbrook Ter NE, # 1 | Date of Inspection |
| Washington, DC 20002 | Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $        600,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name   Washington Capital Partners | Did not inspect exterior of comparable sales from street |
| Company Address    2815 Hartland Dr, Suite 200, Falls Church, VA 22043 | Did inspect exterior of comparable sales from street |
| | Date of Inspection |
| Email Address | |

Main File No. 00006268   Page #9

### Building Sketch

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1268 Holbrook Ter NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 | |
| Client | Washington Capital Partners | | | | |



TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 970.2 Sq ft | 31.9 × 6.4 | = 204.16 |
| | | 22 × 6.4 | = 140.8 |
| | | 64.9 × 4.1 | = 266.09 |
| | | 4.32 × 53.9 | = 232.97 |
| | | 0.5 × 4.48 × 53.9 | = 120.67 |
| | | 0.5 × 1 × 11 | = 5.5 |
| First Floor | 413.2 Sq ft | 3 × 5 | = 15 |
| | | 22 × 16.9 | = 371.8 |
| | | 0.5 × 22 × 2.4 | = 26.4 |
| **Total Living Area (Rounded):** | **1383 Sq ft** | | |

Main File No. 0006268  Page #10

## Location Map

| | | | | | |
|---|---|---|---|---|---|
| Client | Washington Capital Partners | | | | |
| Property Address | 1268 Holbrook Ter NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 | |
| Client | **Washington Capital Partners** | | | | |



Main File No. 0006268  Page #11

**Subject Photo Page**

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1268 Holbrook Ter NE | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 | |
| Client | Washington Capital Partners | | | | |



### Subject Front

| | |
|---|---|
| 1268 Holbrook Ter NE | |
| Sales Price | 1,390,000 |
| Gross Living Area | 1,383 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | Residential/Avg |
| Site | 1,447 sf |
| Quality | Good |
| Age | 0 |



**Subject Rear**



**Subject Street**

**Comparable Photo Page**

| Client | Washington Capital Partners | | | |
|---|---|---|---|---|
| Property Address | 1268 Holbrook Ter NE | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20002 |
| Client | Washington Capital Partners | | | |



### Comparable 1

1412 Montello Ave NE

| | |
|---|---|
| Prox. to Subject | 0.20 miles W |
| Sales Price | 624,900 |
| Gross Living Area | 1,500 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 780 sf |
| Quality | Good |
| Age | 1 |



### Comparable 2

1258 Holbrook Ter NE

| | |
|---|---|
| Prox. to Subject | 0.02 miles NW |
| Sales Price | 540,000 |
| Gross Living Area | 1,256 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1408 sf |
| Quality | Good |
| Age | 79 |



### Comparable 3

1631 Montello Ave NE

| | |
|---|---|
| Prox. to Subject | 0.12 miles NW |
| Sales Price | 724,000 |
| Gross Living Area | 1,860 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1152 sf |
| Quality | Good |
| Age | 77 |

## Supplemental Addendum

File No. 0006268

| Client | Washington Capital Partners | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1268 Holbrook Ter NE | | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code 20002 |
| Client | Washington Capital Partners | | | | | |

The purpose of this appraisal is to estimate the market value of the subject property.  In estimating the subject property's market value, an orderly, systematic procedure is followed, in which the appraiser attempts to utilize the three recognized methods of valuation, The Cost Approach, The Income Approach and The Sales Comparison Approach and subsequently lead to a logical final value conclusion.

The Intended User of this appraisal report is the Lender/Client.  The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal form, and Definition of Market Value.  No additional Intended Users are identified by the appraiser.

Exposure Time: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. The appraiser has determined that the property would have to be exposed for 14 to 90 days on the open market in order to have a market value as noted in the report on the effective date of this appraisal.

The appraiser of this report did perform prior services for the subject property in the 36 months prior to the effective date of the report.

Per completion, the economic life is expected to be 65 years.

The subject is a proposed 2 unit condo building. The appraisal is made on the basis of a hypothetical condition that construction will be completed per specs provided by the borrower. If work is not permitted or completed as described, the value will likely be different. The condo project name is to be determined. The condo fee will be based on the comps and will be in range with sales in the market area - to be determined. The borrower expects to create a condo association. The interior will feature stainless steel appliances, hardwood flooring and tile throughout, new windows, granite counters and the project will have off street parking.

**Plans - Page 30**







**Plans - Page 33**





**License**





**GREAT**AMERICAN.
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

### THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒   Great American Assurance Company

Note:   The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number:   RAP3364992-18                          Renewal of:   RAP3364992-17

Program Administrator:      Herbert H. Landy Insurance Agency Inc.
75 Second Ave Suite 410  Needham, MA 02494-2876

---

**Item 1. Named Insured:**   Anne Rothermel

**Item 2. Address:**           5841 Riverside Drive

City, State, Zip Code:      Woodbridge, VA 22193

**Item 3. Policy Period: From**   **04/30/2018**   To   **04/30/2019**
(Month, Day, Year)        (Month, Day, Year)
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 2.)

**Item 4.  Limits of Liability:**

A.  $   500,000   **Damages** Limit of Liability – Each **Claim**

B.  $   500,000   **Claim Expenses** Limit of Liability – Each **Claim**

C.  $   1,000,000   **Damages** Limit of Liability – Policy Aggregate

D.  $   1,000,000   **Claim Expenses** Limit of Liability – Policy Aggregate

**Item 5.  Deductible** (Inclusive of **Claim Expenses**):

A.  $   0.00   Each **Claim**

B.  $   0.00   Aggregate

**Item 6. Premium: $      573.00**

**Item 7. Retroactive Date** (if applicable):      04/30/2011

**Item 8. Forms, Notices and Endorsements attached:**
D42100 (03/15)  D42300 VA (03/15)  IL7324 (08/12)
D42402 (05/13)  D42408 (05/13)  D42412 (03/17)  D42413 (06/17)

*Betsy a megnesser*

Authorized Representative

D42101 (03/15)                                                                                   Page 1 of 1



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1471 Girard St NW
Lot 45, Square 2669, Unit 4, Columbia Heights
Washington, DC 20009

### FOR:
Washington Capital Partners
2815 Hartland Dr
Falls Church, VA  22043

### AS OF:
06/20/2018

### BY:
Anne' Rothermel
Certified Residential Appraiser
ADK Appraisals, Inc.
5841 Riverside Drive
Woodbridge, VA 22193

Main File No. 0005868   Page #3

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 1471 Girard St NW |
| | Legal Description | Lot 45, Square 2669, Unit 4, Columbia Heights |
| | City | Washington |
| | County | District of Columbia |
| | State | DC |
| | Zip Code | 20009 |
| | Census Tract | 0037.00 |
| | Map Reference | 47894 |
| **SALES PRICE** | Sale Price | $ |
| | Date of Sale | |
| **CLIENT** | Client | Washington Capital Partners |
| | Lender | Washington Capital Partners |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 1,200 |
| | Price per Square Foot | $ |
| | Location | N;Res;Metro |
| | Age | 104 |
| | Condition | New |
| | Total Rooms | 6 |
| | Bedrooms | 2 |
| | Baths | 3.0 |
| **APPRAISER** | Appraiser | Anne' Rothermel |
| | Date of Appraised Value | 06/20/2018 |
| **VALUE** | Final Estimate of Value | $ 949,000 |

## Individual Condominium Unit Appraisal Report

File # 0005868

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address  1471 Girard St NW | Unit # 4   City Washington   State DC   Zip Code 20009 |
| Borrower  1471 Girard St Holdings LLC | Owner of Public Record  1471 Girard St Holdings LLC   County District of Columbia |

Legal Description  Lot 45, Square 2669, Unit 4, Columbia Heights

Assessor's Parcel #  2669 0045  Tax Year 2017  R.E. Taxes $ 0

Project Name  St. James Place  Phase #  1  Map Reference  47894  Census Tract 0037.00

Occupant  Owner  Tenant  Vacant  Special Assessments $  0  HOA $ 238  per year  per month

Property Rights Appraised  Fee Simple  Leasehold  Other (describe)

Assignment Type  Purchase Transaction  Refinance Transaction  Other (describe)

Lender/Client  Washington Capital Partners  Address  2815 Hartland Dr, Suite 200, Falls Church, VA 22043

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  Yes  No

Report data source(s) used, offering price(s), and date(s).  The subject was listed 1/18/2018 for $949,000, reduced to $929,000 and contracted after 38 DOM; MLS #DC10137421.

### CONTRACT

I  did  did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  The contract was not made available for review.

Contract Price $  Date of Contract  Is the property seller the owner of public record?  Yes  No  Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  YES  NO

If Yes, report the total dollar amount and describe the items to be paid.  0

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Condominium Unit Housing Trends | | | Condominium Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | Urban | Suburban | Rural | Property Values | Increasing | Stable | Declining | PRICE | AGE | One-Unit | 38 % |
| Built-Up | Over 75% | 25-75% | Under 25% | Demand/Supply | Shortage | In Balance | Over Supply | $ (000) | (yrs) | 2-4 Unit | 5 % |
| Growth | Rapid | Stable | Slow | Marketing Time | Under 3 mths | 3-6 mths | Over 6 mths | 175 Low | 0 | Multi-Family | 30 % |

Neighborhood Boundaries  The subject is located south of Upshur Rd, east of Rock Creek Park, west of Sherman  2,300 High 138  Commercial 25 %
Ave and north of Q St NW.  584 Pred. 66  Other 2 %

Neighborhood Description  Employment centers, schools, houses of worship, and shopping facilities are within close proximity.  There is no apparent measurable evidence of locational factors which might adversely affect marketability.  Major arteries provide good access to and from Washington DC.  2% is vacant/Parkland.

Market Conditions (including support for the above conclusions)  Average marketing time according to statistics is 0-3 months when properly listed.  Currently the market has tightened lending requirements for obtaining many forms of financing and while interest were on the rise as of late, they were slightly stabilized and lowered by the Federal Reserve in order to ease market tensions.

### PROJECT SITE

Topography Mostly Level  Size  Average  Density Typical  View Residential/Avg

Specific Zoning Classification RA-2  Zoning Description  Residential Apartment Zones

Zoning Compliance  Legal  Legal Nonconforming – Do the zoning regulations permit rebuilding to current density?  Yes  No
No Zoning  Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  Yes  No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | | | Water | | | Street  Asphalt/Typical | | |
| Gas | | | Sanitary Sewer | X | | Alley  Concrete | | |

FEMA Special Flood Hazard Area  Yes  No  FEMA Flood Zone X  FEMA Map #  1100010016C  FEMA Map Date 09/27/2010

Are the utilities and off-site improvements typical for the market area?  Yes  No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  Yes  No  If Yes, describe

There are no apparent adverse easements, encroachments, or other adverse conditions. No special assessments were noted on tax records.

### PROJECT INFORMATION

Data source(s) for project information  MLS, Tax Records, Inspection, Borrower, Plans

Project Description  Detached  Row or Townhouse  Garden  Mid-Rise  High-Rise  Other (describe)

| General Description | | General Description | | If Project Completed | | If Project Incomplete | |
|---|---|---|---|---|---|---|---|
| # of Stories  5 | | Exterior Walls  Brick | # of Units  4 | # of Phases  1 | | # of Planned Phases | |
| # of Elevators  0 | | Roof Surface  Built-up | # of Units Completed  4 | # of Units  4 | | # of Planned Units | |
| Existing  Proposed | | Total # Parking  2 | # of Units For Sale  4 | # of Units for Sale  0 | | # of Units for Sale | |
| Under Construction | | Ratio (spaces/units) 0.5/1 | # of Units Sold  0 | # of Units Sold  0 | | # of Units Sold | |
| Year Built  1914 | | Type  Open Lot | # of Units Rented  0 | # of Units Rented  0 | | # of Units Rented | |
| Effective Age  0 | | Guest Parking  Street | # of Owner Occupied Units  0 | # of Owner Occupied Units  0 | | # of Owner Occupied Units | |

Project Primary Occupancy  Principal Residence  Second Home or Recreational  Tenant

Is the developer/builder in control of the Homeowners' Association (HOA)?  Yes  No

Management Group -  Homeowners' Association  Developer  Management Agent - Provide name of management company.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project?  Yes  No  If Yes, Describe

The current owner owns 100% of the building.

Was the project created by the conversion of existing building(s) into a condominium?  Yes  No  If Yes, describe the original use and date of conversion.

The condo project is a conversion from a single family home.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)?  Yes  No  If No, describe

Is there any commercial space in the project?  Yes  No  If Yes, describe and indicate the overall percentage of the commercial space.

Freddie Mac Form 465 March 2005  Page 1 of 6  Fannie Mae Form 1073 March 2005

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Individual Condominium Unit Appraisal Report

File # 0005868

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.    The quality of construction is very good.

Describe the common elements and recreational facilities.    Common Areas.

Are any common elements leased to or by the Homeowners' Association?    Yes    No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?    Yes    No    If Yes, $    per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?    Yes    No  If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I    did    did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.    I was not provided a copy of the budget nor do I have the ability to analyse the budget due to this being a specialized field.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?    Yes    No    If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears    High    Average    Low  If High or Low, describe

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?    Yes    No    If Yes, describe and explain the effect on value and marketability.

Unit Charge $ 238    per month X 12 = $ 2,856.00    per year    Annual assessment charge per year per square feet of gross living area = $    2.38
Utilities included in the unit monthly assessment    None    Heat    Air Conditioning    Electricity    Gas    Water    Sewer    Cable    Other (describe)
Snow and trash removal, Master Insurance Policy, Reserve Funds, Common Area Maintenance.

**UNIT DESCRIPTION**

| General Description | Interior | materials/condition | Amenities | | Appliances | Car Storage | | |
|---|---|---|---|---|---|---|---|---|
| Floor #    Penthouse | Floors | Hwd/Tile/New | Fireplace(s) # | 0 | Refrigerator | None | | |
| # of Levels    2 | Walls | Drywall/New | WoodStove(s) # | 0 | Range/Oven | Garage    Covered    Open | | |
| Heating Type FWA    Fuel Elec | Trim/Finish | Wood/Painted/New | Deck/Patio    Rf/Deck | | Disp    Microwave | # of Cars | 1 | |
| Central AC    Individual AC | Bath Wainscot | Tile/New | Porch/Balcony    None | | Dishwasher | Assigned    Owned | | |
| Other (describe) | Doors | Solid Core/New | Other    None | | Washer/Dryer | Parking Space #    2 | | |
| Finished area **above grade** contains: | | 6  Rooms    2  Bedrooms    3.0  Bath(s) | | | 1,200    Square Feet of Gross Living Area Above Grade | | | |

Are the heating and cooling for the individual units separately metered?    Yes    No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)    The subject features recessed lights, stainless steel appliances, backsplash and 42" cabinets and oak wood flooring, 9' ceilings, custom cabinets.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject is in new condition.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    Yes    No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    Yes    No  If No, describe

**PRIOR SALE HISTORY**

I    did    did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research    did    did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)    MLS, Tax Records
My research    did    did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)    MLS, Tax Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No transfers | No transfers | No transfers | No transfers |
| Price of Prior Sale/Transfer | in the past 36 months | in the past 12 months | in the past 12 months | in the past 12 months |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | 06/20/2018 | 06/21/2018 | 06/21/2018 | 06/21/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales.    The subject has not transferred in the past 36 months per tax records. The comparables have not transferred in the past 12 months per tax records.

## Individual Condominium Unit Appraisal Report

File # 0005868

| | | | |
|---|---|---|---|
| There are | 64 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 549,500 | to $ 1,099,000 |
| There are | 410 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 507,700 | to $ 1,125,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and | 1471 Girard St NW | 1455 W St NW | | 3435 14th St NW | | 2131 10th St NW | |
| Unit # | 4, Washington, DC 20009 | 5, Washington, DC 20009 | | 6, Washington, DC 20010 | | PH-4, Washington, DC 20001 | |
| Project Name and | St. James Place | Meridian Park West | | The Flats at 3435 | | The Residences | |
| Phase | 1 | 1 | | 1 | | 1 | |
| Proximity to Subject | | 0.43 miles S | | 0.52 miles NE | | 0.68 miles SE | |
| Sale Price | $ | $ 900,000 | | $ 689,900 | | $ 930,000 | |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 818.18 SQ. ft. | | $ 809.00 SQ. ft. | | $ 681.32 SQ. ft. | |
| Data Source(s) | | MRIS#DC10106443;DOM 20 | | MRIS#DC10152774;DOM 18 | | MRIS#DC10220954;DOM 31 | |
| Verification Source(s) | | County Records/Visual | | County Records/Visual | | County Records/Visual | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Cash;0 | | Conv;26697 | | Conv;20500 | |
| Date of Sale/Time | | s01/18;c12/17 | | s04/18;c02/18 | | s06/18;c05/18 | |
| Location | N;Res;Metro | N;Res;Metro | | N;Res; | +25,000 | N;Res;Metro | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | 238 | 229 | 0 | 259 | 0 | 434 | 0 |
| Common Elements and Rec. Facilities | Common Areas | Common Areas | | Common Areas | | Common Areas | |
| Floor Location | Penthouse | Penthouse | | Penthouse | | Penthouse | |
| View | Residential/Avg | Residential/Avg | | Residential/Avg | | Residential/Avg | |
| Design (Style) | Mid-Rise | Garden | 0 | Garden | 0 | Garden | 0 |
| Quality of Construction | Brick/Avg | Brick/Avg | | Brick/Avg | | Brick/Avg | |
| Actual Age | 104 | 148 | 0 | 1 | 0 | 14 | 0 |
| Condition | New | New | | New | | Good | +15,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6   2   3.0 | 6   2   2.0 | +10,000 | 6   2   2.0 | +10,000 | 6   2   2.0 | +10,000 |
| Gross Living Area | 1,200 sq. ft. | 1,100 sq. ft. | +11,000 | 1,100 sq. ft. | +11,000 | 1,365 sq. ft. | -18,150 |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | 0 | 0 | | 0 | | 0 | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | Insulated Wds | Insulated Wds | | Insulated Wds | | Insulated Wds | |
| Garage/Carport | 1dw | None | +30,000 | 1dw | | 1g1op | -5,000 |
| Porch/Patio/Deck | Rooftop Deck | None | +20,000 | Rooftop Deck | | Balcony,Elevator | +4,000 |
| Fireplace | 0 | 0 | | None | | 1 Fireplace | -3,500 |
| Net Adjustment (Total) | | + - $ 71,000 | | + - $ 46,000 | | + - $ 2,350 | |
| Adjusted Sale Price of Comparables | | Net Adj. 7.9 % Gross Adj. 7.9 % $ 971,000 | | Net Adj. 5.2 % Gross Adj. 5.2 % $ 935,900 | | Net Adj. 0.3 % Gross Adj. 6.0 % $ 932,350 | |

Summary of Sales Comparison Approach    After an extensive, thorough search of the MLS and tax records, the appraiser has selected comparables which were found to be the most recent and similar to the subject. Adjustments for square footage and other differences in amenities reflect current market responses and do not represent replacement cost of individual items. Typically higher floor units sell for higher values. The typical buyer recognizes the utility of an additional bathroom and bedroom and Comps #1 - #3 were adjusted for differences in bed/bath count. Comp #3 not in new condition. The subject, Comps #1 and #3 are within walking distance of a metro station and Comp #2 received an adjustment.

Indicated Value by Sales Comparison Approach $    949,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $  4,675    X Gross Rent Multiplier   203.29   = $   950,381    Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)    The GRM was derived based on 10 recent sales that rented in the past 12 months. The subject has a rental lease for $3,500/month for 3 years. The unit would be rented fully furnished. Personal property can't be included in market value for real estate and the furniture rental contributes about 15% of the total rent (based on recent rental comps). The actual rent/market value is estimated at $4,675/month.

Indicated Value by: Sales Comparison Approach $   949,000    Income Approach (if developed) $   950,381
Market actions of buyers and sellers are best analyzed by the Sales Comparison Approach. The cost approach is not applicable.

This appraisal is made    "as is",    subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,    subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or    subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$    949,000    , as of    06/20/2018    , which is the date of inspection and the effective date of this appraisal.

## Individual Condominium Unit Appraisal Report     File # 0005868

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

The intended user of this appraisal report is the lender/client.

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Individual Condominium Unit Appraisal Report

File # 0005868

The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Individual Condominium Unit Appraisal Report

File # 0005868

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report  was  prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature  _Anne Rothenel_ | Signature |
| Name  Anne' Rothenel | Name |
| Company Name  ADK Appraisals, Inc. | Company Name |
| Company Address  5841 Riverside Drive, Woodbridge VA 22193 | Company Address |
| | |
| Telephone Number  (703) 597-7700 | Telephone Number |
| Email Address  mail@adkappraisals.com | Email Address |
| Date of Signature and Report    June 22, 2018 | Date of Signature |
| Effective Date of Appraisal     06/20/2018 | State Certification # |
| State Certification #    CR11308 | or State License # |
| or State License # | State |
| or Other                              State # | Expiration Date of Certification or License |
| State  DC | |
| Expiration Date of Certification or License     02/28/2020 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 1471 Girard St NW, # 4 | Date of Inspection |
| Washington, DC 20009 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $       949,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name    Washington Capital Partners | ☐ Did not inspect exterior of comparable sales from street |
| Company Address   2815 Hartland Dr, Suite 200, Falls Church, VA 22043 | ☐ Did inspect exterior of comparable sales from street |
| | Date of Inspection |
| Email Address | |

Form 1073 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. 0005868  Page #10

## Supplemental Addendum

File No. 0005868

| | |
|---|---|
| Client | Washington Capital Partners |
| Property Address | 1471 Girard St NW |
| City | Washington |
| Lender | Washington Capital Partners |

County District of Columbia     State DC     Zip Code 20009

The purpose of this appraisal is to estimate the market value of the subject property. In estimating the subject property's market value, an orderly, systematic procedure is followed, in which the appraiser attempts to utilize the three recognized methods of valuation, The Cost Approach, The Income Approach and The Sales Comparison Approach and subsequently lead to a logical final value conclusion.

The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

Exposure Time: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. The appraiser has determined that the property would have to be exposed for 21 to 90 days on the open market in order to have a market value of $949,000 on the effective date of this appraisal.

The appraiser of this report did perform prior services for the subject property in the 36 months prior to the effective date of the report.

**The size was based on the appraiser's measurements.**

**The project has 2 parking space, which will be sold separately, but 1 unit was included in the value for the subject.**

**Subject Photo Page**

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1471 Girard St NW | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20009 |
| Lender | Washington Capital Partners | | | | |



**Subject Front**

1471 Girard St NW
Sales Price
Gross Building Area
Age                    104

**Subject Rear**



**Subject Street**



Main File No. 0005868  Page #12

## Subject Photo Page

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1471 Girard St NW | | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20009 |
| Lender | Washington Capital Partners | | | | |



**Living Room**

1471 Girard St NW
Sales Price
Gross Building Area
Age                104



**Kitchen**



**Den**

Main File No. 0005868  Page #13

## Subject Photo Page

| Client | Washington Capital Partners | | | |
|---|---|---|---|---|
| Property Address | 1471 Girard St NW | | | |
| City | Washington | County District of Columbia | State DC | Zip Code 20009 |
| Lender | Washington Capital Partners | | | |



**Bathroom**

1471 Girard St NW
Sales Price
Gross Building Area
Age                 104



**Bedroom**



**Bathroom**

## Comparable Photo Page

| Client | Washington Capital Partners | | | |
|---|---|---|---|---|
| Property Address | 1471 Girard St NW | | | |
| City | Washington | County  District of Columbia | State  DC | Zip Code  20009 |
| Lender | Washington Capital Partners | | | |



### Comparable 1

1455 W St NW

| | |
|---|---|
| Prox. to Subject | 0.43 miles S |
| Sales Price | 900,000 |
| Gross Living Area | 1,100 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | N;Res;Metro |
| View | Residential/Avg |
| Site | 0 sf |
| Quality | Brick/Avg |
| Age | 148 |



### Comparable 2

3435 14th St NW

| | |
|---|---|
| Prox. to Subject | 0.52 miles NE |
| Sales Price | 889,900 |
| Gross Living Area | 1,100 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | Residential/Avg |
| Site | 0 sf |
| Quality | Brick/Avg |
| Age | 1 |



### Comparable 3

2131 10th St NW

| | |
|---|---|
| Prox. to Subject | 0.68 miles SE |
| Sales Price | 930,000 |
| Gross Living Area | 1,365 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | N;Res;Metro |
| View | Residential/Avg |
| Site | 0 sf |
| Quality | Brick/Avg |
| Age | 14 |

Main File No. 0005868  Page #15

## Building Sketch

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1471 Girard St NW | | | | |
| City | Washington | County | District of Columbia | State DC | Zip Code 20009 |
| Lender | Washington Capital Partners | | | | |



17.44'

Living
Room

17.44'

Kitchen

Bath

Dining
Room

19.2'

**Second Floor**
[334.85 Sq ft]

19.2'

**First Floor**
[865.02 Sq ft]

49.6'

Bedroom

49.6'

Bath

Bath

Bedroom

21.5'

**Composite Deck**
[392.38 Sq ft]

21.5'

17.44'

18.25'

TOTAL Sketch by a la mode, inc.

### Area Calculations Summary

| Living Area | | Calculation Details |
|---|---|---|
| First Floor | 865.02 Sq ft | 49.6 × 17.44 = 865.02 |
| Second Floor | 334.85 Sq ft | 19.2 × 17.44 = 334.85 |
| **Total Living Area (Rounded):** | **1200 Sq ft** | |
| Non-living Area | | |
| Composite Deck | 392.38 Sq ft | 18.25 × 21.5 = 392.38 |

Main File No. 0005866  Page #16

## Location Map

| Client | Washington Capital Partners | | | | |
|---|---|---|---|---|---|
| Property Address | 1471 Girard St NW | | | | |
| City | Washington | County | District of Columbia | State | DC | Zip Code | 20009 |
| Lender | Washington Capital Partners | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE





**GREATAMERICAN.**
**INSURANCE GROUP**

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

### THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below:  (A capital stock corporation)

☒  Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the **Company.**

Policy Number:   RAP3364992-18                Renewal of:   RAP3364992-17

Program Administrator:        **Herbert H. Landy Insurance Agency Inc.**
                              **75 Second Ave Suite 410  Needham, MA 02494-2876**

Item 1. Named Insured:    Anne Rothémel

Item 2. Address:          5841 Riverside Drive

City, State, Zip Code:    Woodbridge, VA 22193

Item 3. Policy Period: From    **04/30/2018**    To    **04/30/2019**
                        *(Month, Day, Year)    (Month, Day, Year)*
                        (Both dates at 12:01 a.m. Standard Time at the address of the Named Insured as stated in Item 2.)

Item 4.  **Limits of Liability:**

A. $    **500,000**    **Damages Limit of Liability – Each Claim**

B. $    **500,000**    **Claim Expenses Limit of Liability – Each Claim**

C. $    **1,000,000**    **Damages Limit of Liability – Policy Aggregate**

D. $    **1,000,000**    **Claim Expenses Limit of Liability – Policy Aggregate**

Item 5.  **Deductible (Inclusive of Claim Expenses):**

A. $    **0.00**    Each Claim

B. $    **0.00**    Aggregate

Item 6. Premium: $    **573.00**

Item 7. Retroactive Date (if applicable):    **04/30/2011**

Item 8. Forms, Notices and Endorsements attached:
        D42100 (03/15)  D42300 VA (03/15)  IL7324 (08/12)
        D42402 (05/13)  D42408 (05/13)  D42412 (03/17)  D42413 (06/17)

        *Being a magnum*

        Authorized Representative

D42101 (03/15)                                                              Page 1 of 1



Main File No. 0005868  Page #20



CELLAR FLOOR

**1,112 SF**

SD1001
CELLAR

1471 GIRARD ST NW
CONCEPT PLAN DESIGN

12/2/2015

em tive

Case 23-00217-ELG    Doc 166-8    Filed 06/20/25    Entered 06/23/25 10:48:11    Desc
Exhibit    Page 134 of 171
Main File No. 0005868  Page #21

**Plans - Page 3**





Case 23-00217-ELG    Doc 166-8    Filed 06/20/25    Entered 06/23/25 10:48:11    Desc
Exhibit    Page 136 of 171    Main File No. 0005868  Page #23

**Plans - Page 5**









IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
COLUMBIA

IN RE:
Charles Paxton Paret
Debtor.

CASE No. 23-217-ELG
(Chapter 7)

OBJECTION TO TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT

I, Charles Paxton Paret, the Debtor in the above-captioned case, acting pro se, hereby submit
this Objection to the Trustee's Motion for Approval of Settlement Agreement (Doc. 158,
filed March 28, 2025) pursuant to Federal Rule of Bankruptcy Procedure 9019. The proposed
Settlement Agreement, which resolves the adversary proceeding Webster v. Huertas, et al.,
Case No. 23-10025-ELG, is not in the best interests of the bankruptcy estate or its creditors
and falls below the lowest point in the range of reasonableness. For the reasons set forth
below, I respectfully request that the Court deny the Motion.

## I. Preliminary Statement

The Trustee seeks approval of a Settlement Agreement that resolves the adversary proceed-
ing Webster v. Huertas, et al., Case No. 23-10025-ELG, for a payment of $65,000, a limited
partnership interest in certain loans, and an additional $10,000, with potential for further
recovery contingent on loan performance. The Trustee asserts that this settlement is fair
and reasonable, citing litigation risks and costs. However, the Settlement Agreement grossly
undervalues the estate's claims, which are grounded in a partnership between myself and
Daniel Huertas, as evidenced by extensive documentation, including a September 20, 2019,
email and other communications, and supported by District of Columbia partnership law.
Moreover, the Trustee's failure to conduct adequate due diligence, including ignoring ap-
praisals and investor outreach, further undermines the settlement's validity. Approving the
settlement would deprive the estate of its rightful share of partnership assets, now valued at
over $67 million, and prejudice creditors.

If this Objection is filed after the deadline specified in the Court's notice or Local Rule
9013-1, I respectfully request that the Court accept it due to my pro se status and diligent
efforts to prepare a comprehensive response based on District of Columbia partnership law,
appraisals, and the case record. Good cause exists to consider the Objection to protect the
estate's interests, as I was unable to file earlier due to the complexity of reviewing legal
documents, appraisals, and coordinating this response without counsel.

1

*cP*

## II. Legal Standard for Approving Settlements

Under Federal Rule of Bankruptcy Procedure 9019(a), the Court may approve a settlement upon the Trustee's motion after notice and a hearing. The Court must determine whether the settlement is fair, equitable, and in the best interests of the estate, considering factors such as the probability of success in litigation, the complexity and expense of litigation, and whether the settlement falls within the range of reasonableness. In re Frye, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997); In re Austin, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995). A settlement should not be approved if it falls "below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983). The Court is not to substitute its judgment for the Trustee's but must canvass the issues to ensure the settlement is reasonable. Id.

## III. The Settlement Agreement Is Not in the Best Interests of the Estate

The Settlement Agreement fails to meet the requisite standard for approval because it significantly undervalues the estate's claims, ignores compelling evidence of a partnership under District of Columbia law, and dismisses the potential for a substantial recovery through litigation in Case No. 23-10025-ELG. The Trustee's assertion that the settlement is reasonable is unsupported by the facts and law, as detailed below.

### A. The Estate's Partnership Claims Are Strong Under D.C. Law

The District of Columbia's Uniform Partnership Act of 2010 (D.C. RUPA), codified at D.C. Code §§ 29-601.01 to -611.01, governs partnership formation and obligations. A partnership exists when "two or more persons ... intend to associate together to carry on as co-owners for profit." Beckman v. Farmer, 579 A.2d 618, 627 (D.C. 1990); D.C. Code § 29-601.02(9). The customary attributes of a partnership include profit and loss sharing, joint control of decision-making, and capital contributions, but these are merely guideposts. Beckman, 579 A.2d at 627. The existence of a partnership is a question of fact, determined by the parties' intent as evidenced by their agreement, conduct, and surrounding circumstances. Id. at 628.

Substantial evidence supports the existence of a partnership between myself and Daniel Huertas. A September 20, 2019, email authored by Huertas confirms joint control over partnership activities, including the division of debt and management duties, a hallmark of partnership under D.C. law. See Beckman, 579 A.2d at 627; Queen v. Schultz, 747 F.3d 879, 888 (D.C. Cir. 2014). Additional writings and communications, including those related to a Commercial Deed of Trust executed on November 5, 2019, for Washington, D.C. properties, demonstrate our intent to associate as co-owners for profit and Huertas's financial authority within the partnership. Copies of these documents are available for submission to the Court upon request or may be obtained through discovery in Case No. 23-10025-ELG. The D.C. Circuit's ruling in Queen is instructive: the court reversed a summary judgment dismissal of a partnership claim based on less robust evidence than exists here, finding that email communications raised a genuine issue of material fact as to partnership formation. Id. at 881-82. Similarly, the evidence in this case strongly supports the estate's partnership claims, making litigation a viable and potentially lucrative path.

2

Moreover, D.C. law presumes a partnership where a party shares in the profits of a business, unless those profits are payment for services as an independent contractor or employee. D.C. Code § 29-602.02(c)(3); Beckman, 579 A.2d at 627. No evidence suggests my involvement with Huertas was as an employee or contractor; rather, our dealings reflect co-ownership and profit-sharing. Partners owe fiduciary duties of care and loyalty, including the obligation to account for partnership property and profits. D.C. Code § 29-604.07; Marmac Inv. Co. v. Wolpe, 759 A.2d 620, 626 (D.C. 2000). Huertas's failure to account for partnership assets held by WCP Fund I LLC and DP Capital LLC further strengthens the estate's claims in the adversary proceeding.

## B. The Settlement Undervalues the Estate's Potential Recovery

The Settlement Agreement provides the estate with $65,000 in payments, a $10,000 interest in specific loans, and a 50% share of "net proceeds" from those loans after certain deductions, with no guaranteed recovery beyond the initial $75,000. This amount is woefully inadequate given the scope of the partnership's assets. The Trustee's complaint in Case No. 23-10025-ELG alleges that the partnership includes assets held by WCP and DPCL, which include a portfolio of 21 properties with a current appraised value of $67,075,000, reflecting a $31,279,495.37 appreciation from their purchase price of $35,795,504.63. The Settlement Agreement's "limited recognition of a partnership" for only four loans tied to two properties (5501-5505 1st Street, NW, and 423 Kennedy Street, NW) is oxymoronic and cherry-picks assets without justification, ignoring the broader partnership portfolio and opportunities. This limited scope fails to address Huertas's fiduciary duty to account for all partnership assets under D.C. Code § 29-604.07.

The Trustee acknowledges that recovery in litigation may be limited by the "underperformance" of partnership assets (Motion, ¶ 8), but this assumption is speculative and contradicted by appraisals showing significant value realization. If the partnership is proven, the estate could recover a substantial portion of profits, interest, and fees from all partnership activities, potentially millions, not merely a fraction of proceeds from four loans. The Queen case illustrates the potential for substantial recovery: the plaintiff sought a share of income from a television show based on a partnership agreement, and the court remanded for a jury to assess the claim. Id. at 881-82. Here, the estate's claims are similarly robust, and the Trustee's decision to settle for a nominal amount dismisses the likelihood of a favorable outcome in Case No. 23-10025-ELG.

## C. Litigation Risks Do Not Justify the Settlement

The Trustee argues that litigation in Case No. 23-10025-ELG is risky due to potential defenses and reliance on my cooperation and credibility (Motion, ¶ 15). However, these concerns are overstated. The documentary evidence, including Huertas's emails and the Commercial Deed of Trust, provides a strong foundation for the partnership claim, reducing reliance on my testimony. The D.C. Circuit's holding in Queen demonstrates that such evidence can withstand summary judgment and warrant a trial. Id. at 888. Additionally, the complexity and cost of litigation do not justify abandoning a meritorious claim. The estate's potential recovery, given the $67,075,000 portfolio value, far outweighs the costs,

3                                                              ᶜρ

especially given the statutory presumption of partnership and the Defendants' fiduciary obligations.

The Trustee's assertion that the Defendants "might otherwise prevail" (Motion, ¶ 15) is speculative and ignores the prematurity of summary judgment, as noted in Beckman: determining partnership status based on conduct and circumstances is fact-intensive and rarely resolved as a matter of law. Beckman, 579 A.2d at 630. The Settlement Agreement's release of all claims against the Defendants (Settlement Agreement, § 5) further harms the estate by foreclosing recovery of additional partnership assets, contrary to the Trustee's duty to maximize estate value.

## IV. The Settlement Falls Below the Range of Reasonableness

The Settlement Agreement falls below the lowest point in the range of reasonableness because it surrenders valuable claims in Case No. 23-10025-ELG for a fraction of their potential value. The estate's partnership interest, supported by D.C. law and substantial evidence, entitles it to a share of all partnership profits and assets, including a portfolio now valued at $67,075,000, not merely a limited interest in four loans. The Trustee's decision to settle reflects an overly cautious approach that undervalues the estate's position and disregards the strength of the partnership claim. Approving the settlement would prejudice creditors and reward the Defendants for breaching their fiduciary duties.

## V. The Trustee's Lack of Due Diligence Undermines the Settlement's Validity

The Trustee's failure to conduct thorough due diligence further renders the Settlement Agreement unreasonable and contrary to the estate's interests. The Trustee claims to have reviewed "various documents" and negotiated with the Defendants (Motion, ¶ 8), yet there is no evidence that the Trustee examined critical appraisals conducted by Huertas and Washington Capital Partners, which demonstrate the realized value of the partnership's 21-property portfolio, now appraised at $67,075,000. These appraisals, attached hereto as Exhibits A through U, reflect a $31,279,495.37 appreciation from the original purchase price of $35,795,504.63, underscoring the partnership's significant asset base. The Trustee's failure to consider these appraisals, which were prepared by the Defendants themselves, calls into question the adequacy of the investigation and the assertion that partnership assets are "underperforming."

Moreover, the Trustee has failed to engage with investors and prior attorneys who reached out with offers of funds to support the litigation or purchase estate assets. These parties, whose identities and correspondence are summarized in Exhibit V (Declaration of Charles Paxton Paret), expressed willingness to provide financial backing or acquire partnership interests, potentially increasing the estate's recovery beyond the settlement's $75,000. The Trustee's lack of response to these overtures suggests a disregard for maximizing estate value, a core fiduciary duty under 11 U.S.C. § 704(a)(1). By ignoring these opportunities and failing to conduct a comprehensive analysis of the partnership's assets, including a full accounting as required by D.C. Code § 29-604.07, the Trustee has not fulfilled the obligation to act in the best interests of creditors.

4

The Trustee's limited recognition of a partnership for only four loans (Settlement Agreement, § 3) is not only legally deficient but also a direct result of this inadequate investigation. A proper review of the appraisals and investor correspondence would have revealed the partnership's true scope and value, compelling a more robust litigation strategy rather than a premature settlement. The Court should not approve a settlement based on such deficient due diligence, as it fails to meet the reasonableness standard under In re Frye, 216 B.R. at 174.

## VI. Request for Relief

For the foregoing reasons, I respectfully request that the Court:

1. Deny the Trustee's Motion for Approval of Settlement Agreement (Doc. 158); 2. Direct the Trustee to pursue the adversary proceeding, Webster v. Huertas, et al., Case No. 23-10025-ELG, to protect the estate's partnership interests; 3. Order the Trustee to conduct a full accounting of the partnership's assets, including a review of all appraisals and investor correspondence; and 4. Grant such other and further relief as the Court deems just and proper.

Dated: June 18, 2025

Respectfully submitted,
/s/ Charles Paxton Paret
Charles Paxton Paret, Pro Se
343 First St
Berryville, VA 22611
202-834-7673
charles.paret@hotmail.com



### CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, I served a copy of the foregoing Objection and attached Exhibits A through V via first-class mail, postage prepaid, upon all parties on the case mailing matrix, including:

Justin P. Fasano
Janet M. Nesse
McNamee Hosea
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770

Due to the volume of Exhibits A–U, parties may request copies from the undersigned.

/s/ Charles Paxton Paret
Charles Paxton Paret
343 First St
Berryville, VA 22611

202-834-7673
charles_paret@hotmail.com

6



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 23-217-ELG |
| | ) | |
| Charles Paxton Paret | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MOTION FOR APPROVAL OF
### SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019

COMES NOW Wendell W. Webster, Chapter 7 Trustee (the "Trustee") of the bankruptcy

estate of Charles Paxton Paret ("Debtor"), by and through counsel, McNamee Hosea, P.A., files

this *Motion for Approval of Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019* (the

"Motion"), seeking approval of a settlement agreement with the Daniel Huertas ("Mr. Huertas"),

WCP Fund I LLC ("WCP"); and DP Capital LLC d/b/a Washington Capital Partners ("DPCL")

(Mr. Huertas, WCP and DPCL being the "Obligors," and the Obligors and the Trustee being the

"Parties"), and respectfully represents as follows:

#### Jurisdiction

1.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is

a core proceeding pursuant to 28 U.S.C. § 157.

2.     The statutory predicate for the relief requested herein is Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Justin P. Fasano, Esq. (DC Bar: MD 21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jfasano@mhlawyers.com
Counsel to the Trustee

## Background

3.      On August 4, 2023 (the "Petition Date"), an involuntary petition for relief was filed against the Debtor under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Columbia.

4.      The Debtor's case was subsequently converted to one under chapter 11 before being re-converted back to one under chapter 7.

5.      The Trustee has been appointed as the chapter 7 trustee for the Debtor's estate by the Office of the United States Trustee.

6.      At the time the bankruptcy case was filed, the Debtor was the plaintiff in a lawsuit against Mr. Huertas, with the lawsuit being removed to this court following initiation of the bankruptcy proceedings.

7.      The complaint in the lawsuit has since been amended to include claims against not just Mr. Huertas but, also, WCP and DPCL, with all claims being premised upon the existence of a partnership between the Debtor and Mr. Huertas as well as contentions that WCP and DPCL participated in the partnership's affairs.

8.      Based on a review of various documents, and following lengthy negotiations with WCP, DPCL and Mr. Huertas, through counsel, the Trustee believes there may exist various factual and legal defenses to the claims in the lawsuit; the Trustee also believes that even if the lawsuit is successful, any recovery may be limited on account of the underperformance of the various assets alleged to be a part of the partnership.

2

### The Settlement Agreement

9.      The Parties wish to compromise and resolve certain claims without any admission

of liability by any of the parties. The terms of the settlement are memorialized in a Settlement

Agreement.  The Settlement Agreement is attached hereto as Exhibit A.

10.     The primary terms of the Settlement Agreement are summarized as follows:

      a.   The Obligors shall pay a total of $65,000.00 (the "Payment") to the

          Trustee over a period of months;

      b.   The Obligors will recognize the Debtor's estate as having a limited

          partnership interest in loans being serviced by WCP on which two specific

          borrowers are obligated;

      c.   The proceeds of those specific loans will be used to pay an additional

          $10,000.00 to the Debtor's estate, with the potential for additional funds

          depending on the ultimate performance of those two borrowers' loans; and

      d.   The Trustee, on behalf of the Debtor and the Debtor's various companies,

          as well as on behalf of the estate, will release any claims that have been

          brought—or could have been brought—against the Obligors.

11.     The Settlement Agreement is the product of arms-length negotiations and

resolves, on amicable terms, a dispute that would undoubtedly be both costly and time-

consuming.

### Relief Requested

12.     By this Motion, the Trustee seeks the entry of an Order approving the Settlement

Agreement, authorizing the Trustee to enter into the Settlement Agreement, and authorizing the

Trustee to take other necessary actions to effectuate the Settlement Agreement as provided for herein.

## **Applicable Standard**

13.     This Court may authorize parties to settle disputes in accordance with Bankruptcy Rule 9019, which provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). As a general rule, the law favors settlement agreements between parties. *See In re Frye*, 216 B.R. 166, 172 (Bankr. E.D. Va. 1997) (*citing Richardson v. Richardson*, 10 Va. App. 391, 399 (1990)); *Marandas v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993) (finding that compromises are generally favored in bankruptcy). In order to approve a settlement, the court must look at various factors to determine whether the settlement is in the best interest of the estate and whether it is fair and equitable. *See In re Frye*, 216 B.R. at 174; *accord In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995); *see also St. Paul Fire & Marine Ins. Co. v. Vaughn (In re Vaughn)*, 779 F.2d 1003, 1010 (4th Cir. 1985) (approving settlement where it was "in the best interests of the estate as a whole").

14.     A court should approve a settlement unless the settlement falls "below the lowest point in the range of reasonableness." *Austin*, 186 B.R. at 400 (citations omitted). A settlement may be approved even if the court finds it likely that the trustee or debtor would ultimately succeed in the litigation. *Id.* In determining whether a proposed settlement is in the best interest of the estate, the Bankruptcy Court is not to substitute its judgment for that of the movant, nor is it the Court's responsibility to decide the numerous questions of law and fact, but "rather to canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness . . . .'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.

4

1983)(citation omitted); *see also In re Tennol Energy Co.*, 127 B.R. 820 (Bankr. E.D. Tenn. 1991).

15.    The Settlement Agreement is in the best interests of the estate and its creditors and should be approved pursuant to Bankruptcy Rule 9019. It provides for the recovery of $65,000.00 to the estate, with an additional $10,000.00 to follow and with the potential for even further monies over and above that. The Obligors have made arguments that suggest they might otherwise prevail on the Trustee's claims. The Trustee's case would be premised on the cooperation and credibility of the Debtor, which is not guaranteed. The settlement will be accomplished in a short period of time without the risks of litigation. The Settlement Agreement is in the best interest of the estate and its creditors and should be approved.

### Basis for Relief

16.    The Settlement Agreement here represents a fair, reasonable and responsible compromise and settlement of disputed issues and claims among the Parties.

17.    The foregoing factors weigh heavily in favor of approving the Settlement Agreement. The Trustee has extensively reviewed the litigation, relevant records, and applicable law. The Trustee, upon his review of the case and the documents provided, believes that the Settlement Agreement provides for most or all of what he may recover if he were to fully prosecute this litigation. Under these circumstances, the Settlement has been negotiated in good faith and is fair and equitable.

18.    When the costs, and uncertainties of litigation are balanced against the probability of success, the Trustee submits that entering into the Settlement Agreement at this time is most efficacious and in the best interest of the estate, creditors and all parties in interest, and therefore should be approved.

5

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving

the Settlement Agreement and granting such other and further relief as the Court deems just and

proper.

Dated:  March 28, 2025

Respectfully submitted

/s/ Justin P. Fasano
Justin P. Fasano (DC Bar MD21201)
Janet M. Nesse (D.C. Bar 358514)
McNamee Hosea
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jfasano@mhlawyers.com
jnesse@mhlawyers.com
*Counsel to the Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I served a copy of the foregoing was served via
first class mail, postage prepaid, upon all parties on the attached mailing matrix.

/s/ Justin P. Fasano
Justin P. Fasano

6

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into by and between Wendell Webster, in his capacity as trustee of the chapter 7 bankruptcy estate of Charles Paxton Paret (the "Trustee," with the underlying estate being known as the "Estate" and the debtor being known as "Mr. Paret" or the "Debtor"); Daniel Huertas ("Mr. Huertas"), WCP Fund I LLC ("WCP"); and DP Capital LLC d/b/a Washington Capital Partners ("DPCL") (Mr. Huertas, WCP and DPCL being collectively known as the "Defendants" and each a "Defendant") (the Trustee and the Defendants being collectively known as the "Parties" and each a "Party").

## RECITALS

WHEREAS, the Trustee is presently the plaintiff in the matter of *Webster v. Huertas, et al.*, being case number 23-10025-ELG in the United States Bankruptcy Court for the District of Columbia (the "Litigation," with the court being known as the "Bankruptcy Court"); and

WHEREAS, through the Litigation, the Trustee asserts, *inter alia*, the existence of a partnership between Mr. Paret and Mr. Huertas, further alleging that said partnership may be inclusive of certain assets held by one or more of the other Defendants; and

WHEREAS, the Defendants deny any or all of them ever entered into a partnership agreement—or otherwise became partners, under any theory of law—with Mr. Paret; and

WHEREAS, the Parties, wishing to avoid the expense, uncertainty, and general duress of litigation, and wishing to formally and finally resolve any and all disputes between and amongst the Estate and the Defendants, elect to now enter into this Settlement Agreement;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, IT IS AGREED as follows:

## AGREEMENT

1.  **Initial Payment**. Within five (5) business days of this Settlement Agreement being approved by the Bankruptcy Court, WCP shall cause to be paid to the Trustee the sum of Fifteen Thousand Dollars and No Cents ($15,000.00) in the lawful currency of the United States, via personal check or wire transfer.

2.  **Subsequent Payments.** Commencing on the one (1) month anniversary of the payment called for in Section 1 hereof (or, should said payment occur on the 29th, 30th, or 31st day of a month, then on the 28th day of the subject month), and continuing thereafter each month, on the same date of each month, for a period of five (5) months, WCP shall cause to be paid to the Trustee the sum of Ten Thousand Dollars and No Cents ($10,000.00) in the lawful currency of the United States, via personal check or wire transfer, such that the cumulative amount to be paid to the Trustee, pursuant to Sections 1 and 2 hereof, shall be Sixty Five Thousand Dollars and No Cents ($65,000.00).

3.  **Limited Recognition of Partnership.** The Estate shall be recognized as a partner in connection with loans serviced by WCP, as of the Effective Date, on which the following two borrowers are obligated: (i) Developer RE1 LLC; and (ii) 423 Kennedy St Holdings LLC.

    a.  **Loans.** The Estate's partnership rights in the debt of these two borrowers shall be limited to those loans secured by liens on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 and 423 Kennedy Street, NW, Washington, DC 20011.  Four such loans exist as of the execution of this Settlement Agreement, including two being held by JPK NewCo LLC.

    b.  **Defined Monetary Interest.** On account of the limited recognition of a partnership set forth herein, the Estate shall become entitled to receive the first Ten Thousand Dollars and No Cents ($10,000.00) of proceeds—however derived, at any time after the Effective

Date—of any combination of the loans set forth in Section 3(a) hereof. This entitlement shall be for the sum of Ten Thousand Dollars and No Cents ($10,000.00) in the aggregate, and not on a per-loan or per-property basis. This entitlement shall include any monies that may be received on account of these loans, whether in the way of payments on principal, payments on interest, payments of late fees, or otherwise.

       c.    **Additional Monetary Interest**. In addition to, and not in lieu of, the monetary interest set forth in Section 3(b) hereof, the Estate shall be further entitled to receive fifty percent (50%) of the "net proceeds" of each loan identified in Section 3(a) hereof. For purposes of this Settlement Agreement, "net proceeds" shall be defined to mean monies received by the noteholders, from—or for the benefit of—the borrowers, *after* the noteholders first receive (i) the repayment of all principal; (ii) the payment of all non-default interest accrued through January 1, 2025; (iii) the payment of all default interest accrued through January 1, 2025; and (iv) the payment of all fees incurred through January 1, 2025. Pragmatically, this definition shall result in the Estate becoming entitled to receive one half of any non-default and/or default interest, on each of the four loans, that accrues *after* January 1, 2025, with the Parties agreeing that all obligations incurred prior to January 1, 2025 shall be first paid to the noteholders. For purposes of this Section 3(c), monies paid "for the benefit of" the borrowers shall include proceeds of any foreclosure auction(s) and/or any sale by a bankruptcy estate, receivership estate, assignee for the benefit of creditors, or other third party fiduciary. The Trustee acknowledges that the computation of the entitlement set forth in this Section 3(c) is such that the Estate may receive some monies, a great deal of monies, or no monies at all, depending on the manner in which the underlying loans are ultimately repaid and, should such repayment come through foreclosure or other sale, the sums fetched by the encumbered properties.

      d.    **Accounting**. Upon payment—in part or full—of the loans described in Section 3(a) hereof, the Estate shall become entitled to an accounting, from WCP, of all loan proceeds, for purposes of computing the obligation set forth in Section 3(c) hereof.

      e.    **Limitation**. Notwithstanding any other provision of this Settlement Agreement, the Estate's partnership rights shall be limited to those set forth in this Section 3 and shall not include any other rights, arising by agreement or law or equity, in connection with any assets held—or previously held—by the Defendants or any agents, assignees, customers, vendors, officers, directors, attorneys, trustees, partners, trustees, affiliates, or attorneys of the Defendants.

    4.    **Advance of Funds.** The provisions of Section 3(b) hereof notwithstanding, should the Estate not be paid the Ten Thousand Dollars and No Cents ($10,000.00) called for thereunder, on or before August 1, 2025, WCP shall advance such monies to the Estate on August 1, 2025. In the event such an advance is made, the right to collect the subject monies shall remain an asset of the Estate but the Trustee, upon the receipt of the monies called for in Section 3(b) hereof, shall be bound to promptly remit the same to WCP.

    5.    **Release of the Defendants**. The Trustee, on behalf of the Estate and all entities in which the Estate holds an interest (including, but not limited to, all companies in which Mr. Paret holds any interest and/or over which Mr. Paret has—or had, at the time of his being adjudicated a debtor in bankruptcy—any control), does hereby settle, release, waive, remise and discharge each of the Defendants, together with each of the Defendants' successors, heirs, assigns, partners, servicers, members, officers, directors, trustees, fiduciaries, subsidiaries, parents, and agents, from all causes of action, claims, rights, or demands, whatsoever, whether sounding in law or equity, whether known or unknown, whether direct or derivative, from the beginning of time through the Effective Date that were asserted or could have been asserted in the Complaint. The release set

forth in this Section 5 shall be construed to be as broad as may be permitted under governing law, and is fully inclusive of any claims stemming from the existence of partnerships or partnership agreements, whether formal or informal, and whether arising by contract or under statutory or common law, except this release does *not* include a release of any obligations arising under this Settlement Agreement.

6.      **Dismissal of Litigation.** Within three (3) business days of the Bankruptcy Court entering an order approving this Settlement Agreement, the Parties shall file a joint stipulation of dismissal, with prejudice, in the Adversary Proceeding.  In the event this Settlement Agreement is not approved, the Parties will agree that all litigation deadlines will be extended for 150 days.

7.      **Further Assurances.** The Parties shall execute such further and additional documents as may be necessary to effectuate the terms of this Settlement Agreement and shall cooperate, in good faith, so as to effectuate the terms of this Settlement Agreement.

8.      **Judicial Approval.** This Agreement will be signed within three (3) business days of approval of this Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

9.      **No Admission of Liability.** The Defendants does not enter into this Settlement Agreement for purposes of admitting any liability and, to the contrary, this Settlement Agreement is entered into solely out of a desire to avoid future litigation.

10.     **Terminology.** When the masculine gender is used herein, it shall also mean the feminine gender, where appropriate, and the plural shall mean the singular, and vice-versa, where appropriate. The words "and" and "or" shall be construed as meaning "and/or" except where contextually inappropriate.

11.     **Entire Understanding.** This Settlement Agreement contains the entire understanding between the Parties.  No modification or waiver of any of the terms of this

Settlement Agreement shall be valid unless made in writing and signed by the Parties in a manner no less formal than that with which this Settlement Agreement is executed.

12.    **Savings Clause.** If any provision of this Settlement Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

13.    **No Waiver**. Any waiver or breach or default of this Settlement Agreement shall not be deemed a waiver of any subsequent breach or default. If any Party fails in due performance of any of his or her obligations hereunder, the aggrieved Party shall have the right to sue for damages for the breach thereof, or to seek other legal remedies as may be available to him or her, and the defaulting Party shall pay the reasonable legal fees and expenses incurred by the aggrieved Party as a result of the breach.

14.    **Counterparts.** This Settlement Agreement may be executed in counterparts, each of which shall be deemed to be an original instrument but all of which together shall constitute one agreement. Signature pages transmitted via facsimile or by email in Portable Document Format (PDF) shall be deemed original signatures for all purposes. This Settlement Agreement may be executed in duplicate and the duplicate shall have the same force and effect as if it were the original copy. This Settlement Agreement may be executed by electronic means if done through a reputable third party purveyor of electronic signatures, with DocuSign and Adobe expressly being such reputable third party purveyors.

15.    **Governing Law.** This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the United States of America and the District of Columbia.

16.    **Headings.** The headings used in this Settlement Agreement are for ease of reference only and shall not be deemed a substantive portion of this Settlement Agreement.

17.     **Construction.** This Settlement Agreement shall be construed without regard to any presumption or other rule of law requiring construction against the party who caused it to be drafted.

18.     **Recitals.** The above recitals form an integral and substantive part of this Settlement Agreement and are incorporated herein by reference.

*IN WITNESS WHEREOF*, the undersigned have executed this Settlement Agreement on the dates indicated.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
COLUMBIA

IN RE:
Charles Paxton Paret
Debtor.

CASE No. 23-217-ELG
(Chapter 7)

### EXHIBIT V: DECLARATION OF CHARLES PAXTON PARET

1. Charles Paxton Paret, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the Debtor in the above-captioned case, Case No. 23-217-ELG, and submit this declaration in support of my Objection to the Trustee's Motion for Approval of Settlement Agreement (Doc. 158).

2. Between August 2023 and March 2025, multiple investors and attorneys contacted the Trustee, Wendell Webster, offering funds to support litigation in the adversary proceeding Webster v. Huertas, et al., Case No. 23-10025-ELG, or to purchase assets of the bankruptcy estate, including partnership interests in properties held by WCP Fund I LLC and DP Capital LLC.

3. To my knowledge, the Trustee did not respond to or pursue these offers, which could have significantly increased the estate's recovery beyond the $75,000 proposed in the Settlement Agreement.

4. Correspondence from these investors and attorneys, including emails and letters, is available for submission to the Court upon request or may be obtained through discovery.

5. I declare that the foregoing is true and correct to the best of my knowledge.

Dated: June 18, 2025

/s/ Charles Paxton Paret
Charles Paxton Paret
343 First St
Berryville, VA 22611
202-834-7673
charles_paret@hotmail.com

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
COLUMBIA

IN RE:
Charles Paxton Paret
Debtor

CASE No. 23-217-ELG
(Chapter 7)

## EXHIBIT V: DECLARATION OF CHARLES PAXTON PARET

I, Charles Paxton Paret, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the Debtor in the above-captioned case, Case No. 23-217-ELG, and submit this declaration in support of my Objection to the Trustee's Motion for Approval of Settlement Agreement (Doc. 158).

2. Between August 2023 and March 2025, multiple investors and attorneys contacted the Trustee, Wendell Webster, offering funds to support litigation in the adversary proceeding Webster v. Huertas, et al., Case No. 23-10025-ELG, or to purchase assets of the bankruptcy estate, including partnership interests in properties held by WCP Fund I LLC and DP Capital LLC.

3. To my knowledge, the Trustee did not respond to or pursue these offers, which could have significantly increased the estate's recovery beyond the $75,000 proposed in the Settlement Agreement.

4. Correspondence from these investors and attorneys, including emails and letters, is available for submission to the Court upon request or may be obtained through discovery.

5. I declare that the foregoing is true and correct to the best of my knowledge.

Dated: June 18, 2025

/s/ Charles Paxton Paret
**Charles Paxton Paret**
**343 First St**
**Berryville, VA 22611**
**202-834-7673**
**charles_paret@hotmail.com**

Docusign Envelope ID: 3AFDB8EC-96C1-41D1-B5AE-AF78FCA77297

4.  Lack of Fair and Reasonable Valuation:

The Trustee has provided no independent valuation, no forensic accounting of partnership books, and no litigation analysis. The proposed settlement does not reflect the estate's actual potential recovery, nor does it satisfy the requirement that the compromise be "fair and equitable."

5.  Violation of Fiduciary Duty and Prejudice to Creditors:

The Trustee is bound to act in the best interests of creditors. Settling a multi-million-dollar estate asset for a nominal sum appears to violate that duty. The motion lacks sufficient factual support to permit creditors to meaningfully evaluate its fairness.

6.  Potential for Collusion or Improper Favoritism:

To the extent that the proposed settlement favors is limited creditors, the remaining creditors demand full transparency and challenge the fairness of any agreement that impair estate value or shield related parties from scrutiny of the manner in which the Trustee reached the proposed settlement and specifically why the Trustee would discredit a sound partnership claim and legal theory.

Should this court determine that a valid partnership claim exists, the partnership would then require an identification of assets, a valuation, and an appropriate dissolution. Subject thereto, in the exercise of its fiduciary duty, the court would be able to better determine the reasonableness of a proposed settlement. At present, the Trustee's action and specific proposal deprives the creditors and this court of the legal and factual analysis that should be required of it.

Request for Relief:

Accordingly, we the undersigned Creditors respectfully urge this Court to:

- Deny the Motion to Approve Settlement as currently proposed;

- Require the Trustee to disclose its legal reasoning and analysis, if any, refuting the Debtor's asserted partnership and/o reasons for discrediting an otherwise sound legal basis. If not, to explain the absence thereof.

- Require the trustee to disclose all partnership related documentation, valuation materials, and communications related to the proposed compromise;

- Order a full evidentiary hearing to evaluate the fairness, reasonableness, and adequacy of the settlement including, but not limited to the Debtors' underlying asserted partnership evidence and claims;

- Ensure that any compromise maximizes estate recovery in accordance with the Trustee's fiduciary duties under 11 U.S.C. § 704;

- Grant such further relief as may be just and proper.

We reserve the right to supplement this objection, join in other objections, and participate in any hearing on this matter.

Respectfully submitted.

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]    HAL MURNAME
[Signature]    Harold B. Murnane

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Docusign Envelope ID: 3AFDB8EC-98C1-41D1-B5AE-AF78FCA77297

N THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLUMBIA

IN RE:  Charles Paxton Paret  :

Chapter 7 (Debtor)

Case No. 23-217-ELG )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Re: CREDITORS JOINT OBJECTIONS TO PROPOSED SETTLEMENT UNDER RULE 9019
Dear Clerk of Court:

Please accept this letter as a formal objection on behalf of the following Creditors in the above-
captioned bankruptcy proceeding, to the Trustee's Motion to Approve Compromise and
Settlement filed on or about March 28, 2025, pursuant to Federal Rule of Bankruptcy Procedure
9019.

Basis for Objection:

The present estate has identified a significant list of properties which became part of a
partnership entered into by Charles Paret and Daniel Hortas, and Mr. Hortas' companies
including DP Capital well before this bankruptcy was filed. This issue has been the subject of
D.C. Superior Court litigation and extensive research. Consistent with well established D.C. law,
the undersigned creditors believe there is a strong legal basis for the establishment of a
partnership here. The proposed settlement does not address or refute this point and its reference
to the Trustee's due diligence is silent on this critical issue.

The settlement seeks to dispose of valuable estate assets and claims, specifically, the Debtor's
plausible partnership claim (and/or other related legal claim potentially exceeding $25
million for a mere $60,000, without the benefit of an comprehensive independent valuation,
meaningful discovery, or transparent disclosure of the basis for such a drastic compromise.

Our objection is grounded on the following:

1. Substantial Estate Interest via Partnership Claim:
   The estate possesses a legal or equitable interest in a partnership, including potential
   rights to profits, distributions, and liquidation proceeds.

2. The Trustee claims to have investigated this claim and suggests that it is meritless despite
   extensive contrary research suggesting otherwise.  The Debtor's DC

3. This interest has not been appraised or litigated, yet the Trustee proposes to extinguish it
   for pennies on the dollar.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
COLUMBIA

IN RE:
Charles Paxton Paret
Debtor.

CASE No. 23-217-ELG
(Chapter 7)

## EXHIBIT W: INDEX OF EXHIBITS

The following exhibits are attached to the Objection to the Trustee's Motion for Approval
of Settlement Agreement (Doc. 158):

- Exhibit A: Appraisal for 107 Rhode Island Ave, NW #2, Washington, DC 20001 –
  $610,000

- Exhibit B: Appraisal for 1736 Montello Ave NE, Unit 1–6, Trinidad, Washington, DC
  20002 – $2,308,000

- Exhibit C: Appraisal for 2507 I St NW, Foggy Bottom, Washington, DC 20036 –
  $2,885,000

- Exhibit D: Appraisal for 159 Fairfield Lane, Berryville, VA 22611 – $1,600,000

- Exhibit E: Appraisal for 107 Rhode Island Ave, NW #1, #3, #4, Washington, DC
  20001 – $2,600,000

- Exhibit F: Appraisal for 429 Kennedy St NW, Washington, DC 20011 – $1,900,000

- Exhibit G: Appraisal for 431 Kennedy St NW, Washington, DC 20011 – $1,900,000

- Exhibit H: Appraisal for 1238 Simms Pl NE, Unit 101/102, Washington, DC 20002 –
  $897,500

- Exhibit I: Appraisal for 1260 Holbrook Ter NE, Unit 3, Trinidad, Washington, DC
  20002 – $373,000

- Exhibit J: Appraisal for 1260 Holbrook Ter NE, Unit 1, Trinidad, Washington, DC
  20002 – $420,000

- Exhibit K: Appraisal for 1260 Holbrook Ter NE, Unit 2, Trinidad, Washington, DC
  20002 – $420,000

- Exhibit L: Appraisal for 1260 Holbrook Ter NE, Unit 4, Trinidad, Washington, DC
  20002 – $390,000

- Exhibit M: Appraisal for 1260 Holbrook Ter NE, Unit 5, Trinidad, Washington, DC
  20002 – $399,000

- Exhibit N: Appraisal for 1260 Holbrook Ter NE, Unit 6, Trinidad, Washington, DC 20002 – $405,000

- Exhibit O: Appraisal for 1260 Holbrook Ter NE, Unit 7, Trinidad, Washington, DC 20002 – $545,000

- Exhibit P: Appraisal for 1262–1268 Holbrook Ter NE, Trinidad, Washington, DC 20002 – $4,630,000

- Exhibit Q: Appraisal for 1471 Girard St NW, Unit 2, Columbia Heights, Washington, DC 20009 – $2,902,000

- Exhibit R: Appraisal for 1736 Montello Ave NE, Trinidad, Washington, DC 20002 – $625,000

- Exhibit S: Appraisal for 1268 Holbrook Ter NE, Unit 1, Trinidad, Washington, DC 20002 – $600,000

- Exhibit T: Appraisal for 419–423 Kennedy St NW, Washington, DC 20011 – $17,891,000

- Exhibit U: Appraisal for 4910 Georgia Ave NW, Washington, DC 20011 – $13,300

- Exhibit V: Appraisal for 1732–1736 Trinidad Ave NE, Washington, DC 20002 – $4,385,000

- Exhibit W: Declaration of Charles Paxton Paret

Total Appraisal Value of Listed Properties: $51,298,800

Note: The appraisals listed in Exhibits A–V represent a portion of the WCP portfolio, with a total value of $51,298,800 for the listed properties. The full portfolio, including additional properties such as 1619 Swann St NW, 2449 P Street NW, and 1249 Bladensburg Rd NE, has a total appraised value of $67,075,000, reflecting an approximate appreciation of $31,279,495.37 from the purchase price of $35,795,504.63. Assessed values for certain properties exceed the appraised amounts shown, and development values based on After Repair Value (ARV) further indicate higher potential worth. Additional appraisal reports for unlisted properties are available upon request.

Dated: June 18, 2025

/s/ Charles Paxton Paret
Charles Paxton Paret
343 First St
Berryville, VA 22611
202-834-7673
charles_paret@hotmail.com

2

N THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLUMBIA

IN RE:  Charles Paxton Paret  :

Chapter 7 (Debtor)

Case No. 23-217-ELG )

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Re: CREDITORS JOINT OBJECTIONS TO PROPOSED SETTLEMENT UNDER RULE 9019**

Dear Clerk of Court:

Please accept this letter as a formal objection on behalf of the following Creditors in the above-
captioned bankruptcy proceeding, to the Trustee's Motion to Approve Compromise and
Settlement filed on or about March 28, 2025, pursuant to Federal Rule of Bankruptcy Procedure
9019.

---

Basis for Objection:

The present estate has identified a significant list of properties which became part of a
partnership entered into by Charles Paret and Daniel Hortas, and Mr. Hortas' companies
including DP Capital well before this bankruptcy was filed. This issue has been the subject of
D.C. Superior Court litigation and extensive research. Consistent with well established D.C. law,
the undersigned creditors believe there is a strong legal basis for the establishment of a
partnership here. The proposed settlement does not address or refute this point and its reference
to the Trustee's due diligence is silent on this critical issue.

The settlement seeks to dispose of valuable estate assets and claims, specifically, the Debtor's
plausible partnership claim (and/or other related legal claim potentially exceeding $25
million for a mere $60,000, without the benefit of an comprehensive independent valuation,
meaningful discovery, or transparent disclosure of the basis for such a drastic compromise.

Our objection is grounded on the following:

1.  Substantial Estate Interest via Partnership Claim:
    The estate possesss a legal or equitable interest in a partnership, including potential rights
    to profits, distributions, and liquidation proceeds.

2.  The Trustee claims to have investigated this claim and suggests that it is meritless despite
    extensive contrary research suggesting otherwise.  The Debtor's DC

3.  This interest has not been appraised or litigated, yet the Trustee proposes to extinguish it
    for pennies on the dollar.

4. Lack of Fair and Reasonable Valuation:
   The Trustee has provided no independent valuation, no forensic accounting of partnership books, and no litigation analysis. The proposed settlement does not reflect the estate's actual potential recovery, nor does it satisfy the requirement that the compromise be "fair and equitable."

5. Violation of Fiduciary Duty and Prejudice to Creditors:
   The Trustee is bound to act in the best interests of creditors. Settling a multi-million-dollar estate asset for a nominal sum appears to violate that duty. The motion lacks sufficient factual support to permit creditors to meaningfully evaluate its fairnes.

6. Potential for Collusion or Improper Favoritism:
   To the extent that the proposed settlement favors is limited creditors, the remaining creditors demand full transparency and challenge the fairness of any agreement that impair estate value or shield related parties from scrutiny of the manner in which the Trustee reached the proposed settlement and specifically why the Trustee would discredit a sound partnership claim and legal theory.

   Should this court determine that a valid partnership claim exists, the partnership would then require an identification of assets, a valuation, and an appropriate dissolution. Subject thereto, in the exercise of its fiduciary duty, the court would be able to better determine the reasonablenesss of a proposed settlement. At present, the Trustee's action and specific proposal deprives the creditors and this court of the legal and factual analysis that should be required of it.

Request for Relief:

Accordingly, we the undersigned Creditors respectfully urge this Court to:

- Deny the Motion to Approve Settlement as currently proposed;

- Require the Trustee to disclose its legal reasoning and analysis, if any, refuting the Debtor's asserted partnership and/o reasons for discrediting an otherwise sound legal basis. If not, to explain the absence thereof.

- Require the trustee to disclose all partnership related documentation, valuation materials, and communications related to the proposed compromise;

- Order a full evidentiary hearing to evaluate the fairness, reasonableness, and adequacy of the settlement including, but not limited to the Debtors' underlying asserted partnership evidence and claims;

- Ensure that any compromise maximizes estate recovery in accordance with the Trustee's fiduciary duties under 11 U.S.C. § 704;

- Grant such further relief as may be just and proper.

We reserve the right to supplement this objection, join in other objections, and participate in any hearing on this matter.

Respectfully submitted,

Creditor or Counsel Name]    *Wesley Burdette*    6/15/2025
[Signature]                  Wesley Burdette

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

N THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLUMBIA

IN RE:  Charles Paxton Paret :

Chapter 7 (Debtor)

Case No. 23-217-ELG )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Re: CREDITORS JOINT OBJECTIONS TO PROPOSED SETTLEMENT UNDER RULE 9019

Dear Clerk of Court:

Please accept this letter as a formal objection on behalf of the following Creditors in the above-
captioned bankruptcy proceeding, to the Trustee's Motion to Approve Compromise and
Settlement filed on or about March 28, 2025, pursuant to Federal Rule of Bankruptcy Procedure
9019.

Basis for Objection:

The present estate has identified a significant list of properties which became part of a
partnership entered into by Charles Paret and Daniel Hortas, and Mr. Hortas' companies
including DP Capital well before this bankruptcy was filed. This issue has been the subject of
D.C. Superior Court litigation and extensive research. Consistent with well established D.C. law,
the undersigned creditors believe there is a strong legal basis for the establishment of a
partnership here. The proposed settlement does not address or refute this point and its reference
to the Trustee's due diligence is silent on this critical issue.

The settlement seeks to dispose of valuable estate assets and claims, specifically, the Debtor's
plausible partnership claim (and/or other related legal claim potentially exceeding $25
million for a mere $60,000, without the benefit of an comprehensive independent valuation,
meaningful discovery, or transparent disclosure of the basis for such a drastic compromise.

Our objection is grounded on the following:

1.  Substantial Estate Interest via Partnership Claim:
    The estate possesss a legal or equitable interest in a partnership, including potential rights
    to profits, distributions, and liquidation proceeds.

2.  The Trustee claims to have investigated this claim and suggests that it is meritless despite
    extensive contrary research suggesting otherwise.  The Debtor's DC

3.  This interest has not been appraised or litigated, yet the Trustee proposes to extinguish it
    for pennies on the dollar.

4. Lack of Fair and Reasonable Valuation:

The Trustee has provided no independent valuation, no forensic accounting of partnership books, and no litigation analysis. The proposed settlement does not reflect the estate's actual potential recovery, nor does it satisfy the requirement that the compromise be "fair and equitable."

5. Violation of Fiduciary Duty and Prejudice to Creditors:

The Trustee is bound to act in the best interests of creditors. Settling a multi-million-dollar estate asset for a nominal sum appears to violate that duty. The motion lacks sufficient factual support to permit creditors to meaningfully evaluate its fairness.

6. Potential for Collusion or Improper Favoritism:

To the extent that the proposed settlement favors is limited creditors, the remaining creditors demand full transparency and challenge the fairness of any agreement that impair estate value or shield related parties from scrutiny of the manner in which the Trustee reached the proposed settlement and specifically why the Trustee would discredit a sound partnership claim and legal theory.

Should this court determine that a valid partnership claim exists, the partnership would then require an identification of assets, a valuation, and an appropriate dissolution. Subject thereto, in the exercise of its fiduciary duty, the court would be able to better determine the reasonablenesss of a proposed settlement. At present, the Trustee's action and specific proposal deprives the creditors and this court of the legal and factual analysis that should be required of it.

Request for Relief:

Accordingly, we the undersigned Creditors respectfully urge this Court to:

- Deny the Motion to Approve Settlement as currently proposed;

- Require the Trustee to disclose its legal reasoning and analysis, if any, refuting the Debtor's asserted partnership and/o reasons for discrediting an otherwise sound legal basis. If not, to explain the absence thereof.

- Require the trustee to disclose all partnership related documentation, valuation materials, and communications related to the proposed compromise;

- Order a full evidentiary hearing to evaluate the fairness, reasonableness, and adequacy of the settlement including, but not limited to the Debtors' underlying asserted partnership evidence and claims;

- Ensure that any compromise maximizes estate recovery in accordance with the Trustee's fiduciary duties under 11 U.S.C. § 704;

- Grant such further relief as may be just and proper.

We reserve the right to supplement this objection, join in other objections, and participate in any hearing on this matter.

Respectfully submitted,

Creditor or Counsel Name]    *Dion R. Davitian*
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]

Creditor or Counsel Name]
[Signature]