Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-217-ELG |
| | ) | |
| Charles Paxton Paret | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**OPPOSITION TO MOTION OF WELCH PARTIES
SEEKING DISCOVERY SANCTIONS AND A SHOW CAUSE ORDER**

Come now WCP Fund I LLC ("WCP"), DP Capital LLC d/b/a Washington Capital Partners ("DPCL"), and Daniel Huertas ("Mr. Huertas") (collectively, the "WCP Parties"), by and through undersigned counsel, in opposition to the motion (the "Motion"), DE #179, filed by Welch Family Limited Partnership Four, Welch Family Limited Partnership Five, Welch Family Limited Partnership Nine, Welch Family Limited Partnership Twenty-One, and Kenneth Welch (the "Welch Parties"), seeking discovery sanctions—and entry of an order to show cause—against the WCP Parties, and state as follows:

I.   **Introduction**

There exist two pertinent proceedings in which discovery may be taken: (i) an adversary proceeding, to which the Welch Parties are not parties; and (ii) a contested matter, to which the WCP Parties are not parties. Neither construct permits the Welch Parties to issue written interrogatories to the WCP Parties or to send requests for the production of documents (other than

1

through a subpoena duces tecum) to the WCP Parties. And the Welch Parties know this, since they were informed of such—in writing—well before the Motion was filed and, indeed, tepidly acknowledged as much—in writing—well before the Motion was filed. They also presumably know this from a plain reading of governing rules and applicable case law. Nonetheless, they have now elected to not only endeavor to compel responses to their facially invalid written discovery requests but, too, have indicated a desire to (a) obtain an award of legal fees for so doing; and (b) have the WCP Parties ordered to show cause why they ought not be held in contempt of court.

The extreme demands of pages 1, 3 and 5 of the Motion resonate as having a certain "doth protest too much" aura. William Shakespeare, *The Tragedy of Hamlet, Prince of Denmark*, Act III, Scene II, ln. 219. The Welch Parties attempted to burden non-parties to the contested matter with written discovery, were politely informed of the inherent and incurable problem in such an effort, and—in lieu of quietly letting the matter rest (as did a similarly-situated party to the contested matter)—have now elected to proceed with all the subtlety and nuance of a missive being couriered by Rosencrantz and Guildenstern.

Fundamentally, one cannot take discovery from a non-party. Nor may one take discovery in an adversary proceeding to which they are not a party. Nor may one obtain a show cause order in response to an alleged initial discovery violation. And for these reasons, as extrapolated upon *infra*, the Motion merits denial.

**II.     Relevant History**

1.     On March 28, 2025, Wendell Webster (the "Trustee") filed a motion to approve a compromise, in connection with a pending adversary proceeding, with the WCP Parties. DE #158.

2.     The WCP Parties neither joined in the Trustee's motion nor filed an opposition or reply thereto. *See* Docket, *passim*.

3. Some 82 days after the Trustee filed the motion to approve a compromise, the Welch Parties filed an objection to the motion. DE #164.

4. This Honorable Court then established a discovery schedule, DE #173, allowing written discovery to be issued, indicating such discovery is to be completed by "parties," *id.* at ¶ 2, and allowing the Trustee to be deposed, *id.* at ¶ 3.

5. On July 9, 2025, the Welch Parties sent the WCP Parties a series of interrogatories and a series of document requests, issued under Federal Rules of Civil Procedure 33 and 34, respectively. *See* Interrogatories, attached hereto as Exhibit A; Requests for Production of Documents, attached hereto as Exhibit B.

6. Thereafter, on July 20, 2025, undersigned counsel wrote to counsel for the Welch Parties, noting the foregoing discovery requests to be improper and pointing to relevant legal authorities on the matter. *See* Good Faith Letter, attached hereto as Exhibit C.

7. In response to the good faith letter from counsel for the WCP Parties, counsel for the Welch Parties noted, *inter alia*:

> . . . Even if the WCP Parties are not technically parties to the contested matter, the appropriate procedure to obtain the requested information is through the issuance of a subpoena pursuant to Federal Rule of Bankruptcy Procedure 9016, incorporating Federal Rule of Civil Procedure 45. To the extent the formal mechanism of a Rule 45 subpoena is required, we are prepared to reissue the discovery in the form of subpoenas promptly.
>
> However, in the interest of efficiency and to avoid unnecessary motion practice, we respectfully request that you advise whether your clients will accept service of the discovery requests as subpoenas under Rule 45. Alternatively, we are prepared to proceed with formal service through appropriate channels. . .

Response to Good Faith Letter, attached hereto as Exhibit D.

8. Counsel for the WCP Parties did *not* respond to the Welch Parties' missive and did *not* affirmatively agree to accept service of a subpoena on behalf of his clients. This was, in part, because the time to issue subpoenas had already elapsed and, in part, because the whole effort at

3

taking discovery from the WCP Parties showed every indicia of being pretextual and harassing in nature.

9. The Welch Parties did not proceed to issue a subpoena, in any event (quite likely because the deadline for them to do so had long since come and gone). Instead, they filed the Motion.

### III. Argument: The Welch Parties are not Entitled to Take Written Discovery— Outside the Confines of a Subpoena Duces Tecum—from the WCP Parties

A fairly simple premise underlies the fallacy of the Motion: a party cannot take written discovery from a non-party. That is true in adversary proceedings. That is true in traditional civil litigation. And that is true in contested matters. A party assuredly *can* issue a subpoena duces tecum, but such requires formal service and adherence to myriad other restrictions alongside various monetary obligations. Yet the Welch Parties, for whatever reason, declined to adhere to this longstanding, and well-acknowledged, distinction in the instant case.

Familiarly, the taking of discovery is permitted where a contested matter is extant in a main bankruptcy case. Fed. R. Bankr. P. 9014(c)(1). Contested matters invoke application of Federal Rules of Bankruptcy Procedure 7033 and 7034, *id.*, which, in turn, make applicable Federal Rules of Civil Procedure 33 and 34. *See* Fed. R. Bankr. P. 7033; Fed. R. Bankr. P. 7034.

Federal Rule of Civil Procedure 33 permits the propounding of interrogatories upon a party to a matter, just as Federal Rule of Civil Procedure 34 permits the issuance of requests for production to a party to a matter. *See* Fed. R. Civ. P. 33(b)(1); Fed. R. Civ. P. 34(b)(2)(A). Critically, however, such discovery may *only* be propounded upon a party to the at-issue action. *See, e.g., Gibbs v. Ames*, 2023 U.S. Dist. LEXIS 226711, at *4 (S.D. W. Va. Dec. 20, 2023) ("The undersigned finds that any interrogatory or request for production of documents served upon a non-party is improper. Rules 33 and 34 of the Federal Rules of Civil Procedure provide that such

4

may only be served upon a party to the action.") (citing Fed. R. Civ. P. 33(a)(1); Fed. R. Civ. P. 34(a)); *Ward v. Empire Vision Ctrs., Inc*., 262 F.R.D. 256, 261 (W.D.N.Y. 2009) (". . . the federal rules provide that interrogatories may only be served upon parties to the lawsuit. Thus, service upon a non-party is inappropriate.") (citing Fed R. Civ. P. 33).

To be sure, the Welch Parties were absolutely correct when they observed, in response to the WCP Parties' good faith letter, that the proper means for taking discovery from the WCP Parties would have been through issuance of a subpoena, as allowed by Federal Rule of Bankruptcy Procedure 9016 and Federal Rule of Civil Procedure 45. Yet the Welch Parties did not issue—much less properly serve—a subpoena and, instead, elected to file the Motion.

The extent to which this is truly befuddling can scantly be overstated. The Welch Parties have all-but-acknowledged they were not permitted to issue discovery in the form they elected. They have seemingly recognized the manner in which they needed to have proceeded to endeavor to obtain documents from the WCP Parties. They do not so much as feign to have followed the proper path. And yet, somehow, despite passively acknowledging their own procedural mistakes and the resultant nonviability of their discovery requests, they are now seeking to have the WCP Parties sanctioned—and held in contempt, no less—for failing to respond to improperly-issued discovery.

**IV.   Argument: Much of What is Sought Would Not be Obtainable Via Subpoena in Any Event**

Putting aside the wholesale impropriety of the Welch Parties sending discovery requests to the WCP Parties without a subpoena and the formalities attendant thereto, it does merit observation that the requests themselves would be wildly objectionable in any event. While largely irrelevant for the reasons set forth *supra*, this is notable because it is at least suggestive of an illicit pretextual motive underlying the whole charade in the first instance: the Welch Parties certainly appear to be

5

trying to either (i) bully a party into withdrawing from a settlement agreement with a bankruptcy trustee; or (ii) hijack that pending compromise for purposes of garnering sensitive information about an industry competitor.

One of the interrogatories asks each of the WCP Parties to "describe [their] financial condition . . . including identifying all assets, liabilities, income sources, and financial constraints." *See* Interrogatories, attached hereto as Exhibit A, at p. 4, item #4. There is no cognizable universe in which this is an even vaguely appropriately tailored discovery request, lodged from one private lender to another. *See* Fed. R. Civ. P. 26(c)(1)(G). And the WCP Parties are confident that if they ever tried to obtain Mr. Welch's personal financial statement, together with a specific listing of *every* asset held by himself and his numerous limited partnerships, such would be—rightfully—met with vociferous objection.

Another interrogatory asks for information concerning communications with other creditors. *See* Interrogatories, attached hereto as Exhibit A, at p. 5, item #9. Insofar as the WCP Parties share counsel with at least one other petitioning creditor, this would seem to clearly encroach upon the common interest privilege, *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 624 (D.C. Cir. 2023), and be well beyond the permissive scope of discovery.

Yet another interrogatory asks the WCP Parties to identify the individuals with whom they consulted for purposes of valuing their potential liability in the underlying litigation, whilst seeking information about the analysis performed by each such person. *See* Interrogatories, attached hereto as Exhibit A, at p. 5, item #11. If a party wishing to settle litigation with a bankruptcy trustee could be compelled to produce such highly sensitive information, it would stand to reason parties would be far more reluctant to settle with bankruptcy trustees. After all, if a settlement is not approved

under Rule 9019, a defendant's internal analysis of potential litigation liability is now public record and seemingly fair fodder for a subsequent trial on the merits of the underlying action.

Similarly, the Welch Parties elected to ignore the attorney/client privilege, and the attorney work product doctrine, in asking the WCP Parties to not merely identify their counsel and advisors but, too, "the specific tasks they performed" in connection with the resolution of the at-issue litigation. *Id.* at p. 6, item #14. Such information is, rather familiarly, protected from disclosure. *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).

These problematic inquiries also reveal a larger reality about why discovery is not appropriately taken from a settlement counterparty. The WCP Parties are being asked to share incredibly sensitive trade secrets alongside all the nuances of their litigation assessment and strategy, inclusive of information protected by the expansive reaches of the attorney/client privilege. Neither the WCP Parties nor any other corporate actor would seem inclined to do so. And if Rule 9019 could be utilized for such harassing and invasive ends, the Rule would—quite likely—all-but-obliterate its own application.

V.   **Argument: Contempt is not an Available Remedy for an Alleged Initial Discovery Violation**

One rather simple item of note, not fairly contained in the foregoing arguments: it is, quite genuinely, unclear why the Welch Parties believe they can seek entry of an order directing the WCP Parties to show why they ought not be held in contempt of course. The contempt-centric provisions of Rule 37 only concern circumstances where a party has already been ordered by a court to furnish a discovery answer and has nonetheless persisted in failing to do so. *See* Fed. R. Civ. P. 37(b)(1); Fed. R. Civ. P. 37(b)(2)(A)(vii); *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) ("Civil contempt will lie only if the putative contemnor has **violated an order** that is clear and unambiguous, and the violation must be proved by clear and

7

convincing evidence.") (quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006)) (emphasis added).

It strains credulity to surmise the Welch Parties do not know this. It would strain credulity to surmise any seasoned litigation counterparty does not know this. Yet the Welch Parties have nonetheless put forth a request to subject the WCP Parties to the humiliating specter of being made to show cause why they ought not be held in contempt of court. In assessing what rationale, *vel non*, could possibly underlie such a request, only those well beyond the ambit of good faith come to mind.

VI. **Conditional Withdrawal of Compromise**

As intimated at the close of Section IV, *supra*, some attention is properly paid to why the Federal Rules of Bankruptcy Procedure do not allow what the Welch Parties attempt *sub judice*: if a party prepared to settle with a chapter 7 trustee may be subjected to the burden and expense of discovery—especially when a settlement is so often aimed at avoiding future burdens and expenses—few parties would be inclined to settle. It is one thing to take discovery from a trustee, who plays a statutory role in a main bankruptcy case, 11 U.S.C. § 323; it is altogether another thing to deter the consummation of settlements through the issuance of spurious discovery requests followed by spurious motions that seek not only to enforce said discovery requests but, too, that somehow seek to compel the turnover of markedly sensitive information, the collection of attorneys' fees and the propagation of contempt orders.

Lest the foregoing argument seem too hypothetical, the WCP Parties formally assert as follows: if the Motion is granted, the WCP Parties hereby withdraw their consent to the settlement with the bankruptcy trustee and urge, in turn, that such renders the proposed discovery moot in nature. *See, e.g.*, *Larsen v. United States Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008) (" 'Simply stated, a

8

case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' 'Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.'") (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). *But see Bestwall Ltd. Liab. Co. v. Off. Comm. of Asbestos Claimants of Bestwall, Ltd. Liab. Co.*, __ F.4th __, 2025 U.S. App. LEXIS 19370, at *10 n.10 (4th Cir. Aug. 1, 2025) (holding bankruptcy courts may adjudicate moot matters).

The cost of responding to this discovery (not to mention of addressing a contempt order) is, no doubt, comparable to the cost of seeking summary judgment in the underlying litigation—especially where, as here, the majority of such a brief is already drafted courtesy of prior, pre-amendment dispositive motions practice. The WCP Parties would prefer to simply seek a resolution of frivolous litigation on the merits than be compelled to further address or dignify the attempted bullying of—and attempted poaching of sensitive information by—the Welch Parties.

**VII.  Sanctions**

The WCP Parties would be well justified seeking sanctions under Rule 37(a)(5)(B), as well as potentially under Rule 9019. The Welch Parties are not merely wrong but, in point of fact, sent a letter—long before filing the Motion—seemingly acknowledging how it is that they *should* have proceeded, in juxtaposition to how it is that they actually *did* proceed. And that the Welch Parties have, themselves, sought sanctions herein certain would seem to make apt such a request.

The foregoing notwithstanding, the WCP Parties are as fond of the high road as they unfond of Denmark's once-rotten affairs. So while they certainly reserve their right to do so at a later date,

9

they do not presently seek an award of attorneys' fees or any other sanction against the Welch Parties.

### VIII. Conclusion

WHEREFORE, the WCP Parties respectfully pray this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 24, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the WCP Parties*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig