# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) |  |
|  | ) |  |
| CHARLES PAXTON PARET, | ) | Case No. 23-217-ELG |
|  | ) |  |
| Debtor. | ) | Chapter 7 |
|  | ) |  |
| WENDELL WEBSTER, CHAPTER 7 TRUSTEE, | ) |  |
|  | ) | Adv. Case No. 23-10025-ELG |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| DANIEL HUERTAS, *et al.* | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MOTION TO DISMISS THIRD AMENDED COMPLAINT

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## **TABLE OF CONTENTS**

I.  Introduction ........................................................................................................... 1

II.  Standard: Motion to Dismiss ............................................................................. 3

III.  Factual Allegations ............................................................................................ 4

IV.  Facts Properly Considered but External to the Third Amended Complaint ..................... 6

V.  Argument: The Complaint Does Not Sufficiently Allege Partnership Activities ............. 6

VI.  Argument: The Complaint's Allegations Show a Partnership did *Not* Exist .................. 10

VII.  Argument: Each Specific Count Individually Fails ........................................... 13

    a.  Count II: Breach of Fiduciary Duty ....................................................... 13

    b.  Count III: Breach of Partnership Agreement ......................................... 16

    c.  Count IV: Breach of the Duty of Good Faith and Fair Dealing .............. 17

    d.  Count V: Fraud ....................................................................................... 18

VIII.  Argument: It is Altogether Unclear if WCP or DPCL are Actually Being
Sued and, if so, for What ................................................................................ 20

IX.  Argument: Dismissal Should be With Prejudice ............................................. 21

X.  Conclusion ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. USAA Cas. Ins. Co.*,
221 F.R.D. 250 (D.D.C. 2004) ........................................................................ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 3, 7, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 3, 7

*Branin v. TMC Enterprises, LLC*,
832 F. Supp. 2d 646 (W.D. Va. 2011) ............................................................. 4

*Brooks v. Mentor Worldwide LLC*,
985 F.3d 1272 (10th Cir. 2021) ....................................................................... 7

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ........................................................................ 4

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
436 F. Supp. 3d 354 (D.D.C. 2020) ............................................................ 3, 4

*Cohen v. Orlove*,
57 A.2d 810 (Md. 1948) ................................................................................. 12

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................................... 3

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ......................................................................... 18

*Fenwick v. Unemployment Compensation Commission*,
44 A.2d 172 (N.J. Ct. App. 1945) ................................................................. 11

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ....................................................................... 21

*Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*,
2010 WL 2732334 (D. Md. 2010) ................................................................... 4

*In re Washington Communications Group, Inc.*,
18 B.R. 437 (Bankr. D.D.C. 1982) ...................................................... 11, 12, 13

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ................................................................ 4, 18

*KPMG Fin. Advisory Services Ltd. v. Diligence LLC*,
2006 WL 335768 (D.D.C. Feb. 14, 2006) ...................................................... 20

*Love v. Mail on Sunday*,
489 F. Supp. 2d 1100 (C.D. Cal. 2007) ........................................................ 12

*Martin v. Santorini Capital, LLC*,
236 A.3d 386 (D.C. 2020) ............................................................................ 9

*Robinson v. Am. Honda Motor Co.*,
551 F.3d 218 (4th Cir. 2009) ........................................................................ 4

*Rubenstein v. Small*,
273 A.D. 102 (N.Y. App. Div. 1947) ............................................................ 12

*Tinsley v. OneWest Bank, FSB*,
4 F. Supp. 3d 805 (S.D. W. Va. 2014) ........................................................... 4

*Vince v. Mabus*,
956 F. Supp. 2d 83 (D.D.C. 2013) ............................................................... 21

*W. Maryland Ry. Co. v. Harbor Ins. Co.*,
910 F.2d 960 (D.C. Cir. 1990) ..................................................................... 20

*Wallasey Tenants Ass'n, Inc. v. Varner*,
892 A.2d 1135 (D.C. 2006) ........................................................................... 9

**Statutes**
D.C. Code § 29-602.02 ........................................................................... 10, 14

D.C. Code § 29-801.04 ................................................................................. 9

D.C. Code § 42-301 ..................................................................................... 7

D.C. Code § 42-306 ..................................................................................... 8

**Rules**
Federal Rule of Bankruptcy Procedure 7012 ................................................... 1

Federal Rule of Bankruptcy Procedure 7056 ................................................... 1

Federal Rule of Civil Procedure 8 ................................................................. 3

Federal Rule of Civil Procedure 12 ............................................................................. 1, 3

Federal Rule of Civil Procedure 19 ............................................................................. 20, 21

Come now Daniel Huertas ("Mr. Huertas"), WCP Fund I LLC ("WCP") and DP Capital LLC d/b/a Washington Capital Partners ("DPCL") (collectively, the "Defendants" and each a "Defendant"),[1] by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b), and move this Honorable Court to dismiss the above-captioned action with prejudice, and in support thereof states as follows:

## I.     Introduction

This case commenced—more than a year ago—because Charles Paret ("Mr. Paret") fundamentally misunderstood what constitutes the formation of a partnership under District of Columbia law. He was—and seemingly still is—of the belief that some magic words in an e-mail can serve to bind two persons in a formalized business venture. This was not an accurate statement of law when this case was first filed. Nor was it an accurate statement of law when the complaint was amended for the first time or the second time. And it is not an accurate statement of law today. The District of Columbia Code and the precedent of this Honorable Court both objectively instruct that Mr. Paret's theory—now adopted by Wendell Webster, acting in his capacity as trustee of the Chapter 7 estate of Mr. Paret (the "Trustee," with the estate being known as the "Estate")—is legal folly. Yet, somehow, the theory has persisted. It is now appropriate to dispel that theory and dismiss this case.

The Third Amended Complaint (the "Third Amended Complaint," as found at DE #38-1) merits careful reading. There are a lot of allegations in the document. There are a lot of suspect legal assertions in the document. But there, quite genuinely, is not a cogent narrative that applies

---

[1] Undersigned counsel is listed as a defendant on the caption of the Third Amended Complaint but never identified as a defendant therein and has not been the recipient of a summons herein. Upon consultation with counsel for the Chapter 7 trustee in the main case, it is understood that this is a typographical error and undersigned counsel is not actually being sued.

those allegations to those legal theories. It seems the Trustee is alleging a partnership to exist and, simultaneously, positing that the two putative partners also did a lot of things. All of which is well and good, except it is quite sincerely unclear what—if any—actions are being alleged to have been undertaken by the partnership, as opposed to by the two putative partners in their individual capacities (or, as is often the case, in their capacities on behalf of other entities that are not alleged members of the Putative Partnership). And, under governing law, a partnership that takes no action is not a partnership in the first instance.

The core of the Third Amended Complaint is 47 paragraphs long. There is no doubt that the Trustee alleges (i) the identities of the parties hereto; (ii) that a partnership was, *ipso facto*, created via e-mail; (iii) that Mr. Paret owned a large number of single asset real estate companies; and (iv) that money was loaned to a large number of those companies. But, beyond such, the Third Amended Complaint is something of a mishmash. It is genuinely not possible to surmise what the Trustee is alleging vis a vis the actions, *vel non*, of the Putative Partnership and, more concerningly, it appears this vague prose very often runs directly contra to objective public records. The pleading is, at several junctures, a collection of fuzzy—or, in the preferred Supreme Court parlance, "threadbare"—generalizations that fly in the face of applicable pleading standards.

This is a problem for two reasons: (i) under governing precedent, a pleading must be plausible in nature, and a filing can hardly meet the threshold of plausibility if it is pinned solely to amorphous concepts and factual allegations belied by public record; and (ii) pursuant to District of Columbia law, a partnership must undertake activities that invite profit sharing—expressly *excluding* intra-member lending and borrowing activity—to be considered an actual partnership. Since the Trustee never actually alleges any plausible partnership activities, the governing legal standard is consequently incapable of being satisfied.

2

For these reasons, and as extrapolated upon *infra*, it is respectfully urged this action be dismissed. This is the fourth iteration of a complaint in this case; at this juncture, in light of the various failed efforts that precede this Third Amended Complaint, it is appropriate for dismissal to be with prejudice.

## II. Standard: Motion to Dismiss

As recently observed by the United States District Court for the District of Columbia, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F.

Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994);

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

Further, while assessment of a motion to dismiss is generally confined to the four corners

of an underlying pleading, "the court may consider documents extrinsic to the complaint if they

are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their

authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing

*Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009); *Branin v. TMC*

*Enterprises, LLC*, 832 F. Supp. 2d 646, 649 (W.D. Va. 2011); *Fisher v. Maryland Dep't of Pub.*

*Safety & Corr. Servs.*, 2010 WL 2732334, at *2 n. 2 (D. Md. 2010)).

## III.    Factual Allegations

Taking the allegations of the Third Amended Complaint as true for the sole and exclusive

purpose of this motion, the Trustee alleges as follows:

1.    Mr. Paret is an experienced contractor who uses "limited liability corporations"[2] to

hold properties and who met Mr. Huertas in 2017 whilst looking for funding sources. Third

Amended Complaint, DE #38-1, at ¶¶ 6-7.

2.    Discussions concerning a partnership ensued, as highlighted by an e-mail exchange

between Messrs. Paret and Huertas. *Id.* at ¶¶ 8, 12-14.

3.    Mr. Huertas became "*both a partner and lender.*" *Id.* at ¶ 15 (emphasis in original).

4.    The partnership included properties, and there are various references to the "HP

Partnership Properties" throughout the Third Amended Complaint, but that term is never actually

defined. *Id.* at ¶¶ 17-18, 31-33, 35, 37-38, 42, 45 n. 2, 58, 61-63, 71, 75, 81, 83. *But see* § IV, *infra.*

---

[2] [sic].

5.      Deeds of trust, with provisions standard in the private lending industry, were executed in connection with various loans. *Id.* at ¶¶ 19-25, 28.

6.      The two deeds of trust appended to the pleading are not in favor of Mr. Huertas. DE #39-2.

7.      One of the loans also included a construction draw. Third Amended Complaint, DE #38-1, at ¶¶ 26-27, 29.

8.      The partnership allegedly has multiple bank accounts controlled by Mr. Huertas, though the Third Amended Complaint does not specify how many bank accounts, the names of the financial institutions, or anything else of an identifying variety (which is of some import, insofar as the existence of these bank accounts comes as something of a surprise to Mr. Huertas). *Id.* at ¶ 30.[3]

9.      Development of the unidentified partnership properties came to a halt during the pandemic, with Mr. Huertas foreclosing 24 properties during this time period, which benefited Mr. Huertas. *Id.* at ¶¶ 31-34, 37-38. *But see* § IV, *infra*.

10.     Following foreclosure, Mr. Huertas controlled the putative partnership's properties. *Id.* at ¶¶ 35.

11.     These foreclosures were detrimental to the alleged partnership. *Id.* at ¶ 40.

12.     Mr. Huertas "conducted fraudulent loan transactions on behalf of the HP Partnership, utilizing Paret's credit and credentials without Paret's knowledge." *Id.* at ¶ 43.[4]

---

[3] This is not a motion for sanctions, but it bears notation that it does not seem paragraph 30 of the Third Amended Complaint complies with Federal Rule of Bankruptcy Procedure 9011. There cannot be any good faith basis to posit Mr. Huertas maintains partnership bank accounts because, as elaborated upon *supra*, it would be legally impossible for any such bank accounts to exist.

[4] This is a particularly dark allegation yet, like so many in the Third Amended Complaint, the assertion comes with absolutely no supporting allegations or contextual details.

5

13.     Mr. Huertas loaned money to the putative partnership. *Id.* at ¶ 44. *But see* § IV, *infra.*

14.     A large number of companies are "involved in the HP partnership transaction," including 423 Kennedy St Holdings LLC. *Id.* at ¶ 45.

15.     Various entities were used to purchase foreclosed properties. *Id.* at ¶ 46.

## IV.     Facts Properly Considered but External to the Third Amended Complaint

As noted above, applicable precedent permits consideration of documents not appended to a pleading "if there is no dispute as to their authenticity." *Tinsley, FSB*, 4 F. Supp. 3d at 819. Here, the Trustee lists 21 properties as being subject to the Putative Partnership. Third Amended Complaint, DE #38-1, at ¶ 45. A review of public records shows none of those properties are—or ever were—owned by the Putative Partnership, Mr. Huertas, or Mr. Paret. *See* DE #15-2 through DE #15-50.

This point merits some emphasis, insofar as it directly contradicts a great many individual allegations in the Third Amended Complaint: public records make plain that Mr. Huertas never actually personally owned any of the properties he is alleged to have acquired. And, as evidenced by the citation above being to exhibits appended to the last motion to dismiss in this case (which are incorporated herein by reference), the Trustee was very much on notice of this reality before filing the Third Amended Complaint.

## V.     Argument: The Complaint Does Not Sufficiently Allege Partnership Activities

The Third Amended Complaint somehow manages to allege an awful lot and almost nothing at all. There are, no doubt, myriad allegations in the pleading, but they do not cumulatively make sense in the prism of one another and, contextually, they defy plausibility. These are not allegations sufficient to meet the rigors of *Iqbal* and *Twombly*, and such failure necessarily means this case can proceed no further.

6

As noted by the Supreme Court, "determining whether a complaint states a plausible claim is context specific, requiring the **reviewing court to draw on its experience and common sense**." *Iqbal*, 556 U.S. at 663–64 (citing *Twombly*, 550 U.S. at 556) (emphasis added). *See also, Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) ("We must draw on our experience and common sense in evaluating the plausibility of a claim.") (citing *Iqbal*, 556 U.S. at 679). Yet any application of this Honorable Court's "judicial experience and common sense" is necessarily fatal to this case.

As a starting point, the Third Amended Complaint never actually identifies the "HP Partnership Properties," but does enumerate 21 real estate assets that appear to be coterminous with this capitalized-but-undefined term. Yet none of those properties were ever owned by Mr. Paret, Mr. Huertas, or the Putative Partnership. And, under District of Columbia law, such means these real estate properties could not have ever belonged to the Putative Partnership: "[a]ny interest in or claim to real estate whether entitling to present or future possession and enjoyment, and whether vested or contingent, may be disposed of by deed or will, and any estate which would be good as an executory devise may be created by deed." D.C. Code § 42-301.

The necessity of a deed in conveying real estate is more forcefully expressed in the ensuing section of the District of Columbia Code which, in setting forth the familiar "statute of frauds," dispatches with the "may" language of Section 42-301 and imposes a regime whereby, *inter alia*:

> Except as provided in subsection (c) of this section, **no estate** of inheritance, or for life, or **for a longer term than 1 year, in any real property**, corporeal or incorporeal, **in the District of Columbia**, or any declaration or limitation of uses in the same, for any of the estates mentioned, **shall be created or take effect, except by deed signed and sealed by the grantor, lessor, or declarant, in person or by power of attorney or by will**.

D.C. Code § 42-306(b) (emphasis added).[5]

    This is a rather fundamental problem: the Trustee is positing the Putative Partnership owned 21 properties and that those properties were then wrongfully taken by Mr. Huertas. Yet the land records show none of these properties were ever actually owned by either party or the Putative Partnership. So these contentions of the Trustee cannot much be accepted as plausible in nature.

    The Trustee also encounters another simple factual problem: Mr. Huertas is not a lender. Time and again, the Third Amended Complaint alleges Mr. Huertas acted as a lender. *See* Third Amended Complaint, DE #38-1, at ¶ 15 (. . . Huertas … controlled the loan transactions *as both a partner and lender*. . .") (emphasis in original); ¶ 18 (". . . Huertas . . . controlled the loan transactions *as both a partner and lender*. . .") (emphasis in original); ¶ 34 ("Huertas . . . benefited from not only providing the HP Partnership loans. . ."); ¶ 44 ("Huertas . . . made loans to the HP Partnership. . ."). The land records bear out that there never existed a deed of trust in favor of Mr. Huertas, on any of those properties, for the simple reason that he is not personally a commercial lender. And it is accordingly not plausible to contend that Mr. Huertas personally acted as a lender to the Putative Partnership, Mr. Paret, or any other party in interest.

    There are two deeds of trust appended to the Third Amended Complaint. DE #39-2. Notably, Mr. Huertas is not the lender under either deed of trust. *Id.* Similarly, there is a closing statement appended to the pleading. DE #39-3. Mr. Huertas is also not identified as the lender thereunder. *Id.* This matters because there is a crucial distinction between Mr. Huertas the individual—with whom Mr. Paret feigns to have created a partnership—and the entities that Mr. Huertas controls (which Mr. Paret does not allege to be his partners). *See Martin v. Santorini*

---

[5] The exception set forth in subsection (c) of this statute concerns commercial leases and is accordingly inapplicable *sub judice*.

8

*Capital, LLC*, 236 A.3d 386, 394 (D.C. 2020) ("LLC members, like corporate shareholders, own

an interest in an LLC; they are not the LLC nor do they own an LLC's property.") (citing *Wallasey*

*Tenants Ass'n, Inc. v. Varner*, 892 A.2d 1135, 1141 n. 3 (D.C. 2006)). Indeed, "[a] limited liability

company is an entity distinct from its member or members." D.C. Code § 29-801.04(a). The

distinction between individuals and companies is at the core of so much of this Honorable Court's

business, yet it is a distinction that seems to be wholly ignored by the Trustee in this case.

    As noted *supra*, the same problem engulfs the allegation that Mr. Huertas apparently

controls a multitude of partnership bank accounts. *See, supra*, n. 3. It is plainly not plausible that

there exists a partnership bank account—much less several such accounts—because there is no

record, in the District of Columbia, of the alleged partnership ever being registered with the city.

There is no reason to believe the partnership has a taxpayer identification number. And there is no

reason to believe Mr. Huertas somehow managed to open one or more bank accounts on behalf of

an unregistered entity that does not have a taxpayer identification number. These allegations are

plainly not plausible. Nonetheless, they form a seemingly-integral part of the Third Amended

Complaint.

    As discussed in greater detail *infra*, the readily-belied nature of these allegations is essential

because there cannot, as a matter of law, be a partnership that does not actually undertake economic

activities independent of intra-partner loans. The alleged partnership in this case is not alleged—

in a plausible manner—to have actually purchased real estate, made a loan to a third party, or

opened a bank account. Nor is any other economic activity alleged in a plausible fashion. What is

alleged, rather, is that Mr. Paret owned a number of companies and, inferentially, it appears those

companies borrowed monies from lenders operated by Mr. Huertas. This construct gives rise to a

run-of-the-mill debtor/creditor relationship, not a partnership.

## VI.      Argument: The Complaint's Allegations Show a Partnership did *Not* Exist

The whole theory of this case appears to be that two e-mails were exchanged and, with little more, a partnership was formed under District of Columbia law. The Putative Partnership is central to each claim for relief and integral to the Trustee's entire theory of the case. But, while the Third Amended Complaint takes the unorthodox route of interposing legal arguments with factual allegations, the Trustee is errant when it comes to this underlying legal theory: an exchange of e-mails cannot, as a matter of law, actually form a common law partnership.

The Trustee relies heavily on an e-mail exchange that, he posits, shows an intent to form a partnership. *See* Third Amended Complaint, DE #31-1, at ¶¶ 12-13. But in so doing, the Trustee misses a core aspect of District of Columbia partnership law: it is actions of the parties—and *not* their intent—that govern the creation, *vel non*, of a partnership: "the association of 2 or more persons to carry on as co-owners of a business for profit shall form a partnership, *whether or not the persons intend to form a partnership*." D.C. Code § 29-602.02(a) (emphasis added). Stated otherwise: it is the actions in furtherance of a partnership—and not any titular proclamations of a partnership—that serve to actually create the partnership.

The same statutory scheme goes on to make clear that, in considering the carrying on of business activities for profit, lending activity does not qualify for purposes of forming a partnership:

> A person that receives a share of the profits of a business shall be presumed to be a partner in the business, unless the profits were received in payment . . . (E) Of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral;

D.C. Code § 29-602.02(c)(3).

10

This Honorable Court actually had occasion, previously, to assess a case in which an individual not only furnished a loan to a third party but, too, entered into a putative partnership agreement with that third party. *In re Washington Communications Group, Inc.*, 18 B.R. 437 (Bankr. D.D.C. 1982) presented a fact pattern whereby Landon Dowdey ("Mr. Dowdey") was contacted by a group of persons owning a collective of newsletters, who were in need of financing. *Id.* at 419-20. Certain tax incentives would be made available to anyone who was an "investor" in the newsletters. *Id.* at 420. And so Mr. Dowdey extended a $50,000.00 line of credit to the group, with Mr. Dowdey assuming financial liability for twelve separate newsletters and "acquir[ing] a partnership interest in all the aforementioned newsletters." *Id.*

The agreement in *Washington Communications Group* not only expressly provided for the foregoing "partnership interest" but, too, set forth an exact split of profits between Mr. Dowdey and the existing publication group, going on to detail certain contingencies if the line of credit were extended into an option period and even setting forth certain buyout rights. *Id.* at 440-41. Responsibilities were divvied up, between the parties, pursuant to the agreement. *Id.* at 441.

This Honorable Court, even in the face of this rather formal, detailed, and extensive agreement, found a partnership did not come into existence because, *inter alia*, ". . . the mere identification of the agreement as one of partnership will not create a partnership if the other requisites of partnership are not present." *Id.* at 443. Judge Whelan reasoned that ". . . a written agreement designating a person as a partner has been held not to be conclusive if no partnership element is present aside from the fact that services are compensated by a share of the profits." *Id.* (citing *Fenwick v. Unemployment Compensation Commission*, 44 A.2d 172, 174-75 (N.J. Ct. App. 1945)).

11

Perhaps the most important holding of *Washington Communications Group*, however, was the one that is now well-supported by the foregoing provisions of the District of Columbia Code: "One who makes a loan of money or credit to the owner of a business in consideration of a share of its profits in repayment of such loan does not thereby become a partner in the business." *Id.* at 444 (citing *Cohen v. Orlove*, 57 A.2d 810 (Md. 1948)). Indeed, in the words of this Honorable Court, if a loan is to be repaid, ". . . there is no partnership." *Id.* at 444 (citing *Rubenstein v. Small*, 273 A.D. 102 (N.Y. App. Div. 1947)).

This case is no different. All the Trustee actually alleges is that an e-mail exchange contemplated a partnership and, thereafter, loans were made against several properties. The Third Amended Complaint looks to the ensuing foreclosures as evidence of a partnership gone awry but, in reality, those allegations show the opposite to be true: there could not have been a partnership. When an agreement is between a lender and a borrower, no matter how such an agreement is titled and no matter if the word "partnership" is therein utilized, the agreement does not give rise to a partnership and cannot constitute the economic activity requisite to foment a partnership.

Interpretation of the same subsection of the Uniform Partnership Act, in other jurisdictions, has fetched similar results. A federal court in Los Angeles has declined to find a partnership existed, in the realm of a musical collaboration, where ". . .the assets that Plaintiff characterizes as 'partnership assets'—the copyrights to their coauthored songs—are not owned by any partnership entity between Plaintiff and Defendant, or even by Plaintiff and Defendant jointly or in common. . ." *Love v. Mail on Sunday*, 489 F. Supp. 2d 1100, 1106 (C.D. Cal. 2007). As noted *passim*, this observation is particularly meaningful in the prism of this case, where public records make clear that neither Mr. Paret, nor Mr. Huertas, nor the Putative Partnership, ever owned any relevant properties in their respective names.

It bears notation that the District of Columbia Code and *Washington Communications Group* are not merely governing law but, too, consistent with clear public policy. Of course an e-mail exchange between two laypersons, nonchalantly using the word "partnership," cannot unto itself give rise to a legal partnership. Of course a lender does not become a legal partner of the borrower(s) to whom money is loaned. Of course something more—much more—is needed for there to actually be a partnership. Yet there is nothing more alleged in this case. And in the absence of a viable allegation of a partnership, dismissal of each cause of action is appropriate.

## VII.    Argument: Each Specific Count Individually Fails

The first count of the Third Amended Complaint seeks a declaration that a partnership exists between Messrs. Huertas and Paret. As noted *supra*, the allegations of the Trustee do not actually set forth the elements of a partnership and, to the contrary, set forth a narrative that shows only lending activity not indicative of a partnership. Dismissal of this count is thusly appropriate.

### a.    Count II: Breach of Fiduciary Duty

The second count of the Third Amended Complaint is for breach of fiduciary duty. Insofar as there is no plausible allegation of a partnership actually existing, it necessarily follows that there are no fiduciary obligations thereunder. And such is, unto itself, dispositive of this claim. But even if, *arguendo*, it were posited that the Trustee has alleged the existence of a partnership, no allegations of a breach of fiduciary duty are present in the pleading.

The Trustee first posits that Mr. Huertas had a duty to account to the Putative Partnership and "hold as trustee for it any property, profit, or benefit derived. . ." Third Amended Complaint, DE #38-1, at ¶ 53. Yet, as noted *passim*, the Putative Partnership never owned any property. At one point the Trustee posits that "[a]ll of Paret's purchases through his LLC or otherwise" became assets of the Putative Partnership. *Id.* at ¶ 52. As discussed above, this is a legal impossibility since

13

such would require the execution of deeds to survive the statute of frauds. Yet even if such were not a legal impossibility, if it was only Mr. Paret's assets that constituted partnership assets, then it is entirely unclear how Mr. Huertas could have accounted for—or held as trustee—those assets.

If the Trustee is suggesting that Mr. Huertas needs to account for profits he made by lending money to the Putative Partnership, then the problems underlying the pleading come full circle: there is no plausible allegation that Mr. Huertas actually loaned money himself, with public records and the deeds of trust appended to the pleading showing loans by third party companies with which Mr. Huertas is affiliated—not Mr. Huertas himself. If the Trustee is referencing the "bank accounts" discussed above, the problem becomes even more pronounced since there is absolutely no good faith basis to allege such bank accounts exists and it is not plausible that such bank accounts could have been created without the Putative Partnership registering with the District of Columbia and obtaining a taxpayer identification number.

The Third Amended Complaint next posits that Mr. Huertas "acted adversely to the [Putative Partnership] by using [DPCL] to leverage his interests in the [Putative Partnership] and making executive decision as the CEO of WCP to determine defaults and institute foreclosures involving partnership properties." *Id.* at ¶ 54. If what the Trustee is alleging is that, pursuant to the Putative Partnership, Mr. Huertas was supposed to both (i) use his lending resources to obtain loans; and (ii) completely disregard the underlying loan documents so as to ignore defaults, then myriad legal problems ensue. In essence, this seems to be a contention that Mr. Huertas was supposed to defraud DPCL and/or WCP, by giving money to the Putative Partnership in the form of faux loans that would never be repaid. Such a notion is so egregiously contra to public policy that it serves as a reminder of why, under District of Columbia law, lender/borrower activities cannot form the basis of a partnership. D.C. Code § 29-602.02(c)(3).

Next the Trustee contends that Mr. Huertas foreclosed assets "in order to acquire exclusive ownership interests in the real estate initially acquired by the [Putative Partnership]." Third Amended Complaint, DE #38-1, at ¶ 55. Similarly, the Trustee later alleges that Mr. Huertas initiated foreclosure proceedings so he could personally acquire real estate assets. *Id.* at ¶ 58. And, later, that Mr. Huertas "was able to acquire [Putative Partnership] Properties at significantly undervalued prices. . ." *Id.* at ¶ 63. These contentions return to the same pleading problem: none of the properties have ever actually been owned by Mr. Huertas, Mr. Paret or the Putative Partnership. In the face of public records showing otherwise, there is no plausible allegation in the Third Amended Complaint that Mr. Huertas personally owns so much as a single property ever controlled by Mr. Paret (or any of Mr. Paret's companies) and, thusly, there can be no allegation that he has "exclusive ownership interests" in any such properties.

The ensuing paragraph of this count posits that Mr. Huertas used "insider knowledge to benefit personally and through his controlled entities. . ." *Id.* at ¶ 56. The Trustee does not allege what "insider knowledge" Mr. Huertas would have had, what topical areas of "insider knowledge" Mr. Huertas would have had, or how such is even plausible. The existence of real estate parcels, and the dates of scheduled foreclosures, are all matters of public record. So, too, is the status of development a matter of public record in a city where plans are centrally available and where construction is visible to the naked eye. It is, quite genuinely, unclear what the Trustee is referencing here.

The Trustee next posits that Mr. Huertas "failed to disclose material information related to the financial status and operations of the [Putative Partnership,] including the actual availability of funds. . ." *Id.* at ¶ 57. The Third Amended Complaint does not allege that the Putative Partnership ever actually obtained funds. And while there is the particularly-askew allegation about bank

accounts that cannot plausibly exist, there is no other context for this allegation. If the Trustee is alleging that monies loaned by WCP and DPCL, to entities wholly controlled by Mr. Paret, constitute monies of the Putative Partnership, and that Mr. Huertas somehow failed to disclose information about the monies loaned to Mr. Paret's companies, such does not really make sense. Assuredly Mr. Paret—not Mr. Huertas—would be the person knowledgeable about the disposition of monies loaned to Mr. Paret's companies.

There are numerous other problems with this cause of action, but two common factors permeate most such issues: (i) as noted *supra*, the Trustee does not actually allege a legal partnership; and (ii) the brash allegations of Mr. Huertas doing wrong are uniformly presented in *ipso facto* form, without any accompanying, plausible factual allegations. The proverbial kitchen sink appears to have been utilized in the crafting of the allegations specific to this cause of action, yet none of the contentions jibe in the prism of the rest of the Third Amended Complaint. If the Trustee is really alleging that (a) Mr. Huertas personally loaned monies; (b) Mr. Huertas personally owns real estate formally controlled by Mr. Paret; and (c) Mr. Huertas personally controls multiple bank accounts in the name of the Putative Partnership, there exists a much deeper problem insofar as none of those allegations can be rooted in good faith and at least two of those allegations are plainly contradicted by public records.

### b. Count III: Breach of Partnership Agreement

Count III is for breach of the alleged partnership agreement. As with the other causes of action, this claim necessarily presupposes, counterfactually, that the Trustee has properly alleged the existence of a partnership. But even if such an allegation were found to be colorable, this claim is irreparably troubled.

The Trustee asserts that Mr. Huertas breached the agreement by, *inter alia*, failing to provide "the promised financial backing for property acquisitions and development projects." *Id.* at ¶ 69. Not once does the Third Amended Complaint identify so much as a single property or development projection for which financing was denied to the Putative Partnership. In fact, the pleading does not even allege any instances where Mr. Paret—or his myriad companies—were denied financing. If anything, the gravamen of the Third Amended Complaint is that, on at least 21 separate occasions, financing was apparently given.

The Trustee next posits that Mr. Huertas "unilaterally altered the financial terms of the HP Partnership, including raising interest rates and declaring default statuses without Paret's consent. . ." *Id.* at ¶ 70. Once again, this does not make sense. Is the Trustee asserting that Mr. Huertas raised interest rates beyond what was provided for in loan documents? If so, such would seem a cause of action of breach of the governing loan documents, yet no such claim is being made. Or is the Trustee asserting that Mr. Huertas was not permitted to honor the terms of loan documents by declaring defaults to exist once a borrower defaulted thereunder? This is an equally problematic construct for myriad problems, not the least of which being—as observed, *passim*—that there is no plausible allegation of the Putative Partnership ever actually borrowing money; the allegations are of Mr. Paret's companies borrowing money from Mr. Huertas. And even those allegations fail the plausibility standard since there is no credible contention that Mr. Huertas personally ever loaned any money.

### c.  Count IV: Breach of the Duty of Good Faith and Fair Dealing

The fourth cause of action is two sentences long. *Id.* at ¶ 75. The first sentence is a statement that contracts have an implied covenant of good faith and fair dealing. The second sentence asserts that "the Defendants have breached" that covenant. *Id.* Putting aside that it is genuinely unclear

who is being referenced through the pluralized use of the word "Defendants," this cause of action is a textbook exemplar of the sort of "[t]hreadbare recitals of the elements of a cause of action" that are forbade by Supreme Court precedent. *Iqbal*, 556 U.S. at 678.

Mr. Huertas is not even vaguely on notice of what he has done to breach the implied covenant of good faith and fair dealing. And whatever Defendant(s) are also accused of doing such are not on notice of their inclusion in this count, much less what ills they have allegedly perpetrated so as to merit being sued pursuant to an agreement to which they are not parties.

### d. Count V: Fraud

Finally, the Trustee accuses Mr. Huertas of fraud. Such claims are, familiarly, subject to a heightened pleading standard. The Trustee does not satisfy that heightened standard here. Rather, in a now-familiar series of broad, *ipso facto* conclusions, the Trustee accuses Mr. Huertas of fraud, all the while neglecting to allege facts that could actually support such a severe claim.

Where, as here, a pleading sounds in fraud or intentional misrepresentation, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically:

> Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim.

*Anderson v. USAA Cas. Ins. Co*., 221 F.R.D. 250, 253 (D.D.C. 2004) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), cert. den'd, 498 U.S. 941 (1990); citing *Kowal v. MCI Commc'ns Corp*., 16 F.3d 1271, 1279 n. 3 (D.C. Cir. 1994)).

The Trustee alleges that Mr. Huertas "misreprent[ed] the total amount of funds available for deployment to the [Putative Partnership]." Third Amended Complaint, DE #38-1, at ¶ 71. The

pleading does not allege when this misrepresentation was made, how this misrepresentation was made, where this misrepresentation was made, or even the specifics of what constituted this misrepresentation. It is, very genuinely, unclear what representation is even being referenced here.

The Third Amended Complaint similarly theorizes that Mr. Huertas "manipulated the financial terms, including raising interest rates and declaring default statuses, to intentionally delay or prevent further draws or release of capital." *Id.* at ¶ 80. Again, it is not alleged when this occurred, how this occurred, where this occurred, or even the specifics of what occurred. If the Trustee is suggesting that interest was charged, at a default rate, consistent with the plain terms of a loan document, the Trustee needs to allege as much. If he is alleging something more nefariously in contravention of the provisions of loan agreements, the question again becomes why there is not a claim for breach of a loan agreement.

This cause of action also includes a rehashing of many of the same allegations discussed above, such as that Mr. Huertas personally acquired properties. *Id.* at ¶ 83. Again, however, public records make clear that Mr. Huertas never acquired *any* of the subject properties. So a good bit more would be needed to satisfy the Rule 8 rigors—much less the Rule 9 rigors—in showing how Mr. Huertas acquired properties that public records show he never acquired and does not own.

To be sure, this cause of action appears to also fall well shy of the Rule 8 standard, using the "threadbare" recitations of elements forbade by *Iqbal*. The Trustee rattles off the elements of a claim for fraud and, for the most part, does not allege any accompanying facts. Such seems particularly brash; a Chapter 7 trustee is accusing a local businessman of fraud—which is arguably amongst the harshest financial accusation one can make—and not so much as feigning to tend to the rigors of Rule 8, *Iqbal* and Rule 9 in so doing.

19

## VIII.  Argument: It is Altogether Unclear if WCP or DPCL are Actually Being Sued and, if so, for What

Traditionally, where there are multiple defendants to a lawsuit, the pleading specifies which counts are brought against which defendants. The Trustee has not done so here. And, upon diligent review, it is unclear what—if any—relief is sought from DPCL and/or WCP. The Trustee asserts WCP is "an indispensable party," though he makes no such claim as it relates to DPCL. *Id.* at ¶¶ 3-4. Even that allegation, though, appears to evince a fundamental misapprehension of indispensable parties.

Indispensable parties are governed by Federal Rule of Civil Procedure 19. *See W. Maryland Ry. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 961 n. 1 (D.C. Cir. 1990) (Thomas, J.). As noted by the United States District Court for the District of Columbia:

> Under Rule 19 of the Federal Rules of Civil Procedure, an absent party is considered necessary to the litigation if without it (1) "complete relief cannot be accorded among those already parties," or (2) the absent party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [that party's] absence may" either "(i) as a practical matter impair [that] person's ability to protect that interest or (ii) leave [the remaining] parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Should the Court determine that any of Rule 19(a)'s criteria are met, it must order that the absent party be joined.

*KPMG Fin. Advisory Services Ltd. v. Diligence LLC*, 2006 WL 335768, at *2 (D.D.C. Feb. 14, 2006) (quoting Fed. R. Civ. P. 19(a)).

Here, the entire Third Amended Complaint is premised upon an alleged partnership between Mr. Huertas and Mr. Paret. It is unclear how such a partnership, even if one existed, could occasion liability on the part of WCP and/or DPCL. Neither WCP nor DPCL are alleged to be parties to the partnership and, as such, neither would seem to be liable under a supposed partnership agreement or bound by any fiduciary duties. Similarly, as non-parties, neither would have a duty

of good faith and fair dealing. And, equally, if the Trustee means to posit that WCP or DPCL has done something fraudulent, the Trustee most certainly has not actually alleged as much.

Perhaps more importantly, there is no reason to believe DPCL or WCP "claim[] an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). Both are creditors of the Estate, but their respective claims are based on promissory notes, not any alleged partnership. DPCL and WCP maintain no partnership ever existed; as such, DPCL and WCP are most certainly not claiming an interest therein.

## IX.    Argument: Dismissal Should be With Prejudice

Instantly at issue is the Third Amended Complaint which, of course, is the fourth iteration of a pleading in this case. For roughly a year, Mr. Huertas has shown each incarnation of the complaint to come well shy of governing pleading standards and to be premised upon allegations that are facially at odds with public records. Yet the latest pleading—filed only after the Trustee was given a generous extension of time to find new counsel and study this case—is simply a rehashing of the prior pleadings.

Under applicable law, "[t]he court may dismiss a claim with prejudice when amending the complaint would be futile." *Vince v. Mabus*, 956 F. Supp. 2d 83, 92 (D.D.C. 2013) (citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

It appears this case has reached the point of futility. No creative pleading will change that Mr. Huertas never actually owned any of the at-issue properties. Nor will creative pleading change that Mr. Huertas never actually loaned money personally. Nor will creative pleading be able to

change that the relied-upon bank accounts of the Putative Partnership do not—and legally cannot—actually exist.

As noted in Section VI, *supra*, the District of Columbia Code and this Honorable Court's own precedent instruct that lending activity cannot give rise to a partnership. Yet, at bottom, all of the activity vaguely alluded to by the Trustee is lending activity. Nothing is going to transmute this activity into fodder upon which a partnership may be found to exist. And, it necessarily follows, amendment would be futile.

### X. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) dismiss this case, with prejudice; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 14, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of August, 2024, a copy of the foregoing was served on all parties through this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig