**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In RE: | ) 23-00217-ELG |
| | ) |
| CHARLES PAXTON PARET, | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| WENDALL W. WEBSTER, Chapter 7 | ) |
| Trustee for Charles Paret | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| DANIEL HUERTAS, ET AL., | ) Adv. Proc 23-10025-ELG |
| | ) |
| Defendants. | ) |
| | ) |

**TRUSTEE'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON COUNT I OF THE THIRD AMENDED COMPLAINT**

I. **A Partnership Exists Between Daniel Huertas ("Huertas"), DP Capital LLC ("DP Capital"), and Charles Paret.**

1. Huertas is the sole member and controlling principal of DP Capital. Ex. 1 at 2 n. 1.

2. Charles Paret is a real estate developer who owned or controlled multiple single-purpose LLCs holding residential and mixed-use properties in Washington, D.C., Maryland, and Virginia.

3. On September 20, 2019, at approximately 2:54 p.m., Huertas emailed Paret proposing that any capital he provided, "including future capital," constituted "debt that will be split 51 percent Daniel, 49 percent Charles." Ex. 2 at 1. Paret required capital infusion "ASAP." Ex. 2 at 4.

1

4. In the same September 20, 2019, email, Huertas stated that Paret would manage day-to-day operations of the projects, while Huertas would manage "all financial aspects related to capital, partnerships, [and] ventures" and would have the "final word related to execution of the real estate." Ex. 2 at 1.

5. In that same email, Huertas expressly referenced a "partnership" in describing the relationship between himself and Paret. Ex. 2 at 1.

6. Also on September 20, 2019, Paret responded to Huertas's email proposal with "Agree," manifesting assent to the terms Huertas proposed. Ex. 3 at 1; *see also* Ex. 4 at 2.

7. Also on September 20, 2019, Huertas and Paret exchanged text messages regarding the structure of their agreement. An excerpt of the text conversation is attached as Ex. 5.

8. In their September 20, 2019 text exchange, Paret stated that the proposed structure was "overall… good," but emphasized that profits were to be shared equally (50/50) once the properties were performing and stabilized. Ex. 5 at 3.

9. In the same text exchange, Paret stated that he was willing to accept a 51/49 decision-making structure so long as profits were shared equally after stabilization. Ex. 5 at 4.

10. Huertas responded that decision-making authority would "always be 51/49," but that "[p]rofit remains 50/50." Ex. 5 at 4.

11. Huertas further confirmed that if he elected to sell the assets, Paret would be given an opportunity to buy him out, with additional protective language to be memorialized. Ex. 5 at 4.

12. When Paret asked whether the 51/49 control structure would continue even after stabilization, Huertas responded "yes." Ex. 5 at 4.

13. On September 30, 2019, Huertas emailed Paret stating that by paying identified invoices he "will have 50% ownership of the properties and 51% control," and characterized the payments as "a loan to the partnership." Ex. 6 at 2.

14. In that email, Huertas identified multiple properties, including properties on and around Kennedy Street NW and Georgia Avenue NW, as assets subject to the shared ownership arrangement. Ex. 6 at 2.

15. On October 31, 2019, Paret emailed WCP Fund I, LLC ("WPC Fund I") identifying properties "we have agreed to for a 50 percent ownership stake." Ex. 7 at 5.

16. Huertas received the October 31 message and did not dispute Paret's identification of jointly owned properties. Ex. 7.

17. On October 31, 2019, WCP internal emails mapped CR Assets[1] and WCP Assets as a unified portfolio discussed in the Paret–Huertas dealings. Ex. 7 at 5.

18. On October 31, 2019, Huertas, by email, requested from Paret the organizational and governing documents for sixteen (16) LLCs, including operating agreements and related entity records, corresponding to the properties discussed in the parties' joint portfolio. Ex. 7 at 3.

19. On November 5, 2019, DP Capital issued a Commercial Deed of Trust Note for several Paret-related LLC properties, secured by a Deed of Trust recorded against three properties. Ex. 8.

20. The Commercial Deed of Trust Note contains "Supplemental Properties, Exhibit A," listing fourteen additional properties subject to the Note, in addition to 5412 1st St NW Washington DC 20011, 1236 Simms Place NE, Washington, DC 20002, and 5419 1st St NW, Washington DC 20011, including:

    1736 Montello Ave NE, Washington, DC 20002:
    1738 Montello Ave NE, Washington, DC 20002;

---

[1] "CR Assets" appears to be a typo meant to read "CP Assets."

    205 W Madison Street St, Baltimore, MD 21201;
    107 Rhode Island Avenue NW, Washington DC 20001;
    1260 Holbrook Terrace NE, Washington, DC;
    1249 Bladensburg Road NE, Washington, DC 20002;
    1264 Holbrook Terrace NE, Washington, DC 20002;
    1268 Holbrook Terrace NE, Washington, DC 20002;
    1471 Gerard Street NW, Washington, DC 20009;
    71 Kennedy St NW, Washington, DC 20011;
    429 Kennedy St NW, Washington, DC 20011;
    208 First Street NW, Berryville, VA 22611;
    635 East Main Street, Berryville, VA 22611; and
    431 Kennedy St NW, Washington DC 20011.

Ex. 8 at 27.

21. The Commercial Deed of Trust Note states that "Lender's Affiliate, DP Capital LLC" shall be entitled to receive "50% of all gross revenues generated from the Property, and/or Supplemental Properties" arising from the development, construction, leasing, refinancing, condominium conversion, or sale of the Supplemental Properties. Ex. 8 at 2.

22. The Commercial Deed of Trust Note further provides that this revenue-sharing obligation "shall survive repayment of all principal and interest due under the Note." Ex. 8 at 2.

23. The Commercial Deed of Trust Note again provides that DP Capital is entitled to "50% of the gross sales proceeds" from the Property or Supplemental Properties and that this obligation "shall survive repayment of all principal and interest due under this Note, and shall survive any release, termination, and/or extinguishment of the Deed of Trust." Ex. 8 at 3.

24. The Commercial Deed of Trust Note required the borrower LLCs, upon DP Capital's request, to amend their operating agreements to conform to the Note's terms. Ex. 8 at 3.

25. The Commercial Deed of Trust Note granted DP Capital the right to block any sale, lease, or encumbrance of the covered properties. Ex 8 at 35.

4

26. The structure of the Commercial Deed of Trust Note granted DP Capital a perpetual right to fifty percent (50%) of all gross revenues and gross sale proceeds from seventeen properties, including Holbrook, even after full repayment of principal and interest. Ex. 8 at 2-3.

27. DP Capital and WCP Fund I were both controlled by Huertas at the time of the Commercial Deed of Trust Note's creation. Ex. 1 at 2 n. 1.

28. Borrowers executed the Note and Deed of Trust based on terms directed by Huertas through DP Capital.

29. Between November 2019 and April 2020, Huertas communicated with Paret regarding capital allocation, construction budgets, and project sequencing for Holbrook and other partnership properties. Exs. 2-5.

30. On November 6, 2019, Paret executed a HUD-1 which included a "Construction Draw" distribution to WCP Fund I in the amount of $1,694,493.09. Ex. 9 at 2, line 805.

31. On April 8, 2020, Paret and Huertas executed the Amended and Restated Operating Agreement of 1260 Holbrook Holdings LLC ("Holbrook OA"). Ex 10.

32. The Operating Agreement transferred to Huertas 51% of the membership interests and all control and management of Holbrook Holdings LLC ("Holbrook") and the property it owned. Ex. 10 at 2.

33. The Operating Agreement designated Huertas as sole Manager with sole and absolute discretion to manage, refinance, encumber, or sell the Property. Ex. 10 at 4.

34. Two days later, on April 10, 2020, Holbrook was refinanced with a $1,850,000 loan from Congressional Bank. Ex. 11 at 1.

35. The HUD-1 reflects $1,567,875 paid to Washington Capital Partners, LLC, an entity controlled solely by Huertas. Ex. 11.

5

36. On or about January 1, 2020, Congressional Bank, Holbrook, and Washington Capital Partners, LLC executed a subordination agreement. An unexecuted version of the Subordination Agreement is attached as Ex. 12.

37. Huertas executed refinance documents with Holbrook as the borrower and Washington Capital Partners, LLC as the creditor, authorizing the April 2020 transaction and receiving the payoff. *See* Exhibits 11 and 12.

38. The Commercial Deed of Trust Note and the Holbrook OA both identify Holbrook as part of the joint project portfolio. Exs. 8 and 10.

39. The September–October 2019 emails and texts, the November 2019 Commercial Deed of Trust Note, the Holbrook OA, the April 10, 2020 HUD-1, and the Subordination Agreement, concern the substantially the same portfolio of properties. See Exs. 2-3, 5 (Emails and Text Messages); Ex. 8 (Commercial Deed of Trust Note); Ex. 10 (Holbrook OA); Ex. 11 (4/10/20 HUD 1); Ex. 12 (Subordination Agreement).

Dated: February 27, 2026

**BLANK ROME LLP**

/s/Lisa M. Coyle
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 885-5592
lisa.coyle@blankrome.com
Pro Hac Vice Motion To Be Filed

**TEMPLE LAW OFFICES**

*/s/ Donald M. Temple*
Donald M. Temple #408749
2522-B Virginia Avenue, N.W.
Washington, DC 20037
Tel: (202) 628-1101
dtemplelaw@gmail.com

*Counsel of Record for Wendall W. Webster, Chapter 7 Trustee for Charles Paxton Paret*

6

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2026, a copy of this filing was delivered via ECF on the following:

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
mac@mbvesq.com

*Counsel for Defendants*

　　　　　　　　　　　　　　　　　　　　*/s/ Donald Temple*
　　　　　　　　　　　　　　　　　　　　Donald Temple